**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

MULHERN GAS CO., INC., et al.,

                Plaintiffs,

     v.

WALTER T. MOSLEY, in his official
capacity as New York Secretary of State,

              Defendant.

Case No. 1:23-cv-01267 (GTS/CFH)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, DECLARATORY RELIEF, AND PERMANENT INJUNCTION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

    A.    The Federal Energy Policy and Conservation Act.................................................. 2

    B.    New York's Gas Ban ........................................................................................... 4

    C.    Plaintiffs' Facial Challenge to the Gas Ban......................................................... 6

ARGUMENT ....................................................................................................................... 6

  I.  New York's Gas Ban is Preempted. .............................................................................. 6

    A.    Applying EPCA's Plain Text, the Ban Is a Regulation Concerning the Energy Use of Covered Appliances. ................................................................. 7

    B.    EPCA's Structure and Purpose Support Preemption. ........................................... 9

        1.    EPCA's exemption for local building codes shows that preemption extends to regulation of buildings' appliances through building codes. ....................... 9

        2.    State bans on appliances are irreconcilable with EPCA's history and purpose, and allowing them would upend the statutory scheme. ................... 10

    C.    New York's Gas Ban Does Not Qualify for Any Statutory Exception. .............. 13

  II.  Plaintiffs Are Entitled to Declaratory and Injunctive Relief. ......................................... 14

    A.    The Court Should Grant a Declaratory Judgment................................................. 15

    B.    Plaintiffs Are Entitled to Permanent Injunctive Relief. ....................................... 15

CONCLUSION.................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n,*
410 F.3d 492 (9th Cir. 2005) ..................................................................2, 3, 10, 11

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles,*
569 U.S. 641 (2013)...........................................................................................13

*Amarin Pharma, Inc. v. FDA,*
119 F. Supp. 3d 196 (S.D.N.Y. 2015).................................................................17

*Armstrong v. Exceptional Child Ctr., Inc.,*
575 U.S. 320 (2015)...........................................................................................15

*Bldg. Indus. Ass'n of Wash. v. Wash. State Bldg. Code Council,*
683 F.3d 1144 (9th Cir. 2012) ...........................................................................12

*Buono v. Tyco Fire Prods., LP,*
78 F.4th 490 (2d Cir. 2023) .............................................................................6, 7

*Cal. Rest. Ass'n v. City of Berkeley,*
89 F.4th 1094 (9th Cir. 2024) .................................................................. *passim*

*Chamber of Com. of the U.S. v. Edmondson,*
594 F.3d 742 (10th Cir. 2010) ...........................................................................16

*Coventry Health Care of Mo., Inc. v. Nevils,*
137 S. Ct. 1190 (2017)..........................................................................................7

*Duane Reade, Inc v. St. Paul Fire & Marine Ins. Co.,*
411 F.3d 384 (2d Cir. 2005)...............................................................................15

*eBay Inc. v. MercExchange, LLC,*
547 U.S. 388 (2006)...........................................................................................15

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.,*
541 U.S. 246 (2004)...........................................................................................13

*Entergy Nuclear Vt. Yankee, LLC v. Shumlin,*
733 F.3d 393 (2d Cir. 2013)...............................................................................16

*Gordon v. Holder,*
721 F.3d 638 (D.C. Cir. 2013) ...........................................................................17

*Green v. Mansour*,
    474 U.S. 64 (1985)......................................................................................................14

*Lamar, Archer & Cofrin, LLP v. Appling*,
    138 S. Ct. 1752 (2018).................................................................................................7

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992)......................................................................................................7

*N.Y. Progress & Prot. PAC v. Walsh*,
    733 F.3d 483 (2d Cir. 2013)................................................................................16, 17

*Nat. Res. Def. Council v. Abraham*,
    355 F.3d 179 (2d Cir. 2004)........................................................................................2

*New Hope Fam. Servs., Inc. v. Poole*¸
    626 F. Supp. 3d 575 (N.D.N.Y. Sept. 6, 2022)........................................................17

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
    136 S. Ct. 1938 (2016).......................................................................................6, 7, 9

*Pulsifer v. United States*,
    144 S. Ct. 718 (2024).................................................................................................10

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004)......................................................................................16

*Rowe v. N.H. Motor Transp. Ass'n*,
    552 U.S. 364 (2008)....................................................................................................9

*Sturgeon v. Frost*,
    136 S. Ct. 1061 (2016).................................................................................................7

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*,
    60 F.3d 27 (2d Cir. 1995) .........................................................................................16

**Constitutional Provisions**

U.S. Const. amend. XI ......................................................................................................16

U.S. Const. Article VI, cl. 2 .............................................................................................14

**Statutes**

28 U.S.C. § 2201(a) ....................................................................................................15, 17

