**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MULHERN GAS CO., INC., et al., | Case No. 1:23-cv-01267 (GTS/CFH) |
| Plaintiffs, | **MEMORANDUM IN SUPPORT OF** |
| | **DEFENDANT'S MOTION FOR** |
| v. | **JUDGMENT ON THE PLEADINGS** |
| | **– FED. R. CIV. P. 12(c)** |
| WALTER T. MOSLEY, in his official capacity as Secretary of State, | |
| Defendant. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 3

STANDARD OF REVIEW .................................................................................................. 5

ARGUMENT ...................................................................................................................... 6

   I.   The Complaint's Claims Are Not Justiciable Because Plaintiffs
       Lack Standing. ...................................................................................................... 6

   II.  The Complaint's Claims Are Not Justiciable Because They Are
       Not Ripe for Review. .......................................................................................... 12

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**C**ASES

*Abelar v. IBM (In re IBM Arb. Agreement Litig.),*
    76 F.4th 74 (2d Cir. 2023) ....................................................................... 15

*Aerocare Med. Transp. Sys., Inc. v. Int'l Bhd. of Elec. Workers Loc. 1249 Ins. Fund,*
    No. 5:18-CV-0090, 2018 WL 6622192 (N.D.N.Y. Dec. 18, 2018) ........................... 5

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ....................................................................... 5, 8

*Bennett v. Spear,*
    520 U.S. 154 (1997) ....................................................................... 7, 14

*California v. Texas,*
    593 U.S. 659 (2021) ....................................................................... 11

*Ciba-Geigy Corp. v. U.S. E.P.A.,*
    801 F.2d 430 (D.C. Cir. 1986) ....................................................................... 14

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ....................................................................... 6-7

*Connecticut v. Duncan,*
    612 F.3d 107 (2d Cir. 2010) ....................................................................... 12

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l.,*
    790 F.3d 411 (2d Cir. 2015) ....................................................................... 11

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ....................................................................... 6

*Essex Cty. v. Zagata,*
    91 N.Y.2d 447 (1998) ....................................................................... 14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.,*
    528 U.S. 167 (2000) ....................................................................... 6

*Isaacs v. Bowen,*
    865 F.2d 468 (2d Cir. 1989) ....................................................................... 15

*Johnson v. County of Nassau*,
411 F.Supp.2d 171 (E.D.N.Y 2006) ........................................................ 5

*Kirkendall v. Halliburton, Inc.*,
707 F.3d 173 (2d Cir. 2013) ................................................................. 5

*Lacewell v. Office of the Comptroller of the Currency*,
999 F.3d 130 (2d. Cir. 2021) ................................................................ 9

*Liu v. United States Cong.*,
834 F. App'x 600 (2d Cir. 2020) ........................................................... 11

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ........................................................................ 6-7

*N.Y. Civil Liberties Union v. Grandeau*,
528 F.3d 122 (2d Cir. 2008) ................................................................ 13

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
538 U.S. 803 (2003) .................................................................. 12-13, 15

*New York Bankers Ass'n, Inc. v. City of New York*,
No. 13 Civ. 7212 (KPF), 2014 WL 4435427 (S.D.N.Y. Sept. 9, 2014) ..................... 9

*New York v. United States*,
No. 06-CV-810-JTC, 2013 WL 6175830 (W.D.N.Y. Nov. 22, 2013) ...................... 14

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
523 U.S. 726 (1998) ........................................................................ 13

*Patel v. Contemporary Classics of Beverly Hills*,
259 F.3d 123 (2d Cir. 2001 .................................................................. 5

*Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*,
400 U.S. 62 (1970) .......................................................................... 7

*Reno v. Catholic Soc. Servs.*,
509 U.S. 43 (1993) ......................................................................... 12

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ......................................................................... 7

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ......................................................................... 11

*Steffel v. Thompson,*
   415 U.S. 452 (1974) ............................................................................... 9

*Texas v. United States,*
   523 U.S. 296 (1998) ............................................................................. 14

