UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MULHERN GAS CO., INC. et al., <br><br> Plaintiffs, <br><br> v. <br><br> WALTER T. MOSLEY, in his official capacity as New York Secretary of State, <br><br> Defendant. | CIVIL ACTION NO. 1:23-cv-01267 (GTS/CFH) |

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION TO INTERVENE**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT .....................................................................................................1

BACKGROUND .............................................................................................................................2

I.  NEW YORK'S LEGISLATURE ACTS TO REDUCE THE STATE'S RELIANCE ON FOSSIL FUELS. ..........................................................................................2

II. PROPOSED INTERVENORS ............................................................................................3

    A.  NY-GEO ..................................................................................................................3

    B.  PUSH Buffalo .........................................................................................................4

III. THE LAWSUIT ...................................................................................................................4

ARGUMENT ...................................................................................................................................5

I.  THIS MOTION IS TIMELY, AND PERMISSION TO INTERVENE WILL NEITHER DELAY THE ACTION NOR PREJUDICE THE ADJUDICATION OF ANY PARTY'S RIGHTS. .................................................................................................7

II. NY-GEO AND PUSH BUFFALO HAVE A STRONG INTEREST IN NEW YORK'S CLEAN ENERGY REFORMS AND THEIR INTEREST WILL BE ADVERSELY AFFECTED IF PLAINTIFFS PREVAIL. ....................................................8

III. PROPOSED INTERVENORS' RIGHTS ARE DISTINCT FROM THOSE REPRESENTED BY THE SECRETARY OF STATE, AND ARE SUFFICIENT TO SUPPORT INTERVENTION UNDER RULE 24(A). .................................................10

IV. IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION UNDER RULE 24(B). ........................................................................10

CONCLUSION ..............................................................................................................................12

## TABLE OF AUTHORITIES

**Page number(s)**

**CASES**

*99 Wall Dev. Inc. v. Allied World Specialty Ins. Co.*,
No. 18-CV-126, 2018 WL 11305562 (S.D.N.Y. Apr. 9, 2018) ..........................................8

*Allco Fin. Ltd. v. Etsy*,
300 F.R.D. 83 (D. Conn. 2014)......................................................................................11

*In re Application of Bm Brazil 1 Fundo de Investimento em Participacoes Multistratégia*,
No. 23-MISC-208, 2024 WL 555780 (S.D.N.Y. Jan. 18, 2024) .........................................5

*Bldg. & Realty Inst. of Westchester and Putnam Cnties., Inc. v. New York*,
No. 19-CV-11285, 2020 WL 5658703 (S.D.N.Y. Sep. 23, 2020)................................5, 12

*Brennan v. N.Y.C. Bd. of Educ.*,
260 F.3d 123 (2d Cir. 2001)........................................................................................8, 9

*Commack Self-Serv. Kosher Meats, Inc. v. Rubin*,
170 F.R.D. 93 (E.D.N.Y. 1996) ........................................................................................9

*Conn. Fine Wine & Spirits, LLC v. Harris*,
No. 16-cv-1434, 2016 WL 9967919 (D. Conn. Nov. 8, 2016)............................................9

*Floyd v. City of New York*,
770 F.3d 1051 (2d Cir. 2014)......................................................................................5, 7

*First Mercury Ins. Co. v. Shawmut Woodworking & Supply, Inc.*,
No. 12-CV-1096, 2014 WL 12573387 (D. Conn. June 17, 2014)....................................11

*Hartford Fire Ins. Co. v. Mitlof*,
193 F.R.D. 154 (S.D.N.Y. 2000) ......................................................................................7

*Home Ins. Co. v. Liberty Mut. Ins. Co.*,
No. 87-CV-00675, 1990 WL 188925 (S.D.N.Y. Nov. 20, 1990)........................................7

*Hulinsky v. Cnty. of Westchester*,
No. 22-CV-06950, 2023 WL 3162428 (S.D.N.Y. Apr. 28, 2023) ......................................7

*Human Servs. Council of New York v. City of New York*,
No. 21-CIV-11149, 2022 WL 4585815 (S.D.N.Y. Sept. 29, 2022) ............................10, 11