Energy Policy and Conservation Act of 1975,
    42 U.S.C. §§ 6201-6422 ...................................................................................... *passim*

§ 6291(1)-(2) ................................................................................................................7

§ 6291(3) ...............................................................................................................7, 8

§ 6291(4) ................................................................................................................7

§ 6292(a) ................................................................................................................7

§ 6295 ....................................................................................................................3

§ 6295(o)(4) .....................................................................................................11, 12

§ 6297(a)(2)(A) .......................................................................................................7

§ 6297(c) .....................................................................................................3, 7, 9, 11

§ 6297(c)(3), (f)(3) ..................................................................................................9

§ 6297(d) ...............................................................................................................13

§ 6297(d)(3) ..........................................................................................................13

§ 6297(d)(4) ...........................................................................................3, 11, 12, 13

§ 6297(f) ...............................................................................................................10

§ 6297(f)(3) .......................................................................................................3, 13

§ 6297(f)(3)(A) ..................................................................................................9, 13

§ 6297(f)(3)(B), (D)-(E), (G) ..................................................................................9

§ 6297(f)(3)(C) ..................................................................................................9, 14

§ 6297(f)(3)(F) ...................................................................................................9, 14

§ 6311(4) ................................................................................................................8

§ 6311(7) ................................................................................................................8

§ 6316(b)(2)(A) .......................................................................................................8

§ 6316(b)(2)(B) .......................................................................................................9

§ 6316(b)(2)(B)(i) .................................................................................................14

2023 N.Y. Laws c. 56, pt. RR § 6 ...........................................................................4

N.Y. Energy § 11-104 .........................................................................................5, 8

N.Y. Energy § 11-104(6)-(8) ............................................................................................4, 17

N.Y. Energy § 11-104(6)(b) ..................................................................................................8

N.Y. Energy § 11-104(8)(a) ..................................................................................................5

N.Y. Energy § 11-107 ............................................................................................................6

N.Y. Exec. § 377(1) ...............................................................................................................6

N.Y. Exec. § 378 ....................................................................................................................5

N.Y. Exec. § 378(19) .....................................................................................................4, 5, 17

N.Y. Exec. § 378(19)(a) .........................................................................................................8

N.Y. Exec. § 378(19)(g)(i) .....................................................................................................5

N.Y. Exec. § 381 ....................................................................................................................6

**Rules**

Fed. R. Civ. P. 56(a) ..............................................................................................................6

**Other Authorities**

H.R. Rep. No. 94-340 (1975) ...............................................................................................10

S. Rep. No. 94-516 (1975) ...................................................................................................10

S. Rep. No. 100-6 (1987) ...............................................................................3, 10, 11, 12

## INTRODUCTION

The federal Energy Policy and Conservation Act ("EPCA") expressly preempts state and local "regulations concerning" certain appliances' "energy use." New York's gas ban is such a regulation. It prohibits the installation of gas, propane, and fuel oil appliances in most new buildings, along with the infrastructure needed to fuel them. Under EPCA's plain text, banning an appliance or prohibiting it from using any energy—and thus setting its maximum energy use to zero—concerns that appliance's energy use and is therefore preempted. The only federal court of appeals to have addressed the scope of this preemption provision held just that, finding that "EPCA would no doubt preempt" a law like New York's "that directly prohibits the use of covered natural gas appliances in new buildings." *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1107 (9th Cir. 2024). So too for banning gas infrastructure, which is just "a more circuitous route" to the same destination; "States and localities can't skirt the text of broad preemption provisions by doing *indirectly* what Congress says they can't do *directly*." *Id.* at 1098, 1107.

This case is not about whether New York's gas ban is good policy. It is about who decides. In our federal system, the answer is Congress. Congress chose to create a national energy policy that pursues several complementary goals, from energy security to energy independence to energy conservation. It chose to both boost supply though a diverse array of domestic energy sources and cut demand through conservation efforts, including by reducing how much energy the nation's appliances use. And it chose not to let state and local governments pursue different policies on many of these issues. Congress was well within its rights to decide that energy policy is a national issue requiring a cohesive approach—to choose uniformity over local experimentation.

Plaintiffs—a coalition of companies, trade associations, and labor unions—brought this suit to vindicate the federal right created by Congress's choice. Plaintiffs and their members' livelihoods depend on the continued availability of gas appliances and infrastructure. New York's

unlawful ban is harming them now, and that harm will be exacerbated when the ban takes effect. It is well within this Court's power to put a stop to that harm by enforcing Congress's decision.

This case turns on a purely legal question:  Does EPCA preempt the challenged statutory provisions?  Because the answer is yes, this Court should grant summary judgment for Plaintiffs and award declaratory relief and a permanent injunction barring the statutory provisions' enforcement—whether through regulations implementing them or otherwise.