*Vitagliano v. Cnty. of Westchester,*
   71 F.4th 130 (2d Cir. 2023) ................................................................ 10

*Whitmore v. Arkansas,*
   495 U.S. 149 (1990) ............................................................................... 7

*Younger v. Harris,*
   401 U.S. 37 (1971) ................................................................................. 7

CONSTITUTIONS

Eleventh Amendment ...................................................................................... 3

STATE STATUTES

Energy Law
   § 1-103(1) ................................................................................................. 3
   § 11-104(6)(b) ..................................................................................... 3, 13
   § 11-104(7) ............................................................................................... 3

Executive Law
   §§ 372(5), (16) ........................................................................................ 3
   § 378(19)(a) ........................................................................................ 3, 13
   § 378(19)(b)-(f) ....................................................................................... 3

State Administrative Procedure Act
   § 202 .............................................................................................. 4, 8, 14

State Environmental Quality Review Act, Environmental Conservation
   Law Article 8 ................................................................................ 4, 8, 14

RULES

Federal Rules of Civil Procedure Rule 12(c) ............................................. 1, 5

Federal Rules of Civil Procedure Rule 12(b)(6) .......................................... 5

New York State Uniform Fire Prevention and Building Code and
   Energy Conservation Construction Code ("the Codes") ................. passim

**OTHER**

NYS Dept. of Envtl. Conservation, *Environmental Notice Bulletin,*
(Aug. 7, 2024) .......................................................................................................... 4

NYS Dept. of Envtl. Conservation, *Environmental Notice Bulletin,*
(Oct. 9, 2024) ........................................................................................................... 4

NYS Dept. of State, *Notice of Rule in Development,*
(July 25, 2024) ......................................................................................................... 4

## INTRODUCTION

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Defendant Walter T. Mosley, in his official capacity as Secretary of State, moves for judgment on the pleadings, dismissing the complaint in its entirety, on the grounds that Plaintiffs' claims are not justiciable.

Plaintiffs claim injury exclusively from amendments to two New York statutes that they assert are preempted by federal law because those amendments allegedly impose restrictions on the use of fossil fuel equipment and building systems in construction of certain types and sizes of new buildings. (Complaint, Dkt. No. 1, at ¶¶ 3, 41; *see* Decision and Order, Dkt. No. 28, at 10). But, as this Court has already found, those statutory amendments "do not themselves implement a prohibition on fossil-fuel equipment and systems" that the Secretary could enforce. (Dkt. No. 28, at 12). The statutory amendments do direct the New York State Fire Prevention and Building Code Council ("Code Council") to undertake an administrative rulemaking process that may result in the restrictions being incorporated into the New York State Uniform Fire Prevention and Building Code and Energy Conservation Construction Code ("the Codes"). However, the Court also already rejected Plaintiffs' argument that the act of adopting code amendments constitutes enforcement of those statutes. (Dkt. No. 28, at 15). Plaintiffs therefore lack Article III standing; they suffer no legally cognizable injury from the Legislature's enactment of statutory provisions that impose no restrictions

on them and cannot be enforced against them, nor is their claimed injury from the statutes fairly traceable to any action by the Secretary.

To the extent Plaintiffs may purport to state claims against the proposed Code amendments themselves, notwithstanding the complaint's exclusive focus on the statutes (Dkt. No. 1, at ¶ 41), or to otherwise attempt to blur the distinction between the statutes and the Codes, there is still no justiciable controversy. As the Court noted, the proposed Code amendments that may impose the restrictions Plaintiffs identify as the source of their alleged present harm "have not yet been adopted, a fact that poses a problem for any claim premised on the Codes themselves." (Dkt. No. 28, at 11, fn. 2). Any potential future harm to Plaintiffs from the proposed Code amendments remains dependent upon future administrative rulemaking outcomes. Consequently, any attack on the proposed Code amendments is premature and does not present a case or controversy ripe for judicial review.