*McNeill v. N.Y.C. Hous. Auth.*,
719 F. Supp. 233 (S.D.N.Y. 1989)................................................................................11

*Miller v. Silbermann*,
832 F. Supp. 663 (S.D.N.Y. 1993).................................................................................11

*New York v. Scalia*,
No. 20-cv-1689, 2020 WL 3498755 (S.D.N.Y. June 29, 2020) ...............................2, 8, 12

*New York v. U.S. Dep't of Health & Human Servs.*,
No. 19-Civ-4676, 2019 WL 3531960 (S.D.N.Y. Aug. 2, 2019).........................2, 8, 11, 12

*New York v. U.S. Immigration & Customs Enforcement*,
No. 19-cv-8876, 2019 WL 7816835 (S.D.N.Y. Dec. 17, 2019) .......................................10

*N.Y. Pub. Interest Rsch. Grp. v. Regents of Univ. of N.Y.*,
516 F.2d 350 (2d Cir. 1975)......................................................................................8, 10

*Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*,
No. 17-CV-0957, 2017 WL 6459464 (E.D.N.Y. Dec. 15, 2017).......................................12

*"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*,
    467 F.3d 238 (2d Cir. 2006)..................................................................................................5

*SEC v. El-Khouri.*,
    No. 19-CIV-9744, 2021 WL 601652 (S.D.N.Y. Jan. 26, 2021) .........................................8

*United States v. Int'l Bus. Machines Corp.*,
    62 F.R.D. 530 (S.D.N.Y.1974) ...........................................................................................7

*United States v. Pitney Bowes, Inc.*,
    24 F.3d 66 (2d Cir. 1994) ..............................................................................................6, 12

*United States v. N.Y.C. Hous. Auth.*,
    326 F.R.D. 411 (S.D.N.Y. 2018) ................................................................................11, 12

*United States v. Yonkers Bd. of Educ.*,
    801 F.2d 593 (2d Cir. 1986)................................................................................................7

*Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*,
    No. 12-CV-00196, 2017 WL 9400673 (N.D.N.Y. Jan. 6, 2017).........................................8

*U.S. Postal Serv. v. Brennan*,
    579 F.2d 188 (2d Cir. 1978).............................................................................................10

**STATUTES AND REGULATIONS**

Climate Leadership and Community Protection Act,
    2019 N.Y. Sess. Laws Ch. 106 (S. 6599)

    CLCPA § 1(1)......................................................................................................................2

    CLCPA § 1(2)......................................................................................................................2

    ECL 75-0103.......................................................................................................................2

N.Y. Energy Law § 11-104 .......................................................................................................3

N.Y. Executive Law § 378(19) ..................................................................................................3

**OTHER AUTHORITIES**

Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1913
    (3d ed. 2023) .......................................................................................................................1

Fed. R. Civ. P. 24(a) ..................................................................................................................5

Fed. R. Civ. P. 24(b) .................................................................................................5, 10–11, 12

Order, *Colorado Apartment Ass'n v. Ryan*,
    No. 24-CV-01093 (D. Colo. Aug. 19, 2024), ECF No. 50 .................................................6

Order Granting Unopposed Motion to Intervene, *Riviera v. Anderson*,
    No. 24-CV-00677 (W.D. Wash. July 23, 2024), ECF No. 44 ............................................6

Order Granting Motions, *Rivera v. Wash. State Bldg. Code Council*,
    No. 23-cv-03070 (E.D. Wash. June 12, 2023), ECF No. 34...............................................6

**PRELIMINARY STATEMENT**

Proposed Intervenors New York Geothermal Energy Organization and PUSH Buffalo file this brief in support of their motion to intervene under Federal Rule of Civil Procedure 24 to defend the validity of the May 2023 amendments to New York's Energy Law and Executive Law, which promote the use of clean energy equipment in certain buildings in the state. In enacting these changes, the Legislature sought to respond to the public health challenge posed to New Yorkers by indoor air pollution, and to address the urgency of the climate crisis. The amendments at issue in this litigation are one part of the State's efforts to reduce our dependence on fossil fuels and sustainably transition to cleaner sources of energy.