## BACKGROUND

### A.    The Federal Energy Policy and Conservation Act

Responding to the early 1970s oil crisis, Congress enacted the Energy Policy and Conservation Act of 1975, 42 U.S.C. §§ 6201-6422,[1] to create a "comprehensive energy policy" addressing "the serious economic and national security problems associated with our nation's continued reliance on foreign energy resources." *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 498 (9th Cir. 2005).  To that end, EPCA both encouraged domestic supply and promoted energy conservation.  One component of Congress's national policy is EPCA's regulation of many appliances' energy efficiency and energy use.

EPCA's appliance provisions originally focused on labeling, on the theory that well-informed consumers would choose more efficient appliances.  *Air Conditioning*, 410 F.3d at 498-99.  But over time, Congress shifted toward mandating federal standards while limiting state and local governments' role.  *Id.* at 499; *see also Nat. Res. Def. Council v. Abraham*, 355 F.3d 179, 186 (2d Cir. 2004).  In 1978, Congress amended EPCA to require the Department of Energy to prescribe federal standards, while also strengthening preemption.  *Air Conditioning*, 410 F.3d at

---

[1] All further statutory references are to Title 42 of the U.S. Code unless otherwise noted.

499. The Department refused, instead "initiat[ing] a general policy of granting petitions from States requesting waivers from preemption." *Id.* (attribution omitted).

So Congress amended EPCA again in 1987, prescribing standards for many appliances and adopting the preemption provision at issue here. *Air Conditioning*, 410 F.3d at 499-500. The Department's abdication of its standard-setting responsibility and its freewheeling waiver policy had created "a growing patchwork of differing State regulations which would increasingly complicate [appliance manufacturers'] design, production and marketing plans." S. Rep. No. 100-6, at 4 (1987). Congress thus bolstered preemption and restricted waivers, including by barring waivers "likely to result in the unavailability in the State of a product type or of products of a particular performance class." *Id.* at 2; § 6297(d)(4). The preemption provision now reads:

> [E]ffective on the effective date of an energy conservation standard established in or prescribed under [§ 6295] for any covered product, **no State regulation concerning the energy efficiency, energy use**, or water use **of such covered product** shall be effective with respect to such product . . . .

§ 6297(c) (emphasis added). That provision is subject to several narrow exceptions, including an exemption for certain regulations "contained in a State or local building code for new construction" that comply with strict requirements. § 6297(f)(3).

The Ninth Circuit—the only federal court of appeals to have considered the issue—recently held that EPCA's "plain text and structure" preempted Berkeley, California's ordinance that, instead of banning covered gas appliances outright, "prohibit[ed] natural gas *piping* in [new] buildings from the point of delivery at a gas meter, rendering the gas appliances useless." *Cal. Rest.*, 89 F.4th at 1098. As the Ninth Circuit recognized, "EPCA would no doubt preempt an ordinance that directly prohibits the use of covered natural gas appliances in new buildings." *Id.* at 1107. "And a building code that bans the installation of piping that transports natural gas from

a utility's meter on the premises to products that operate on such gas 'concerns' the energy use of those products as much as a direct ban on the products themselves." *Id.* at 1103.[2]

B.     **New York's Gas Ban**

In May 2023, just weeks after the Ninth Circuit first held that Berkeley's ban was preempted, New York followed Berkeley's unlawful lead by prohibiting the installation of gas, propane, and fuel oil appliances and infrastructure in most new buildings beginning December 31, 2025 (the "gas ban").  New York's gas ban is contained in two statutory provisions that require a state agency, the New York State Fire Prevention and Building Code Council (the "Council"), to adopt building and energy code provisions implementing the prohibition.  The gas ban legislation comprises substantively identical amendments to the preexisting provisions of the New York Executive Law and New York Energy Law that govern the content of the state's Uniform Fire Prevention and Building Code ("Building Code") and Energy Conservation Construction Code ("Energy Code," and together with the Building Code, the "Codes").  N.Y. Energy § 11-104(6)-(8); N.Y. Exec. § 378(19).  These statutory amendments were passed by the legislature, signed by the Governor into law, and are effective now.  2023 N.Y. Laws c. 56, pt. RR, § 6.

Specifically, the gas ban requires the Council to amend the Codes to prohibit "the installation of fossil-fuel equipment and building systems" in new buildings (with limited exceptions) beginning December 31, 2025.  N.Y. Energy § 11-104(6)-(8); N.Y. Exec. § 378(19).  "Fossil-fuel equipment and building systems" means "(i) equipment . . . that uses fossil-fuel for combustion" or "(ii) systems . . . associated with a building that will be used for or to support the supply, distribution, or delivery of fossil-fuel for any purpose, other than for use by motor

---

[2] After Plaintiffs filed their complaint, the Ninth Circuit amended its opinion and denied Berkeley's petition for rehearing en banc.  89 F.4th at 1098.  Though some of the language quoted in the complaint has been modified, the substance is unchanged.

vehicles."  N.Y. Energy § 11-104(8)(a); N.Y. Exec § 378(19)(g)(i).  The statute therefore both "directly prohibits" gas appliances and bans the infrastructure needed to supply energy to them, "rendering [any] gas appliances useless." *Cal. Rest.*, 89 F.4th at 1098, 1107.