In short, the premise for Plaintiffs' action is irredeemably flawed. First, they have no Article III standing as to the challenged statutory amendments because there is no injury in fact from provisions that do not impose any requirements or restrictions that the Secretary could enforce against them. Nor is any purported injury from the mere existence of the statutes fairly traceable to any action by the Secretary. Second, while the proposed Code amendments may ultimately impose some enforceable restrictions, the complaint does not address the proposed amendments nor would there now be a ripe case or controversy even if it had. Those proposed Code amendments will not have any legal force or effect unless and

until the administrative process for amendment is completed and final adoption has occurred. Accordingly, Plaintiffs' claims are not justiciable and the complaint should be dismissed because the Court lacks subjection matter jurisdiction.

## BACKGROUND

The New York Legislature, by enacting Energy Law § 11-104(6)(b) and Executive Law § 378(19)(a), directed that the Codes each be amended "[t]o support the goal of zero on-site greenhouse gas emissions and help achieve the state's clean energy and climate agenda." *Id*. The Legislature further directed that "*on or after*" December 31, 2025 (emphasis added), the Codes be amended to "prohibit the installation of fossil fuel equipment and building systems" in certain types and sizes of new buildings, subject to exemptions for certain types of buildings or activities. *Id.; see* Energy Law § 11-104(7) and Executive Law § 378(19)(b)-(f).

As acknowledged by Plaintiffs and recognized by the Court, authority for maintaining and amending the Codes is vested in the Code Council,[1] which has yet to complete the administrative processes required for amending the Codes. (Dkt. No. 1, at ¶¶ 36, 43, 51; Dkt. No. 28, at 11, fn. 2). The Code Council is a state agency (Energy Law § 1-103(1); Executive Law §§ 372(5), (16)), and amendment of the Codes requires notice to the public of the proposed rulemaking and an opportunity to provide comment as part of rulemaking procedure pursuant to the State

---

1 The Court's Decision and Order (Dkt. No. 28) dismissed Plaintiffs' claims against the Code Council, members of the Code Council sued in their individual capacities, and the New York Department of State, pursuant to the Eleventh Amendment.

3

Administrative Procedure Act (SAPA) § 202. *See* Dkt. No. 25-1, at 3, further

describing the SAPA administrative process that governs and must precede any

amendments to the Codes. In addition, as a state agency the Code Council is subject

to the requirements of the State Environmental Quality Review Act (SEQRA),

Environmental Conservation Law Article 8. Currently, the Code Council is

developing proposed rules for amending the Codes pursuant to SAPA,[2]  and

preparing an Environmental Impact Statement for Code amendments pursuant to

SEQRA.[3] Each of these administrative processes will require further public

comment and hearings.

---

2 *See* NYS Dept. of State, *Notice of Rule in Development* (July 25, 2024),
https://dos.ny.gov/notice-rule-development.

3 *See* NYS Dept. of State, *State Fire Prevention and Building Code Council-State Environmental Quality Review Act (SEQR), Scoping Documents*,
https://dos.ny.gov/state-fire-prevention-and-building-code-council;

NYS Dept. of Envtl. Conservation, *Environmental Notice Bulletin: Statewide-Amendment of the New York State Uniform Fire Prevention and Building Code and the State Energy Conservation Construction Code* (Aug. 7, 2024),
https://dec.ny.gov/news/environmental-notice-bulletin/2024-08-07/seqr/statewide-amendment-of-the-new-york-state-uniform-fire-prevention-and-building-code-and-the-state-energy-conservation-construction-code;

NYS Dept. of Envtl. Conservation, *Environmental Notice Bulletin: Statewide-Proposed Amendment of the New York State Uniform Fire Prevention and Building Code and the State Energy Conservation Construction Code* (Oct. 9, 2024),
https://dec.ny.gov/news/environmental-notice-bulletin/2024-10-09/seqr/statewide-proposed-amendment-of-the-new-york-state-uniform-fire-prevention-and-building-code-and-the-state-energy-conservation-construction-code.