The members of the New York Geothermal Organization ("NY-GEO") are key to the effective implementation of the challenged amendments, and the industry they represent is a cornerstone of the transition called for by the law. PUSH Buffalo is likewise heavily invested in New York's transition to cleaner buildings, and the organization both develops all-electric affordable housing as well as trains community members for careers in renewable energy construction and maintenance. Both organizations have a strong interest in defending the amendments at issue in this lawsuit, which safeguard New York's ability to address the climate change crisis through building electrification and which directly benefit their memberships.

Plaintiffs and Defendants do not oppose this motion to intervene. To allay any concerns about fairness to Plaintiffs, NY-GEO and PUSH Buffalo secured a jointly agreed-upon Proposed Order, attached here. The Proposed Order limits the scope of Proposed Intervenors' participation to opposing the Plaintiffs' Motion for Summary Judgment, requires that Proposed Intervenors adhere to the existing briefing schedule in filing their opposition brief, and provides that Plaintiffs will receive additional pages on their Reply to respond to Proposed Intervenors' shortened brief. These types of conditions are routinely used to "minimize delay and prejudice to

1

the existing parties." Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1913 (3d ed. 2023). *See, e.g.*, *New York v. U.S. Dep't of Health & Human Servs.*, No. 19-Civ-4676, 2019 WL 3531960, at *7 (S.D.N.Y. Aug. 2, 2019) [hereinafter *HHS*] (noting that the court "will impose tighter page limits on the Proposed Intervenors' submissions" and "will be receptive to an application for an enlargement of plaintiffs' page limits"); *New York v. Scalia*, No. 20-cv-1689, 2020 WL 3498755, at *5 n.1 (S.D.N.Y. June 29, 2020) (noting that court "would be sympathetic" to enlarging the plaintiffs' page limits upon request).

## BACKGROUND

**I.   NEW YORK'S LEGISLATURE ACTS TO REDUCE THE STATE'S RELIANCE ON FOSSIL FUELS.**

In 2019, the Legislature passed, and the Governor signed, the landmark Climate Leadership and Community Protection Act, 2019 N.Y. Sess. Laws Ch. 106 (S. 6599) ("CLCPA"). Recognizing that "[c]limate change is adversely affecting economic well-being, public health, natural resources, and the environment of New York," the Legislatureenacted the CLCPA to set statewide mandates for greenhouse gas emissions reductions. CLCPA § 1(1). The Legislature determined that "[t]he severity of current climate change and the threat of additional and more severe change will be affected by the actions undertaken by New York and other jurisdictions to reduce greenhouse gas emissions." *Id*. § 1(2)(a). The CLCPA established the Climate Action Council, an official body consisting of state leaders charged with developing a roadmap to achieve the state's climate targets. *See* ECL 75-0103. That official body in turn developed the Final Scoping Plan, which outlines the necessary measures for emissions reductions in all sectors of the state economy. ECL 75-0103. After holding 32 meetings and receiving over 35,000 public comments, the Climate Action Council voted in December 2022 to advance its Final Scoping Plan. Because New York's buildings are the single largest source of

greenhouse gas emissions, the state's plan calls for changes to building codes to require a rapid increase in the use of heat pumps and a significant reduction in the use of fossil fuel appliances.

In May 2023, the New York Legislature enacted amendments to the Energy Law and Executive Law, directing that the New York State Uniform Fire Prevention and Building Code and Energy Conservation Construction Code be amended "to support the goal of zero on-site greenhouse gas emissions and help achieve the state's clean energy and climate agenda." N.Y. Energy Law § 11-104(6)(b), N.Y. Exec. Law § 378(19)(a). The amendments include a prohibition on "the installation of fossil-fuel equipment and building systems" in certain buildings. N.Y. Energy Law § 11-104(6)(b), N.Y. Exec. Law § 378(19)(a). Such buildings will instead be served by electrical equipment, such as heat pumps.