The Council must implement these prohibitions by adopting Code provisions; it has no discretion as to this duty.  As this Court recently acknowledged, although the statute does not itself implement an enforceable ban, it establishes a "mandatory policy" and directs the Council to implement it, "with no discretion to deviate from what the Legislature has directed [the Council] to include in the Code[s]."  *See* Dkt. 28 at 12-13.  Section 378 of the Executive Law provides that the Building Code "shall address" several specific subjects, some of which—like the provision at issue here—tell the Council exactly what it must include in the Building Code.  N.Y. Exec. § 378(19).  The Energy Law likewise requires the Council to follow certain criteria for the Energy Code.  N.Y. Energy § 11-104 ("shall be designed to satisfy the following specific criteria").

The Council has already begun to comply with its statutory duty to amend the Codes to include the ban.  *See* Statement of Material Facts ("SMF") ¶¶ 1-6; Dkt. 26.  In June 2024, the Council published a Notice of Rule in Development that includes proposed amendments to the Codes that would implement the gas ban by prohibiting gas appliances and infrastructure as the statutes dictate.  Dkt. 26-2 (Notice of Rule in Development); Dkt. 26-3 (proposed Building Code amendments); Dkt. 26-4 (proposed Energy Code amendments).  And the Council's minutes from its June 28, 2024 meeting report that it discussed "the draft regulations for the implementation of the prohibition" and that Council members were "encouraged to submit any comments as soon as possible" to ensure that the process remains on schedule.  Dkt. 26-1 at 3-4.

The Council's forthcoming amendments to the Codes are subject to the Secretary of State's review for compliance with the governing statute and can take effect only with the Secretary's

approval.  Dkt. 28 at 16-17; *see* N.Y. Exec. § 377(1).  Once the Code provisions are issued and take effect, the Secretary and local governments across the State are responsible for enforcing them.  Dkt. 28 at 15; *see* N.Y. Exec. § 381; N.Y. Energy § 11-107.

### C.     Plaintiffs' Facial Challenge to the Gas Ban

Plaintiffs are companies, trade associations, and labor unions that collectively represent or employ tens of thousands of New Yorkers, and Plaintiffs and their members' livelihoods rely on the availability of gas appliances and systems.  *See* SMF ¶¶ 7-31.  Though the Council has not yet amended the Codes to implement the statutorily prescribed gas ban and the ban's effective date has not yet arrived, the gas ban is already wreaking havoc on Plaintiffs and their members.  It is harming business revenues and profits in multiple industries, disrupting long-term business strategy and asset planning, jeopardizing jobs, and hampering the development of industry labor pools.  *Id*.  Once the ban takes effect, it will exacerbate those injuries, including by outlawing some of Plaintiffs' businesses or lines of business.  *Id*.

To put a stop to the irreparable harms caused by New York's preempted gas ban, Plaintiffs brought this suit for declaratory and injunctive relief in October 2023.  Dkt. 1.

### ARGUMENT

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).

### I.     New York's Gas Ban is Preempted.

Express preemption is analyzed just like any question of statutory interpretation: by beginning with the text—and ending there if the text is unambiguous.  *See Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016); *Buono v. Tyco Fire Prods., LP*, 78 F.4th 490, 495 (2d Cir. 2023).  That is because the statute's plain meaning "necessarily contains the best

evidence of Congress' pre-emptive intent." *Franklin Cal.*, 136 S. Ct. at 1946. Courts "do not invoke any presumption against pre-emption" when interpreting express preemption provisions. *Id.*; *accord Buono*, 78 F.4th at 495 (same). Of course, like any other statutory text, preemption provisions must be read in context. *See, e.g.*, *Sturgeon v. Frost*, 136 S. Ct. 1061, 1070 (2016).

### A.     Applying EPCA's Plain Text, the Ban Is a Regulation Concerning the Energy Use of Covered Appliances.

EPCA's plain text is the beginning and end of the preemption inquiry here. New York's ban is a "State regulation concerning" the "energy use" of "covered product[s]," § 6297(c), because it regulates the quantity of energy used by covered gas appliances.[3]

To see why, take the statutory terms step by step. New York's gas ban is a "State regulation." § 6297(a)(2)(A) (defining "State regulation" to include "a law, regulation, or other requirement of a State"). "[E]nergy use" means "the quantity of energy directly consumed by a consumer product at point of use." § 6291(4). "[E]nergy" includes "fossil fuels," such as natural gas, propane, and fuel oil. § 6291(3). And "covered products" include a wide range of consumer appliances, such as water heaters, furnaces, dishwashers, and stoves. §§ 6291(1)-(2), 6292(a).