And as further recognized by the Court, after completion of these public administrative processes the Secretary of State must review and approve any Code amendments before they can become legally effective (Dkt. No. 28 at 16, citing N.Y. Exec. L. § 377(1)). Prior to such time, the challenged statutes "ha[ve] little or no practical effect in terms of enforcement against the Plaintiffs until [they are] implemented as directed through the Codes." (Dkt. No. 28, at 12).

## STANDARD OF REVIEW

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Aerocare Med. Transp. Sys., Inc. v. Int'l Bhd. of Elec. Workers Loc. 1249 Ins. Fund*, No. 5:18-CV-0090 (GTS/ATB), 2018 WL 6622192, at *4 (N.D.N.Y. Dec. 18, 2018) (quoting *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). Thus in considering such a motion, courts "accept[] the complaint's factual allegations as true and draw[] all reasonable inferences in the plaintiff's favor." *Kirkendall v. Halliburton, Inc.,* 707 F.3d 173, 178 (2d Cir. 2013). Such deference, however, "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In resolving a motion for judgment on the pleadings, a court "may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment." *Johnson v. County of Nassau,* 411 F.Supp.2d 171, 178 (E.D.N.Y 2006) (internal quotations omitted).

## ARGUMENT

### I.    The Complaint's Claims Are Not Justiciable Because Plaintiffs Lack Standing.

As the Supreme Court has explained, "[n]o principle is more fundamental to the judiciary's proper role in our system of government" than the Article III case or controversy requirement, of which standing is a core component. *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 408 (2013), quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). To establish Article III standing, a plaintiff bears the burden of showing: (1) an injury in fact that is concrete, particularized, and actual or imminent, (2) that the cause of the injury is fairly traceable to an action by the defendant and not the result of independent action by a third party not before the court, and (3) that the injury would likely be redressed by the requested judicial relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Courts must ensure that Article III standing exists "at the outset of the litigation," *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 180 (2000), and remains present throughout, *id*. at 189. Here, Plaintiffs cannot meet their burden as to any of the three elements.

First and foremost, the complaint does not show the requisite injury in fact from the statutory amendments that are the exclusive focus of the complaint. (Dkt. No. 1, at ¶ 41; Dkt. No. 28, at 10). The injury in fact criterion requires a plaintiff to show that he or she has suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or

hypothetical." *Lujan*, 504 U.S. at 560. Concreteness requires an injury to be "*de facto*," that is, to actually exist. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). And to be actual or imminent, a threatened injury must be "*certainly impending*," whereas a "*possible* future injury" is not sufficient. *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (emphasis in original)); *see also Younger v. Harris*, 401 U.S. 37, 42 (1971) (fear of state criminal prosecution that is "imaginary or speculative" not sufficient).

Here, Plaintiffs cannot show "an invasion of a legally protected interest," or meet the concreteness requirement, or show anything more than "possible future injury," for one fundamental reason: the statutes they challenge do not impose any requirements or restrictions on them and are not enforceable against them. A statute directing action by a state agency that may result in the agency adopting requirements or restrictions, but that does not itself impose any requirements or restrictions, does not invade any party's legally protected interest. Such "invasion," and any alleged "*de facto*" injury, would arise only after any restrictions or requirements have actually been adopted. Prior to such time "no rights or obligations have been determined" and no "legal consequences . . . flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (*quoting Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)). Thus, any "invasion of a legally protected interest" or "injury in fact" that Plaintiffs might ever be able to plausibly plead would stem from potential future Code amendments, not from the statutes challenged here.