## II.     PROPOSED INTERVENORS

### A.     NY-GEO

Founded in 2014, New York Geothermal Organization is a not-for-profit trade association which represents the geothermal heat pump industry in New York State. Nowak Decl. ¶ 3. The seventy founding members, including geothermal system designers, installers, drillers, general contractors, engineers, manufacturers, distributors, renewable energy consultants and industry stakeholders, install and advocate for the use of ground-source heat pumps to heat and cool buildings throughout New York State. *Id.* NY-GEO provides job training opportunities, hosts an annual ground source heat pump conference, and engages in advocacy for policies that promote the transition to clean heating and cooling technologies. *Id.* ¶ 6.

NY-GEO's members and others involved in the heat pump industry represent a quickly growing sector of the State economy, and their growth stands to substantially accelerate because of the May 2023 amendments to New York's Energy Law and Executive Law. *Id.* ¶ 7. The heat pump industry is responsible for jobs that will remain in-state and cannot be outsourced. *Id.* ¶ 5.

NY-GEO has estimated there are approximately 2,000 New Yorkers currently employed in ground source heat pump marketing, sales, system design and installation. *Id*.

  **B.** **PUSH Buffalo**

PUSH Buffalo is a member-based community organization located on the West Side of Buffalo, New York. It has served the multiracial and multiethnic poor and working-class neighborhood in which it is based for nineteen years. *See* Wells-Clyburn Decl. ¶ 3. PUSH Buffalo is dedicated to increasing the supply of affordable housing that provides residents with cleaner, healthier air through the use of electric appliances, and to increasing local employment opportunities in the transition to a clean and renewable energy economy. *Id*. ¶¶ 3–4. Towards these ends, PUSH Buffalo develops affordable, all-electric housing and provides job training in fields including renewable energy installation and maintenance. *Id*. ¶¶ 4–7.

**III.** **THE LAWSUIT**

Plaintiffs are companies, trade associations, and unions whose members anticipate deriving economic benefits from the protracted use of fossil fuel appliances and infrastructure and oppose the State's efforts to limit fossil fuel combustion in new buildings. Compl. ¶ 3. They maintain that the impending amendments to the Uniform Fire Prevention and Building Code and the State Energy Conservation Construction Code are preempted by the federal Energy Policy and Conservation Act ("EPCA") because they would prevent the use of certain appliances covered by EPCA in certain buildings. *Id*. ¶¶ 71–81. According to Plaintiffs' theory, EPCA effectively guarantees that any covered appliance may be used in any city building, and prohibits the State from taking action to address any health and safety concerns caused by burning fossil fuels indoors.

On the basis of this claim, Plaintiffs have asked this Court to declare N.Y. Energy Law § 11-104(6)–(8) and N.Y. Exec. Law § 378(19) unlawful and to enjoin their enforcement, among other relief. Compl. ¶ 91.

## ARGUMENT

NY-GEO and PUSH Buffalo seek intervention under Federal Rule of Civil Procedure 24. Rule 24(a)(1) provides for intervention as of right for any party who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(1). Rule 24(b) provides for intervention by permission, which authorizes this Court to grant the timely motion of parties with "a defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

> To be granted intervention as of right or by permission, "an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action."

*Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (per curiam) (quoting *"R" Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006)).

With respect to permissive intervention under Rule 24(b), "district courts in the Second Circuit have recognized that the preceding four factors should be considered as a whole, rather than focusing narrowly on any one of the criteria." *In re Application of Bm Brazil 1 Fundo de Investimento em Participacoes Multistratégia*, No. 23-MISC-208, 2024 WL 555780, at *4 (S.D.N.Y. Jan. 18, 2024), *R. & R. adopted sub nom.* 2024 WL 554302 (S.D.N.Y. Feb. 12, 2024) (quoting *Bldg. & Realty Inst. of Westchester & Putnam Cnties., Inc. v. New York*, No. 19-CV-11285, 2020 WL 5658703, at *5 (S.D.N.Y. Sep. 23, 2020)). "The principal guide in deciding

5

whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994) (quoting Fed. R. Civ. P. 24(b)(3)).