Perhaps the most important term, though, is "concerning," which carries a well-established meaning in preemption provisions. "'Concerning' means 'relating to,' and is the equivalent of 'regarding, respecting, about.'" *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759 (2018) (cleaned up). Those terms "express[] a broad pre-emptive purpose," *Coventry Health Care of Mo., Inc. v. Nevils*, 137 S. Ct. 1190, 1197 (2017) (attribution omitted), "ensuring that the scope of a provision covers not only its subject but also matters relating to that subject," *Lamar*, 138 S. Ct. at 1760. *See also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383-84 (1992)

---

[3] As discussed, New York's legislation bans appliances using any fossil fuel. Because the type of fossil fuel makes no legal difference, this brief refers to the banned appliances as "gas appliances" for simplicity.

(describing "relating to" as "broad," "deliberately expansive" language, "conspicuous for its breadth"). Here, "by using the term 'concerning,' Congress meant to expand preemption beyond direct or facial regulations of covered appliances." *Cal. Rest.*, 89 F.4th at 1103. Congress could have preempted regulation of appliances' energy use, but instead it preempted regulation "concerning" appliances' energy use.

Taking these definitions together, New York's gas ban is a "State regulation concerning" the quantity of "energy use" of "covered products." By banning appliances that "use fossil fuel for combustion," N.Y. Energy § 11-104, the statute "concern[s]" "the quantity of energy" consumed by gas appliances because it prohibits those products from using any energy, or in other words, allows only gas appliances with zero energy use. *See Cal. Rest.*, 89 F.4th at 1102-03 (holding that a ban on gas piping "necessarily regulates" how much energy gas appliances consume and thus is preempted). That, after all, was the point of the law. *See* N.Y. Energy § 11-104(6)(b) (Legislature's stated purpose was "to support the goal of zero on-site greenhouse gas emissions"); N.Y. Exec. § 378(19)(a) (same). New York's gas ban is thus preempted as to consumer products.

EPCA's industrial appliance provisions work the same way. The industrial provisions expressly preempt "any State or local regulation concerning the energy efficiency or energy use of a product for which" there is a federal standard. § 6316(b)(2)(A). "[E]nergy use" means "the quantity of energy directly consumed by an article of industrial equipment at the point of use." § 6311(4). And "energy" is defined in the same way as for consumer products. §§ 6311(7), 6291(3). New York's gas ban therefore is preempted as to covered industrial equipment for the same reasons as for covered consumer products.

### B.     EPCA's Structure and Purpose Support Preemption.

Because the statute's plain text resolves this case, there is no need to go further.  *Franklin Cal.*, 136 S. Ct. at 1946.  Regardless, EPCA's structure and purpose confirm that New York's gas ban falls well within the preemption provision's broad scope.

### 1.     EPCA's exemption for local building codes shows that preemption extends to regulation of buildings' appliances through building codes.

EPCA's structure underscores that Congress intended broad preemption of state and local regulations, subject to specific exceptions.  When, as here, Congress "explicitly lists a set of exceptions" to preemption, those exceptions are helpful in determining Congress's intent as to the scope of preemption.  *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 374 (2008).

As discussed, EPCA begins with a broad preemption provision covering any "State regulation concerning the energy efficiency, energy use, or water use" of a covered product. § 6297(c).  It then offers specific exceptions to that broad rule, including one allowing regulations contained in building codes for new construction that meet certain requirements.  *See* § 6297(c)(3), (f)(3) (consumer products); § 6316(b)(2)(B) (industrial products).  Those requirements are strict. To qualify for the consumer exemption, a building code must, for example, "permit[] a builder to meet an energy consumption or conservation objective for a building by selecting items whose combined energy efficiencies meet the objective." § 6297(f)(3)(A).  It must provide credits "on a one-for-one equivalent energy use or equivalent cost basis" for products that exceed the applicable standards. § 6297(f)(3)(C).  And among other things, it must specify an "energy consumption or conservation objective . . . in terms of an estimated total consumption of energy." § 6297(f)(3)(F); *see also* § 6297(f)(3)(B), (D)-(E), (G).  The thrust of these requirements is that to qualify for the exemption, a building code must set a general energy conservation or consumption objective, allow builders the freedom to choose a mix of products to meet that objective, and treat those products

evenhandedly. *See id*. § 6297(f); *see also* S. Rep. No. 100-6, at 10-11 (explaining that Congress meant to allow only "performance-based codes" that "authorize builders to adjust or trade off the efficiencies of the various building components so long as an energy objective is met").