While the Complaint attempts to portray the statutory amendments as already giving legal effect to the proposed restrictions (Dkt. No. 1, at ¶¶ 3, 42, 49), the Court is not required to accept the truth of allegations that state conclusions of law. *Ashcroft v. Iqbal*, 556 U.S. at 678. Indeed, the Court has already rejected the proposition that the statutory amendments impose the restrictions that Plaintiffs cite as the source of their injury:

> [T]his case presents a somewhat unusual factual situation, one in which a state legislature passed the statute that Plaintiffs assert is unconstitutional, but such law (although codifying the relevant restrictions on installation of gas equipment) has little or no practical effect in terms of enforcement against the Plaintiffs until it is implemented as directed through the Codes. Indeed, the statutory amendments do not themselves implement a prohibition on fossil-fuel equipment and systems through which a state official can enforce such a ban, but instead they direct that such a prohibition should be put into the Codes which, according to other provisions of Article 11 of the Energy Law and Article 18 of the Executive Law, can then be enforced by the Secretary of State and certified local and municipal code enforcement personnel that are trained pursuant to rules and regulations adopted by the Secretary of State. N.Y. Energy. L. § 11-107; N.Y. Exec. L §§ 377(1), 381.

(Dkt. No. 28, at 12.)

As the Court discerned, intervening action – final adoption of the proposed Code amendments – is required before those restrictions may ever be enforceable against Plaintiffs. The Legislature did not task the Code Council with a ministerial act. Nor, in directing the Code Council to undertake a rulemaking process, did it override SAPA or SEQRA or otherwise insulate the process for adoption of any Code amendments from the requirements of those statutes. When those statutorily required administrative processes are complete, the Code Council will consider all

public comments, regulatory impacts, and environmental impacts, determine if any modifications are required based on the comments or impacts analyses and then, assuming no modifications that would require an additional comment period, vote on whether to adopt the proposed Code amendments. But the timing for completion of those processes and the outcome of the Council's vote both remain uncertain. Nor, as the Court found, is the process for adoption of proposed Code amendments itself a form of "enforcement" of the statutes that Plaintiffs can point to as injury: "although codification of the restriction on gas equipment is a step in the path of allowing eventual enforcement, the act of codification itself does not enforce the terms of the statute against any individual . . ." (Dkt. No. 28, at 14-15).

Courts reject assertions of injury in fact under these exact circumstances. *See, e.g., Lacewell v. Office of the Comptroller of the Currency*, 999 F.3d 130, 143 (2d. Cir. 2021) (no standing where allegation of preemption relied on speculation about defendants' future actions); *New York Bankers Ass'n, Inc. v. City of New York*, No. 13 Civ. 7212 (KPF), 2014 WL 4435427, at *10 (S.D.N.Y. Sept. 9, 2014) (notwithstanding plaintiffs' allegations of financial and reputational harm from "mere existence" of a New York City local law, court found no injury to support standing where there was a "key condition precedent" before challenged local law could be implemented).

Nor may Plaintiffs analogize to the pre-enforcement review line of cases where parties raising "purely legal issues" can establish Article III standing based just on threatened enforcement of a statute. *See, e.g., Steffel v. Thompson*, 415 U.S.

9

452, 459 (1974) ("it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights"). In those cases, unlike here, the challenged statutes actually impose some requirement or prohibition that could be enforced against the plaintiff. *See*, *e.g.*, *Vitagliano v. Cnty. of Westchester,* 71 F.4th 130, 136 (2d Cir. 2023) (to obtain pre-enforcement review plaintiff must show, *inter alia*, that the proscription in the challenged law is presently enforceable).

Because Plaintiffs cannot meet their burden to show injury in fact, the Court need inquire no further before dismissing the complaint due to lack of standing. However, even accepting the allegations of harm from the mere existence of the challenged statutory amendments as true and, assuming, arguendo, that alleged harm satisfies the injury element of the standing inquiry[4], Plaintiffs cannot show that such injury is "fairly traceable" to any action by the Secretary or that there is redressability.