As described below, Proposed Intervenors' motion may be granted under either Rule 24(a) or Rule 24(b). This motion is timely, as it will neither delay resolution of the action nor require any alteration in the briefing schedule. Both NY-GEO and PUSH Buffalo have a strong interest in the amendments to the state's building codes, as they stand to benefit economically from, and have been centrally involved in, New York's transition to clean energy. Should Plaintiffs prevail in their efforts to block New York's transition, NY-GEO and PUSH Buffalo's interests will be significantly impaired. Finally, Proposed Intervenors' interest is sufficiently distinct from the Secretary of State's to support intervention as of right under Rule 24(a). But the Court need not reach that question, because Proposed Intervenors undoubtedly qualify for permissive intervention under Rule 24(b), and the Court may grant permissive intervention without addressing the adequacy-of-protection prong under Rule 24(a)(1).

Courts routinely allow for intervention in like circumstances. In other recent actions challenging whether restrictions on gas appliances were preempted by EPCA, courts granted unopposed motions for intervention by organizations with similar interests in defending the laws. *See, e.g.*, Order Granting Unopposed Motion to Intervene, *Riviera v. Anderson*, No. 24-CV-00677 (W.D. Wash. July 23, 2024), ECF No. 44; Order Granting Motions, *Rivera v. Wash. State Bldg. Code Council*, No. 23-CV-03070 (E.D. Wash. June 12, 2023), ECF No. 34; *see also* Order, *Colorado Apartment Ass'n v. Ryan*, No. 24-CV-01093 (D. Colo. Aug. 19, 2024), ECF No. 50 (granting opposed motion for intervention by environmental and clean energy organizations seeking to defend building energy standards against EPCA preemption challenge).

**I.      This Motion Is Timely, and Permission to Intervene Will Neither Delay the Action nor Prejudice the Adjudication of Any Party's Rights.**

"The timeliness requirement is flexible and the decision is one entrusted to the district judge's sound discretion." *Floyd*, 770 F.3d at 1058 (quoting *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594–95 (2d Cir. 1986). "It is firmly established that the most significant criterion in determining timeliness is whether the delay in moving for intervention has prejudiced any of the existing parties." *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 160 (S.D.N.Y. 2000) (quoting *United States v. Int'l Bus. Machines Corp.*, 62 F.R.D. 530, 541–42 (S.D.N.Y.1974)). "Absent any significant prejudice to the existing parties, courts usually consider an application for intervention as timely." *Hulinsky v. Cnty. of Westchester*, No. 22-CV-06950, 2023 WL 3162428, at *3 (S.D.N.Y. Apr. 28, 2023) (quoting *Home Ins. Co. v. Liberty Mut. Ins. Co.*, No. 87-CV-00675, 1990 WL 188925, at *2 (S.D.N.Y. Nov. 20, 1990)).

Here, there is no undue delay, and granting this motion will not result in any alteration to the existing briefing schedule. During the period before there was any scheduled briefing on the merits issue underlying Proposed Intervenors' interest in this litigation, Proposed Intervenors avoided burdening the parties and the Court with an intervention motion. As soon as this Court set a schedule for Plaintiffs' Motion for Summary Judgment, which is the first opportunity for briefing the preemption question, NY-GEO and PUSH Buffalo contacted the original parties to discuss the scope of their proposed intervention and to commit to following the existing schedule. As the attached agreed-upon Proposed Order stipulates, Proposed Intervenors' participation will not require any alteration to the summary judgment briefing schedule. Other courts in New York have concluded that there can be "no palpable harm in permitting" intervention where "Proposed Intervenors have not asked for an extension of the deadlines for

the motion for summary judgment." *Scalia*, 2020 WL 3498755, at *5 (quoting *HHS*, 2019 WL 3531960, at *7).

Most importantly, permitting intervention will not prejudice any party, as evidenced by the lack of opposition to this motion. The original parties' agreement itself provides the strongest evidence that there is no prejudice to any existing party in granting this unopposed motion. *See, e.g.*, *SEC v. El-Khouri*, No. 19-CIV-9744, 2021 WL 601652, at *2 (S.D.N.Y. Jan. 26, 2021) (granting intervention and finding "that intervention would not 'prejudice the adjudication of the original parties' rights,'" given consent and lack of opposition to intervention motion (quoting Fed. R. Civ. P. 24(b)(3)); *99 Wall Dev. Inc. v. Allied World Specialty Ins. Co.*, No. 18-CV-126, 2018 WL 11305562, at *1 (S.D.N.Y. Apr. 9, 2018) (granting intervention and finding that "there has been no prejudice to the parties, as evinced by their lack of opposition"); *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, No. 12-CV-00196, 2017 WL 9400673, at *9 (N.D.N.Y. Jan. 6, 2017) (granting intervention and noting "absence of any contention that [the intervenor's] application is untimely" and that "the parties have not identified any prejudice").