More fundamentally, the exemption's focus on building codes indicates that Congress intended that EPCA's preemptive scope would reach provisions in state and local building codes. Otherwise, there would be no reason to exempt certain building code provisions from that scope. *See Pulsifer v. United States*, 144 S. Ct. 718, 731-32 (2024) ("When a statutory construction thus renders an entire subparagraph meaningless, . . . the canon against surplusage applies with special force." (cleaned up)). This statutory structure reflects Congress's intent to preempt a broad swath of state and local regulation concerning appliance energy use while leaving state and local governments a carefully defined space to legislate alternatives within their building codes. Congress thus left state and local governments room to set energy policy—but only so long as they stay within the guardrails Congress selected.

### 2. State bans on appliances are irreconcilable with EPCA's history and purpose, and allowing them would upend the statutory scheme.

Taken as a whole, EPCA is a sweeping national energy policy that includes a policy regarding appliances. *See, e.g.*, § 6201 (listing purposes). Its impetus was rising fuel prices and energy security concerns with dependency on imported oil. *Air Conditioning*, 410 F.3d at 498. The resulting policy was deliberately neutral as to the type of fuel; Congress chose to encourage diverse energy sources and rely on neutral energy consumption and conservation objectives. *See* S. Rep. No. 94-516, at 116-18 (1975) (Conf. Rep.); H.R. Rep. No. 94-340, at 1 (1975). Diversity of fuel sources was vital to the national policy Congress pursued—one that reduced dependence on imported oil and focused on encouraging use of domestic resources, even for a time including coal. *See* H.R. Rep. No. 94-340, at 10-11, 316.

One of the policies Congress ultimately deployed to help achieve the nation's energy independence goals was to create uniform energy standards for appliances. *E.g.*, S. Rep. No. 100-6, at 4. Importantly, though, Congress did not want any standards that would "result in the unavailability in the United States in any covered product type (or class) of performance characteristics, such as size or capacity." *Id.* at 8-9; *accord* §§ 6295(o)(4), 6297(d)(4). In other words, Congress wanted to reduce the energy use of existing appliances, not eliminate appliances. Congress provided the following example: "[The statute], upon a sufficient showing, would forbid a standard for small gas furnaces being set at a level that would increase the price to the point that the product would be noncompetitive and that would result in minimal demand for the product." S. Rep. No. 100-6, at 8-9. Accordingly, Congress was concerned with the unavailability of types of covered products (like certain gas furnaces) and curtailed authority even to the Department to permit state or local regulations that would "result in minimal demand" for such products or make them unavailable. *Id.*; *see* § 6297(d)(4). Moreover, Congress recognized that regulations in populous states (like New York) might carry national weight, S. Rep. No. 100-6, at 4, and therefore prohibited any attempt by state and local governments to supplant its policy, § 6297(c).

The history of amendments to EPCA underscores Congress's intent to preempt state and local regulations regarding appliances' energy use. As discussed, Congress has amended EPCA several times, incrementally moving away from a laissez faire approach toward binding federal energy standards. *Supra* pp. 2-3. The original EPCA focused on labeling the energy efficiency of consumer appliances so that consumers could choose more efficient options. *Air Conditioning*, 410 F.3d at 499; *supra* pp. 2-3. But each subsequent amendment further emphasized the federal government's intent to regulate appliances' energy use and efficiency at the federal level and to further limit states' abilities to set their own standards. *Supra* pp. 2-3. Congress ultimately

11

narrowed the path for states to avoid preemption, defining specific criteria for an exemption and purposefully making it "difficult" to "achiev[e] the waiver" of preemption.  S. Rep. No. 100-6, at 2.

Allowing individual states to ban gas appliances would undercut these exact goals. Congress's series of amendments to EPCA and in particular the preemption provision demonstrate its intent that such decisions be made at the federal level so that appliance manufacturers would be governed by one uniform set of standards and the same types of products would be available to consumers nationwide.  Congress paid careful attention to preserving consumer choice.  *See, e.g.*, §§ 6295(o)(4), 6297(d)(4); *Cal. Rest.*, 89 F.4th at 1103 ("Put simply, by enacting EPCA, Congress ensured that States and localities could not prevent consumers from using covered products in their homes, kitchens, and businesses."); *Bldg. Indus. Ass'n of Wash. v. Wash. State Bldg. Code Council*, 683 F.3d 1144, 1153 (9th Cir. 2012) (regulations cannot discriminate among or favor "particular products or methods" (citing § 6297(f)(3)(C)).  New York's ban on installing gas appliances does exactly what Congress prohibited:  It bans entire categories of appliances at the state level, depriving builders and consumers of choice and leading to a patchwork approach in which certain appliances are unavailable in certain states.