As to the causation element, the statutory amendments that Plaintiffs challenge were adopted by the Legislature, which is not a party here, not by the Secretary. Thus, the harm that Plaintiffs claim to have been suffering from the statutes since the complaint was filed in October, 2023 (Dkt. No. 1, at ¶ 3), is traceable exclusively to the Legislature, not to the Secretary or any action even

---

4 However, the Complaint's allegations of harm are rife with predictions about hypothetical future harms if the restrictions are adopted, *see*, *e.g.*, Dkt. No.1, at ¶¶ 11, 16, 22, 25, 30-33, and speculation about how business decisions, construction planning and consumer behavior, all of which are subject to a myriad of influences, have allegedly changed purely due to anticipation of potential future restrictions, *see*, *e.g.*, *id.* ¶¶ 12, 13, 17, 18, 21, 24, 26, 28, 29, none of which state concrete injury in fact.

remotely attributable to the Secretary. Nor, as the Court found, do the statutory amendments include any mechanism "through which a state official can enforce" the allegedly injurious statues against the Plaintiffs. (Dkt. No. 28, at 12). Thus for two separate reasons – the Legislature is not a party and the statutes are not enforceable against Plaintiffs – the causation element cannot be met. *See, e.g.*, *Liu v. United States Cong.*, 834 F. App'x 600, 605 (2d Cir. 2020) (no traceability where defendant is not party responsible for action alleged to be source of the injury); *see also*, *California v. Texas*, 593 U.S. 659, 669-70 (2021) (even assuming "pocketbook injury" satisfies injury element, traceability is not shown where challenged statute "has no means of enforcement" against plaintiff).

Finally, there is no redressability here for similar reasons: the statutes Plaintiffs attack cannot be enforced against them, so there is nothing to enjoin. Injunctive relief would thus amount to nothing more that the equivalent of a declaration that the challenged statutory provisions are unconstitutional, but that kind of relief does not supply jurisdiction otherwise absent. *California v. Texas*, 593 U.S. at 673; *Liu*, 834 F. App'x at 606 (relief that does not remedy the alleged injury "cannot bootstrap" plaintiff "into federal court" (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998)).

In sum, because Plaintiffs cannot establish that they have Article III standing, the Court lacks subject matter jurisdiction and the complaint should be dismissed. *See, e.g., Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (dismissal for lack of subject matter jurisdiction

proper where court lacks statutory or constitutional power to adjudicate, "such as when . . . the plaintiff lacks constitutional standing").

## II.    The Complaint's Claims Are Not Justiciable Because They Are Not Ripe for Review.

The "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hosp. Ass'n v. Dep't of Interior,* 538 U.S. 803, 808 (2003), quoting *Reno v. Catholic Soc. Servs.,* 509 U.S. 43, 57, n. 18 (1993). Reflecting the reluctance of courts to grant a declaratory judgment interpreting a statute before the statute has been enforced, this doctrine seeks "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements," and also to preclude "judicial interference until an administrative decision has been formalized and its effects felt in a concrete way." *Nat'l Park Hosp. Ass'n,* 538 U.S. at 807. Determining whether a dispute is ripe for review requires analysis of "whether the issues presented to the district court are fit for review, and . . . what hardship the parties will suffer in the absence of review." *Connecticut v. Duncan,* 612 F.3d 107, 113 (2d Cir. 2010). In the current posture of this case, as pled by Plaintiffs, they fail to meet either of these requirements for ripeness.

Plaintiffs' claims attacking New York statutes are not ripe for review because by their terms those statutes impose no legal requirements on Plaintiffs, nor on anyone else. The prohibitions Plaintiffs complain of are contingent upon future outcomes of ongoing administrative processes that are currently unknown and, in any event, those potential prohibitions would not take effect before 2026 at the very

soonest. *See* Energy Law § 11-104(6)(b); Executive Law § 378(19)(a). As the Court has already determined, "[i]ndeed, the statutory amendments do not themselves implement a prohibition on fossil-fuel equipment and systems through which a state official can enforce such a ban, but instead they direct that such a prohibition should be put into the Codes." (Dkt. No. 28, at 12).