## II.  NY-GEO and PUSH Buffalo Have a Strong Interest in New York's Clean Energy Reforms and Their Interest Will Be Adversely Affected if Plaintiffs Prevail.

It is well-established that "sufficient interest to permit [a party] to intervene" exists where "the validity of a regulation from which its members benefit is challenged." *N.Y. Pub. Interest Rsch. Grp. v. Regents of Univ. of N.Y.*, 516 F.2d 350, 352 (2d Cir. 1975). And the Second Circuit has since confirmed that an "economic interest" in the preservation of a law is sufficient to support intervention, even if that interest "clearly did not constitute a property right." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 130 (2d Cir. 2001). NY-GEO's members have an economic interest in the May 2023 amendments at issue here, as they will significantly increase demand for the heat pumps that NY-GEO's members design, sell, and install. *See* Nowak Decl. ¶ 8. PUSH

8

Buffalo has a similar interest, as the growth of the electric buildings industry that the law calls for increases the market for the organization's renewable energy installation job training, as well as benefitting its development of all-electric affordable housing projects. *See* Wells-Clyburn Decl. ¶¶ 4,7. This type of interest supports intervention and will be adversely affected if Plaintiffs prevail. *See, e.g.*, *Conn. Fine Wine & Spirits, LLC v. Harris*, No. 16-CV-1434, 2016 WL 9967919, at *5 (D. Conn. Nov. 8, 2016) (trade associations of alcohol purveyors and wholesalers had interest in lawsuit challenging as preempted state liquor sales statutes); *Commack Self-Serv. Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 101–03 (E.D.N.Y. 1996) (purveyors of kosher products had interest in case challenging constitutionality of the New York Kosher Laws).

In fact, NY-GEO's interest in this matter is as direct as the one Plaintiffs assert in support of their own standing. Plaintiffs' members "sell, install, and service gas equipment and infrastructure," and maintain that the market for their services is reduced by the amendments they challenge. Compl. ¶ 3. NY-GEO's members design, sell and install electric heat pumps, and the market for their services is similarly increased by the amendments Plaintiffs challenge. Nowak Decl. ¶¶ 3, 7–8. Both sides assert that the challenged laws affect their economic interests by simultaneously reducing the market for gas combustion and increasing the market for heat pumps. Thus, Proposed Intervenors' interests "are the mirror image of the claims asserted by the" Plaintiffs, and their "interest in the underlying action . . . is for purposes of standing identical to that of the [Plaintiffs]." *Brennan*, 260 F.3d at 130–31. While Plaintiffs oppose the transition of certain of New York's new buildings to clean, carbon-free heating and cooling, NY-GEO and PUSH Buffalo are the organizations whose members are called upon to implement

the technological transition the law requires. Should Plaintiffs prevail, Proposed Intervenors' interests will be directly and adversely affected.

**III.     Proposed Intervenors' Rights Are Distinct from Those Represented by the Secretary of State, and Are Sufficient to Support Intervention Under Rule 24(a).**

The economic interests of a trade association and an organization devoted to housing development and workforce training are distinct from those the Secretary of State advances here. The Second Circuit has recognized that under similar circumstances, the government's defense of a regulation may be inadequate to represent an intervenor's interests when the intervenor is a trade group that benefits from a challenged regulation. In *New York Public Interest Research Group v. Regents*, the Second Circuit found that all the standards for intervention as of right— including the requirement of inadequate representation—were met where the intervenor had an economic stake in the validity of the regulation and would likely "make a more vigorous presentation of the economic side of the argument." 516 F.2d at 352.