It follows that New York cannot evade preemption by framing its regulation as an outright ban on gas appliances—or the infrastructure needed to fuel them—rather than a series of product-specific standards.  A patchwork of banned products is just as disruptive as a patchwork of different standards.  (After all, standards work by banning products that do not meet them.)  Nothing in EPCA's text, structure, or purpose suggests that it is so easy to evade.  To the contrary, Congress had every reason to expect that it would not "make[] any difference" for preemption purposes if a state were to "select[] an indirect but wholly effective means" of achieving a prohibited purpose.

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 569 U.S. 641, 652 (2013) (collecting cases rejecting states' attempts to end-run preemption provisions); *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 253-55 (2004) (rejecting an interpretation that "would undo Congress's carefully calibrated regulatory scheme"). In short, "States and localities can't skirt the text of broad preemption provisions by doing *indirectly* what Congress says they can't do *directly*." *Cal. Rest.*, 89 F.4th at 1106-07 (collecting cases).

### C. New York's Gas Ban Does Not Qualify for Any Statutory Exception.

New York's gas ban cannot qualify for any of the statutory exceptions to preemption. New York admits that it has not applied for a waiver from the Secretary of Energy, Dkt. 29 ¶ 76, as would be required for § 6297(d)'s exception. Nor could it lawfully obtain one. EPCA prohibits the Secretary from granting a waiver where, as here, "the State regulation is likely to result in the unavailability in the State of any covered product type (or class) of performance characteristics (including reliability), features, sizes, capacities, and volumes that are substantially the same as those generally available in the State at the time of the" waiver. § 6297(d)(4). It also prohibits waivers for regulations that "will significantly burden manufacturing, marketing, distribution, sale, or servicing of the covered product on a national basis." § 6297(d)(3).

Nor does New York's gas ban satisfy the narrow exception for certain building code requirements concerning consumer appliances. § 6297(f)(3). As discussed, that exception requires a regulation to meet seven specific requirements. *Id.*; *supra* pp. 9-10. The gas ban fails several of those requirements right out of the gate. It does not "permit[] a builder to meet an energy consumption or conservation objective for a building by selecting items whose combined energy efficiencies meet the objective," § 6297(f)(3)(A). Rather, without regard to any general target— or even whether the result of applying the ban makes a building use more or less energy—the gas ban prevents builders from selecting any appliances that use gas. Nor does the gas ban provide

credits "for installing covered products having energy efficiencies exceeding" federal standards "on a one-for-one equivalent energy use or equivalent cost basis," § 6297(f)(3)(C). No matter how far they exceed federal standards, gas appliances get no credit at all because they cannot be installed. And the gas ban does not "specif[y]" any "energy consumption or conservation objective," let alone do so "in terms of an estimated total consumption of energy" calculated in the manner prescribed by EPCA, § 6297(f)(3)(F).

The gas ban flunks the industrial-appliance version of the building code exception, too. To avoid preemption for industrial appliances, a state regulation in a building code must "not require that the energy efficiency of [a covered] product exceed the applicable minimum energy efficiency requirement in amended ASHRAE/IES Standard 90.1." § 6316(b)(2)(B)(i). Because New York's gas ban prohibits all gas appliances, even when they meet or exceed the efficiency standards in ASHRAE/IES Standard 90.1, it does not qualify for that exception.

\*    \*    \*

In sum, EPCA's plain text, structure, history, and purpose all establish that Congress foreclosed state and local governments' authority to ban gas appliances and infrastructure. And none of EPCA's narrow exceptions apply here. New York's gas ban is therefore preempted.

## II.    Plaintiffs Are Entitled to Declaratory and Injunctive Relief.

Once it is established that New York's gas ban is preempted, there can be no serious dispute that Plaintiffs are entitled to declaratory and injunctive relief. Federal courts' power "to end a continuing violation of federal law" by granting prospective relief against state officials is what "gives life to the Supremacy Clause." *Green v. Mansour*, 474 U.S. 64, 68 (1985); *see* U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . , any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.").

14

### A.    The Court Should Grant a Declaratory Judgment.

The Court should grant a declaratory judgment that New York's gas ban is preempted by federal law and thus unenforceable.  *See* 28 U.S.C. § 2201(a).  This dispute is an ongoing, substantial controversy.  The Secretary asserts New York's authority to ban gas appliances and infrastructure in new buildings, while Plaintiffs assert their right under federal law to be free from the challenged state regulation.  A declaratory judgment thus would "serve a useful purpose in clarifying or settling the legal issues involved" in this dispute and would "finalize the controversy and offer relief from uncertainty."  *Duane Reade, Inc v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005) (directing courts to consider these two factors when deciding whether to exercise declaratory jurisdiction).