Plaintiffs fail to satisfy the hardship element of ripeness. As recognized by the Court, the statutes challenged by Plaintiffs "ha[ve] little or no practical effect in terms of enforcement against the Plaintiffs until [they are] implemented as directed through the Codes." (Dkt. No. 28, at 12). In *National Park Hospitality Ass'n,* the Supreme Court explained that, in the context of ripeness, hardship flows from "adverse effects of a strictly legal kind," such as (1) "command[ing] anyone to do anything or to refrain from doing anything"; (2) "grant[ing], withhold[ing], or modify[ing] any formal legal license, power, or authority"; (3) "subject[ing] anyone to any civil or criminal liability"; or (4) "creat[ing] … legal rights or obligations." *Nat'l Park Hosp. Ass'n,* 538 U.S. at 809, quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club,* 523 U.S. 726, 733 (1998). In contrast, "mere uncertainty as to the validity of a legal rule" does not "constitute[] a hardship for purposes of the ripeness analysis." *Nat'l Park Hosp. Ass'n,* 538 U.S. at 811. Here, Plaintiffs have suffered no adverse legal effects from the statutes that would constitute hardship for purposes of ripeness.

Plaintiffs also fail to satisfy the fitness element of ripeness, which "is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur." *N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d

13

122, 132 (2d Cir. 2008). Courts consider "several factors, including whether the issue presented is a purely legal one, whether consideration of that issue would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *New York v. United States*, No. 06-CV-810-JTC, 2013 WL 6175830, at *5 (W.D.N.Y. Nov. 22, 2013), quoting *Ciba-Geigy Corp. v. U.S. E.P.A.,* 801 F.2d 430, 435 (D.C. Cir. 1986).

Again, in the instant case the statutes that Plaintiffs attack impose no legal restrictions upon them. The content, and very existence, of any such prohibitions, and how they may or may not come to impact Plaintiffs in a concrete way, will not materialize unless and until the Codes are finally amended and become legally effective, no sooner than after the end of 2025. As explained above, the statutes only direct the legally responsible agency to undertake rulemaking, necessitating the SAPA and SEQRA public notice and comment administrative processes that are ongoing, and whose contours in the form of final enforceable regulations, including various regulatory exceptions, are currently unknown and await final agency action. Until then, there is no "[agency] action . . . by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett,* 520 U.S. at 178; *Essex Cty. v. Zagata*, 91 N.Y.2d 447, 453 (1998) (administrative actions not final "unless and until they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process" (citation omitted)). Accordingly, this case is not fit for judicial review. *See Texas v. United States*, 523 U.S. 296, 300 (1998) (claim not ripe for adjudication because "it rests upon

contingent future events that may not occur as anticipated."); *Isaacs v. Bowen*, 865 F.2d 468, 477-78 (2d Cir. 1989) (claim not ripe where it was "directed at possibilities and proposals only, not a concrete plan which has been formally promulgated and brought into operation").

Because Plaintiffs have not established "adverse effects of a strictly legal kind" from the statutes they attack, *Nat'l Park Hosp. Ass'n,* 538 U.S. at 809, and any such effects "depend upon contingent future events that may or may not occur as anticipated," Plaintiffs' claims are not ripe because they do not present a "substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Abelar v. IBM (In re IBM Arb. Agreement Litig.),* 76 F.4th 74, 86-87 (2d Cir. 2023) (citation omitted).

## CONCLUSION

For all of the reasons stated above, the Court should grant this motion and enter an order granting judgment on the pleadings dismissing all claims against Defendant Walter T. Mosley, in his official capacity as Secretary of State.

Dated: November 5, 2024
       New York, New York

LETITIA JAMES
Attorney General of the State of New York

By:  ___/s/ Gavin G. McCabe_____
     Gavin G. McCabe (Bar Roll No. 704875)
     Timothy Hoffman
     Laura Mirman-Heslin
     Christopher Gore
     Assistant Attorneys General
     Office of the Attorney General
     Environmental Protection Bureau
     28 Liberty Street, 19th Floor
     New York, NY 10005
     Gavin.McCabe@ag.ny.gov