But in any event, as described in the next section, the Court need not reach the question of adequacy of representation, because it can simply grant permissive intervention under Rule 24(b).

**IV.     In the Alternative, the Court Should Grant Permissive Intervention Under Rule 24(b).**

"Permissive intervention is wholly discretionary with the trial court." *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978). "Rule 24(b)(2) is to be liberally construed in favor of intervention." *Human Servs. Council of New York v. City of New York*, No. 21-CIV-11149, 2022 WL 4585815, at *3 (S.D.N.Y. Sept. 29, 2022) (cleaned up). "Even where a party does not meet" each of the requirements for intervention as of right, "a court may, in its discretion, grant permissive intervention," *New York v. U.S. Immigration & Customs Enforcement*, No. 19-CV-8876, 2019 WL 7816835, at *1 (S.D.N.Y. Dec. 17, 2019), so long as the proposed intervenor

10

timely seeks to participate and "has a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b)(1)(B). A "single common question of law or fact" is enough to support permissive intervention. *Miller v. Silbermann*, 832 F. Supp. 663, 673 (S.D.N.Y. 1993) (quoting *McNeill v. N.Y.C. Hous. Auth.*, 719 F. Supp. 233, 250 (S.D.N.Y. 1989)). As described above, NY-GEO and Push Buffalo have a strong interest in the validity of the May 2023 amendments to New York's Energy Law and Executive Law, and share the defense that the law is not preempted under EPCA. This constitutes the "common question" required for permissive intervention. *See Human Servs. Council of N.Y.*, 2022 WL 4585815, at *4 (union "satisfied this requirement, as it shares the City's presumed defense – namely, whether Local Law 87 is constitutionally sound and whether it is preempted by federal labor law" (cleaned up)).

There is no requirement that the Court consider inadequate representation in granting permissive intervention. *See First Mercury Ins. Co. v. Shawmut Woodworking & Supply, Inc.*, No. 12-CV-1096, 2014 WL 12573387, at *6 n.7 (D. Conn. June 17, 2014) (noting that "inadequacy of representation is not a factor that the Court must consider under Rule 24(b)"). "'Rule 24(b) does not list inadequacy of representation as one of the considerations for the court' in exercising its discretion under Rule 24(b), and although a court may consider it, 'it is clearly a minor factor at most.'" *Human Servs. Council of N.Y.*, 2022 WL 4585815, at *4 (quoting *Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83, 88 (D. Conn. 2014)). *See also HHS*, 2019 WL 3531960, at *6 ("[T]o grant permissive intervention, Rule 24(b) does not require a finding that party representation be inadequate.").

Courts thus routinely "grant permissive intervention despite finding that an existing party adequately represents the proposed intervenor's interest." *Human Servs. Council of N.Y.*, 2022

WL 4585815, at *4 (citing *Bldg. & Realty Inst.*, 2020 WL 5658703, at *13; *Scalia*, 2020 WL 3498755, at *2; *HHS*, 2019 WL 3531960, at *6–7; *United States v. N.Y.C. Hous. Auth.*, 326 F.R.D. 411, 417–18 (S.D.N.Y. 2018); *see also Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*, No. 17-CV-0957, 2017 WL 6459464, at *13 (E.D.N.Y. Dec. 15, 2017) (collecting cases finding permissive intervention warranted even where party representation was found adequate).

## CONCLUSION

For the reasons described above, Proposed Intervenors qualify for intervention as of right under Rule 24(a). But the Court need not decide that question, because it can simply grant permissive intervention under Rule 24(b). As the Second Circuit has instructed, "[t]he principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Pitney Bowes*, 25 F.3d at 73 (quoting Fed. R. Civ. P. 24(b)(3)). Here, the agreement between the original parties and Proposed Intervenors demonstrates that there is no risk of prejudice or undue delay.

DATED: November 8, 2024

*s/Dror Ladin*
Dror Ladin
Meagan Burton
Earthjustice
48 Wall Street, 15th Floor
New York, NY 10005
(917) 410-8701
dladin@earthjustice.org
mburton@earthjustice.org

*Attorneys for Proposed Intervenors NY-GEO and PUSH Buffalo*