### B.    Plaintiffs Are Entitled to Permanent Injunctive Relief.

Plaintiffs are entitled to an injunction preventing the Secretary from enforcing the gas ban.  *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015) (courts "may issue an injunction" against state officials "upon finding the [challenged] state regulatory actions preempted").  A permanent injunction is appropriate when a plaintiff shows that (i) "it has suffered an irreparable injury"; (ii) "remedies available at law, such as monetary damages, are inadequate to compensate for that injury"; (iii) "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (iv) "the public interest would not be disserved by a permanent injunction."  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  All four requirements are satisfied here.

First, Plaintiffs and their members will be irreparably harmed if the gas ban becomes effective and is enforced.  They have already experienced and would continue to face economic injuries, including lost sales, lost customers, lost work hours or jobs, and ultimately the demise of certain businesses or lines of business.  SMF ¶¶ 7-31.  Their business planning, infrastructure

investments, hiring decisions, job opportunities, and livelihoods are already and will continue to be affected. *Id*. And they face compliance burdens associated with the gas ban. *Id*. ¶¶ 15-16. Moreover, many of Plaintiffs' harms are difficult if not impossible to measure in monetary terms. *See, e.g.*, *Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 733 F.3d 393, 423 (2d Cir. 2013) (holding that forcing a business to shut down would cause irreparable harm); *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) ("We have found irreparable harm where a party is threatened with the loss of a business. . . . [T]he right to continue a business is not measurable entirely in monetary terms." (cleaned up)); *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004) (lost business opportunities can be "difficult to establish and measure" and can thus amount to irreparable harm).

Second, there is no adequate remedy at law for these harms. Plaintiffs cannot recover monetary damages from the State even if they could be readily quantified. *See Entergy Nuclear*, 733 F.3d at 423 (monetary harm that cannot be recovered under the Eleventh Amendment constitutes irreparable harm); *see also, e.g.*, *Chamber of Com. of the U.S. v. Edmondson*, 594 F.3d 742, 770-71 (10th Cir. 2010) (same). And unless the Secretary is enjoined from effectuating and enforcing the gas ban, Plaintiffs and their members will continue to be denied their right to operate and conduct their lives and businesses unburdened by a preempted (and therefore unconstitutional) state law.

Third, the balance of harms tips decidedly in Plaintiffs' favor. Plaintiffs are suffering and will continue to suffer real harm, whereas there is no harm at all on the Secretary's side of the scale. That is because the Secretary has no legitimate interest in enforcing a preempted law. *See, e.g.*, *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) (agreeing that "[t]he Government does not have an interest in the enforcement of an unconstitutional law" (quoting *Am.*

*Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003))); *New Hope Fam. Servs., Inc. v. Poole¸* 626 F. Supp. 3d 575, 585 (N.D.N.Y. Sept. 6, 2022) (same); *Amarin Pharma, Inc. v. FDA*, 119 F. Supp. 3d 196, 237 (S.D.N.Y. 2015) (same).

Finally, for the same reason, an injunction is in the public interest. The public interest is not served by the enforcement of invalid laws. *See, e.g.*, *N.Y. Progress*, 733 F.3d at 488; *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("[E]nforcement of an unconstitutional law is always contrary to the public interest."). Moreover, EPCA embodies a strong public interest in a uniform national energy policy, and in particular one that encourages a diverse domestic supply of energy and protects consumer choice—all of which New York's gas ban undermines.

## CONCLUSION

For these reasons, the Court should grant summary judgment for Plaintiffs; enter a declaratory judgment under 28 U.S.C. § 2201(a) that New York's gas ban, N.Y. Energy § 11-104(6)-(8) and N.Y. Exec. § 378(19), is preempted by EPCA and therefore unenforceable; and permanently enjoin the Secretary from enforcing or attempting to enforce the gas ban, including by adopting or approving an Energy Code, Building Code, or other regulations implementing the ban or by enforcing any such regulations.

Dated: November 5, 2024

Caroline M. Walters (NDNY Bar No. 705759)
REICHMAN JORGENSEN
    LEHMAN & FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965
cwalters@reichmanjorgensen.com

Brian C. Baran (*Pro Hac Vice*)
REICHMAN JORGENSEN
    LEHMAN & FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310
bbaran@reichmanjorgensen.com

Respectfully submitted,

*/s/ Sarah O. Jorgensen*
Sarah O. Jorgensen (NDNY Bar No. 704794)
REICHMAN JORGENSEN
    LEHMAN & FELDBERG LLP
1201 West Peachtree Street, Suite 2300
Atlanta, GA 30309
Telephone: (404) 609-1040
sjorgensen@reichmanjorgensen.com

Courtland L. Reichman (*Pro Hac Vice*)
REICHMAN JORGENSEN
    LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
creichman@reichmanjorgensen.com

*Attorneys for Plaintiffs*