**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MULHERN GAS CO., INC., et al., | |
| Plaintiffs, | Case No. 1:23-cv-01267 (GTS/CFH) |
| v. | **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| WALTER T. MOSLEY, in his official capacity as New York Secretary of State, | |
| Defendant. | |

**TABLE OF CONTENTS**

                                                                                            **Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 3

       A.     New York's Gas Ban ............................................................................. 3

       B.     Plaintiffs' Injuries Caused by the Gas Ban ......................................... 4

ARGUMENT ...................................................................................................................... 7

   I.  Plaintiffs Have Standing to Challenge New York's Gas Ban............................ 8

       A.     Plaintiffs' Actual and Imminent Economic Harms Are Article III Injuries. ......... 8

           1.   Plaintiffs are now suffering, and will in the future suffer, concrete and particularized economic harms as a result of the statutory gas ban. ................ 9

           2.   The Council's and Secretary's nondiscretionary duty to implement the gas ban by a date certain satisfies the imminence requirement............................ 11

       B.     Plaintiffs' Injuries Are Traceable to the Secretary's Enforcement Authority and Redressable by the Requested Declaratory and Injunctive Relief. ...................... 18

  II.  This Purely Legal Dispute Is Ripe. .................................................................. 21

       A.     Plaintiffs' Injury-in-Fact Also Establishes Constitutional Ripeness. ................... 21

       B.     The Secretary's Prudential Ripeness Objection Is Forfeited and Incorrect.......... 22

           1.   The Secretary forfeited his prudential ripeness objection by failing to include it in his first Rule 12 motion. ............................................ 22

           2.   Because waiting for the Council to complete the amendment process would harm Plaintiffs without facilitating judicial review, there is no prudential justification for declining jurisdiction............................ 23

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis*,
    143 S. Ct. 2298 (2023)........................................................................................8

*520 S. Mich. Ave. Assocs. v. Devine*,
    433 F.3d 961 (7th Cir. 2006) ............................................................................17

*Adirondack Wild: Friends of the Forest Preserve v. N.Y. State Adirondack Park*
    *Agency*,
    138 N.E.3d 1055 (N.Y. 2019)...........................................................................14

*Air Transp. Ass'n of Am. v. Cuomo*,
    520 F.3d 218 (2d Cir. 2008) (per curiam)........................................................11

*Am. Booksellers Found. v. Dean*,
    342 F.3d 96 (2d Cir. 2003)..................................................................................8

*Antonyuk v. James*,
    120 F.4th 941 (2d Cir. 2024) ............................................................................16

*Babbitt v. United Farm Workers Nat'l Union*,
    442 U.S. 289 (1979)...............................................................................8, 11, 18

*California v. Texas*,
    141 S. Ct. 2104 (2021).......................................................................................20

*Carter v. HealthPort Techs., LLC*,
    822 F.3d 47 (2d Cir. 2016)................................................................................10

*Cayuga Nation v. Tanner*,
    824 F.3d 321 (2d Cir. 2016)..............................................................................19

*Chamber of Com. of the U.S. v. Whiting*,
    563 U.S. 582 (2011)...........................................................................................19

*Citizens for Resp. & Ethics in Washington v. Trump*,
    971 F.3d 102 (2d Cir. 2020)................................................................................9

*City of Kennett v. EPA*,
    887 F.3d 424 (8th Cir. 2018) ............................................................................25

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013).......................................................................................8, 13

*Club Madonna, Inc. v. City of Miami Beach*,
    924 F.3d 1370 (11th Cir. 2019) ...................................................................24

*Connecticut v. Am. Elec. Power Co.*,
    582 F.3d 309 (2d Cir. 2009) ........................................................................17

*Cotton v. Noeth*,
    96 F.4th 249 (2d Cir. 2024) ..............................................................7, 21, 24

*Cottrell v. Alcon Labs.*,
    874 F.3d 154 (3d Cir. 2017) ........................................................................10

*Council for Responsible Nutrition v. James*,
    2024 WL 1700036 (S.D.N.Y. Apr. 19, 2024) ..............................................9

*Ctr. for Individual Freedom v. Madigan*,
    697 F.3d 464 (7th Cir. 2012) .........................................................................8

*Davis v. FEC*,
    554 U.S. 724 (2008) ......................................................................................4

*Doe v. Holcomb*,
    883 F.3d 971 (7th Cir. 2018) .......................................................................20

*Doherty v. Bice*,
    101 F.4th 169 (2d Cir. 2024) .........................................................................5

*Duke Power Co. v. Carolina Env't Study Grp.*,
    438 U.S. 59 (1978) ......................................................................................21

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) .......................................................................10

*Frank v. Lee*,
    84 F.4th 1119 (10th Cir. 2023) ...................................................................20

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ......................................................................................7

*Geo Grp. v. Newsom*,
    50 F.4th 745 (9th Cir. 2022) .......................................................................18

*Grand River Enters. Six Nations v. Boughton*,
    988 F.3d 114 (2d Cir. 2021) ..........................................................................9

*Hargrave v. Vermont*,
    340 F.3d 27 (2d Cir. 2003) ............................................................................4

*Jackson v. N.Y. State Urban Dev. Corp.*,
  494 N.E.2d 429 (N.Y. 1986) ..................................................................................15

*Lacewell v. Off. of the Comptroller of the Currency*,
  999 F.3d 130 (2d Cir. 2021) ........................................................................16, 17, 21

*LaFleur v. Whitman*,
  300 F.3d 256 (2d Cir. 2002) ..................................................................................10

*Liu v. U.S. Congress*,
  834 F. App'x 600 (2d Cir. 2020) ...........................................................................20

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ...............................................................................................18

*Matsumoto v. Labrador*,
  __ F.4th __, 2024 WL 4927266 (9th Cir. Dec. 2, 2024) .......................................20

*Md. Shall Issue, Inc. v. Hogan*,
  971 F.3d 199 (4th Cir. 2020) .................................................................................10

*Mi Familia Vota v. Ogg*,
  105 F.4th 313 (5th Cir. 2024) ................................................................................20

*Mintz v. Chiumento*,
  724 F. Supp. 3d 40 (N.D.N.Y. 2024) .....................................................................17

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010) .................................................................................................7

*N.Y. Bankers Ass'n v. City of New York*,
  2014 WL 4435427 (S.D.N.Y. Sept. 9, 2014) ........................................................16

*Nat'l Ass'n of Home Builders v. U.S. Army Corps. of Eng'rs*,
  440 F.3d 459 (D.C. Cir. 2006) ...............................................................................24

*Nat'l Org. for Marriage, Inc. v. Walsh*,
  714 F.3d 682 (2d Cir. 2013) .............................................................................21, 22

*Nat'l Treasury Emps. Union v. Chertoff*,
  452 F.3d 839 (D.C. Cir. 2006) ...............................................................................25

*Nat'l Treasury Emps. Union v. United States*,
  101 F.3d 1423 (D.C. Cir. 1996) .............................................................................21

*NE Hub Partners, LP v. CNG Transmission Corp.*,
  239 F.3d 333 (3d Cir. 2001) ...................................................................................24

*New York v. United States,*
    505 U.S. 144 (1992)............................................................................................18

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n,*
    461 U.S. 190 (1983)......................................................................................24, 25

*Pearson v. Holder,*
    624 F.3d 682 (5th Cir. 2010) .............................................................................24

*Pit River Tribe v. U.S. Forest Serv.,*
    615 F.3d 1069 (9th Cir. 2010) ...........................................................................16

*POET Biorefining, LLC v. EPA,*
    970 F.3d 392 (D.C. Cir. 2020)............................................................................21

*Reg'l Rail Reorganization Act Cases,*
    419 U.S. 102, 140 (1974)........................................................................4, 17, 20

*Retail Industry Leaders Ass'n v. Fielder,*
    475 F.3d 180 (4th Cir. 2007) .............................................................................12

*Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA,*
    10 F.4th 87 (2d Cir. 2021) ...........................................................................23, 24

*Roman Cath. Archdiocese of N.Y. v. Sebelius,*
    907 F. Supp. 2d 310 (E.D.N.Y. 2012) ...............................................................17

*Save America's Clocks, Inc. v. City of New York,*
    124 N.E.3d 189 (N.Y. 2019)..............................................................................14

*Simmonds v. INS,*
    326 F.3d 351 (2d Cir. 2003)..............................................................................22

*Spitzer v. Farrell,*
    791 N.E.2d 394 (N.Y. 2003)..............................................................................15

*Steubing v. Brinegar,*
    511 F.2d 489 (2d Cir. 1975)..............................................................................16

*Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
    559 U.S. 662 (2010)......................................................................17, 20, 21, 22

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ................................................................................. *passim*

*Town of Chester v. Laroe Ests., Inc.,*
    581 U.S. 433 (2017)............................................................................................9

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ........................................................................9

*Tweed–New Haven Airport Auth. v. Tong,*
    930 F.3d 65 (2d Cir. 2019) ....................................................10, 11, 19

*United States v. Colo. Sup. Ct.,*
    87 F.3d 1161 (10th Cir. 1996) ...........................................................9

*Village of Bensenville v. FAA,*
    376 F.3d 1114 (D.C. Cir. 2004) ........................................................18

*Vitagliano v. County of Westchester,*
    71 F.4th 130 (2d Cir. 2023) ..............................................................17

*Walton v. N.Y. State Dep't of Corr. Servs.,*
    863 N.E.2d 1001 (N.Y. 2007) ...........................................................14

*WildEarth Guardians v. Connor,*
    920 F.3d 1245 (10th Cir. 2019) ........................................................16

*Ex parte Young,*
    209 U.S. 123 (1908) ......................................................................1, 19

**Statutes**

Energy Policy and Conservation Act of 1975 ........................................15, 25

N.Y. A.P.A. § 202 .................................................................................14

N.Y. A.P.A. § 205 .................................................................................14

N.Y. Energy § 11-104 ............................................................................4

N.Y. Energy § 11-104(6) .......................................................................13

N.Y. Energy § 11-104(6)-(8) .................................................................2, 3

N.Y. Energy § 11-104(7)(b) ..................................................................15

N.Y. Energy § 11-104(7)(c) ..................................................................15

N.Y. Energy § 11-104(7)(d) ..................................................................15

N.Y. Energy § 11-107 ............................................................................4

N.Y. Exec. § 377(1) ...............................................................................4

N.Y. Exec. § 378 ...................................................................................3

N.Y. Exec. § 378(19) ........................................................................................2, 3, 13

N.Y. Exec. § 378(19)(c)-(e) ......................................................................................15

N.Y. Exec. § 381 ..........................................................................................................4

2023 N.Y. Laws c. 56, pt. RR, § 6 .............................................................................3

State Environmental Quality Review Act, N.Y. Env't Conserv. art. 8 ...................14, 15

**Rules**

Fed. R. Civ. P. 12 ...................................................................................................2, 22

Fed. R. Civ. P. 12(b)(1) ......................................................................................22, 23

Fed. R. Civ. P. 12(c) .............................................................................................5, 23

Fed. R. Civ. P. 12(g)(2) .......................................................................................22, 23

Fed. R. Civ. P. 12(h) ................................................................................................22

Fed. R. Civ. P. 12(h)(2) .......................................................................................22, 23

Fed. R. Civ. P. 12(h)(3) ............................................................................................23

N.Y. C.P.L.R. 7803(1), (3) .......................................................................................14

**Constitutional Provisions**

U.S. Const. art. III ............................................................................................ *passim*

## INTRODUCTION

This Court has jurisdiction over this facial preemption challenge to New York's gas ban. The challenged statute prohibits the installation of gas, propane, and fuel oil appliances and infrastructure in most new buildings beginning December 31, 2025—and does so by unambiguously mandating that the New York State Fire Prevention and Building Code Council adopt code provisions implementing the ban before its effective date.  The statute is already causing Plaintiffs to suffer concrete, particularized economic harm.  Those injuries will be exacerbated once the ban kicks in next year; some of Plaintiffs' lines of business will be outlawed.

Those current and future injuries each satisfy Article III's injury-in-fact requirement.  They are classic economic injuries, and they are imminent.  The gas ban statute leaves the Council and Secretary with no discretion to deviate from their mandate to implement the ban effective December 31, 2025—as this Court already found and the Secretary previously conceded.  There can be no serious doubt that the ban will be implemented as scheduled absent judicial intervention; the Council has already begun the necessary administrative work.

Traceability and redressability follow readily: The Secretary has conceded that he is a proper *Ex parte Young* defendant precisely because he plays a role in enforcing the statute.  And enjoining the Secretary from enforcing the statute would solve Plaintiffs' problem.  In short, this pre-enforcement challenge fits comfortably within the Court's Article III jurisdiction.

The Secretary's objections to jurisdiction all rest on the fiction that it is uncertain whether and when the gas ban will be implemented.  The statute's plain text eliminates any real uncertainty. Nonetheless, abandoning his earlier concession that the Council lacks discretion and must adopt amendments implementing the ban by December 31, 2025, the Secretary now claims uncertainty as to both the timing and outcome of the Council's compliance.  He is wrong on both counts.

1

As to the timing, the Secretary misrepresents the statute by suggesting that the Council's obligation to adopt the amendments *begins* "on or after" December 31, 2025, implying that there is no deadline at all. Dkt. 38-1 at 3. In reality, the statute says the opposite: The gas ban must *take effect* on December 31, 2025, and so the Council must adopt the codes in time for it to do so.

As to the outcome, the Secretary suggests that the statute merely tasks the Council with open-ended rulemaking. Again, that is not so: The statute directs that the Council "shall" adopt code provisions that "prohibit the installation of fossil-fuel equipment and building systems" in most new buildings. N.Y. Energy § 11-104(6)-(8); N.Y. Exec. § 378(19). The Legislature has made its policy choice, leaving the Council with no discretion to countermand it. The Secretary never explains his theory that the routine administrative process could somehow allow the Council to refuse the Legislature's express instructions to implement the gas ban. So the Secretary is left with an imagined scenario in which the Council—or the Secretary himself—defies the statute, never mind that this Court must presume they will follow the law and the Council is in fact already moving to adopt the ban on schedule.

In sum, without any discretion on the Council's part, there is no meaningful contingency that could undermine the imminence of Plaintiffs' injuries and stand in the way of judicial review.

Nor is there any prudential justification for declining jurisdiction. For starters, the Secretary forfeited his prudential ripeness objection by failing to raise it in his prior Rule 12 motion. Regardless, this is a purely legal dispute that will not benefit from factual development, and the harm to Plaintiffs will escalate as the ban's implementation looms ever closer. The time to resolve this dispute is now. The Secretary's motion should therefore be denied.

## BACKGROUND

### A.    New York's Gas Ban

In May 2023, New York enacted legislation prohibiting the installation of gas, propane, and fuel oil appliances and infrastructure in most new buildings beginning December 31, 2025 (the "gas ban"). The statute makes substantively identical amendments to the preexisting provisions of the New York Executive Law and New York Energy Law that govern the content of the state's Uniform Fire Prevention and Building Code ("Building Code") and Energy Conservation Construction Code ("Energy Code"), respectively (together, the "Codes"). N.Y. Exec. § 378(19); N.Y. Energy § 11-104(6)-(8). Specifically, the amendments require the New York State Fire Prevention and Building Code Council to amend the Codes to

> prohibit the installation of fossil-fuel equipment and building systems, in any new building not more than seven stories in height, except for a new commercial or industrial building greater than one hundred thousand square feet in conditioned floor area, on or after December thirty-first, two thousand twenty-five.

N.Y. Energy § 11-104(6)-(8); N.Y. Exec. § 378(19). The gas ban statute was passed by the Legislature, was signed into law by the Governor, and is effective now. 2023 N.Y. Laws c. 56, pt. RR, § 6.

The Council must implement this statutory prohibition by adopting Code provisions; it has no discretion as to this duty. As this Court recognized and the Secretary conceded, although the statute does not itself implement an enforceable ban, it establishes a "mandatory policy" and directs the Council to implement it, "with no discretion to deviate from what the Legislature has directed [the Council] to include in the Code[s]." *See* Dkt. 28 at 12-13. Section 378 of the Executive Law provides that the Building Code "shall address" several specific subjects, some of which—like the provision at issue here—tell the Council exactly what it must include in the Building Code. N.Y. Exec. § 378. The Energy Law likewise requires the Council to follow certain

criteria for the Energy Code.  N.Y. Energy § 11-104 ("shall be designed to satisfy the following specific criteria").

The Council has already begun to comply with its statutory duty to amend the Codes to include the ban.  *See* Dkt. 26.[1]  In June 2024, the Council published a Notice of Rule in Development that includes proposed amendments to the Codes that implement the gas ban by prohibiting gas appliances and infrastructure as the statute dictates.  Dkt. 262 (Notice of Rule in Development); Dkt. 26-3 (proposed Building Code amendments); Dkt. 26-4 (proposed Energy Code amendments).  And the Council's minutes from its June 28, 2024 meeting report that it discussed "the draft regulations for the implementation of the prohibition" and that Council members were "encouraged to submit any comments as soon as possible" to ensure that the process stays on schedule.  Dkt. 26-1 at 3-4.

The Council's forthcoming amendments to the Codes are subject to the Secretary's review for compliance with the governing statute and can take effect only with the Secretary's approval.  Dkt. 28 at 16-17; *see* N.Y. Exec. § 377(1).  Once the Code provisions are issued and take effect, the Secretary and local governments across the State are responsible for enforcing them.  Dkt. 28 at 15; *see* N.Y. Exec. § 381; N.Y. Energy § 11-107.

**B.    Plaintiffs' Injuries Caused by the Gas Ban**

Although the ban is not yet in effect, it is already wreaking havoc on Plaintiffs and their members.  Dkt. 1 ¶¶ 10-33.  Among other injuries, the gas ban has upended long-term investment and planning decisions made before it was enacted.  As just one example, a member of the National

---

[1] While the Court must assess standing as of the time "the suit was filed," *Davis v. FEC*, 554 U.S. 724, 734 (2008), the ripeness inquiry is controlled by "the situation now" and thus includes developments after the case was filed.  *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 140 (1974) (considering facts that developed after the district court's decision); *accord Hargrave v. Vermont*, 340 F.3d 27, 34 (2d Cir. 2003).

Association of Home Builders and the New York State Builders Association had "committed to costly working drawings and specifications that incorporate gas infrastructure." Dkt. 37-9, Nanula Decl. ¶ 5.[2]  That member "ha[d] already contracted with a gas utility to install the project's gas infrastructure, consistent with the common practice in the industry."  *Id.*  Once the gas ban goes into effect, it will prevent the member "from delivering the promised customers to the utility," requiring the member "to pay the cost of the infrastructure that the utility would otherwise bear." *Id.*  The impending gas ban is thus forcing the member to either "proceed and risk penalties" or otherwise prepare to comply with the ban by "delay[ing] project timelines at great expense while making costly modifications to existing building and infrastructure plans."  *Id.*  The impending ban is also forcing the member to decline business opportunities involving gas infrastructure that risk not being completed before the ban's effective date. *Id.* ¶ 6.  Similar scenarios are playing out with Plaintiffs' other members involved in the construction industry.  Dkt. 37-7, Fazio Decl. ¶¶ 4-5; Dkt. 37-8, Ward Decl. ¶¶ 4-5; *see also* Dkt. 37-12, Schaffer Decl. ¶ 4 (member of Plumbing Contractors Association lost a business opportunity involving gas plumbing that "represented millions of dollars in revenue" as a result of the impending ban).

Plaintiffs in other industries are also facing economic injuries and compliance burdens caused by the impending ban.  Mulhern Gas—a small, family-owned business that has delivered, installed, and serviced propane equipment in upstate New York for over fifty years—has observed its customer base "increasingly turn[] to alternative energy sources for cooking and heating" in anticipation of the ban's destruction of the gas service industry.  Dkt. 37-5, Cummings Decl. ¶¶ 7-8.  Because the gas ban presents an "existential crisis" to its business, Mulhern Gas has been forced "to forgo or delay planned investments into fuel tanks, trucks, and other equipment" that would

---

[2] Courts may look beyond the pleadings when resolving jurisdictional issues raised in a Rule 12(c) motion.  *Doherty v. Bice*, 101 F.4th 169, 172 (2d Cir. 2024).

otherwise form the foundation for its long-term profits. *Id.* ¶¶ 8-9. In the interim, Mulhern Gas is "struggling to hire qualified service technicians" to maintain its business "given concerns about the future of the propane service industry." *Id.* ¶ 9. Other Plaintiffs and their members are experiencing similar harm in anticipation of the impending ban. *See, e.g.*, *id.* ¶¶ 5-6, 10 (members of the New York Propane Gas Association are experiencing economic harm); Dkt. 37-6, Kaminski Decl. ¶¶ 4-5 (same as to members of the National Propane Gas Association); Dkt. 37-13, Holmes Decl. ¶ 4 (supplier of propane gas systems is experiencing lost sales); Dkt. 37-11, Giannavola Decl. ¶¶ 5-6 (supplier of gas fireplace systems is witnessing declining sales and lost business opportunities); Dkt. 37-10, Arpino Decl. ¶¶ 3-4.

Once the ban becomes operative, it will outlaw some of Plaintiffs' businesses or lines of business. *See, e.g.*, Dkt. 37-11, Giannavola Decl. ¶ 6 (about half of member's gas fireplace business is tied to new construction); Dkt. 37-5, Cummings Decl. ¶ 7; Dkt. 37-13, Holmes Decl. ¶¶ 3-4. It will also cause union members involved in gas construction and plumbing to lose work opportunities and, in many cases, their jobs. For example, International Brotherhood of Electrical Workers 1049 represents 1,500 workers involved in gas installation and service whose jobs are threatened by the gas ban. Dkt. 37-14, Guidice Decl. ¶ 3; *see also* Dkt. 37-16, Brooks Decl. ¶¶ 3-4 (Plumbers Local Union 200 will lose work opportunities that will "cost some members their jobs," among other harms); Dkt. 37-15; Shelby Decl. ¶¶ 3-4 (same as to International Brotherhood of Electrical Workers Local Union 97); Dkt. 37-17, Lundin Decl. ¶¶ 3-4 (members of Master Plumbers Council have had contracts "downsized or canceled" because "eliminating gas piping reduces the amount of plumbing work a project requires").

To put a stop to the irreparable harms caused by New York's preempted gas ban, Plaintiffs brought this suit for declaratory and injunctive relief in October 2023. Dkt. 1.

## ARGUMENT

Article III standing "requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). Article III also requires "that a dispute be ripe for adjudication[;] that is, it must present a real, substantial controversy, not a mere hypothetical question." *Cotton v. Noeth*, 96 F.4th 249, 256 (2d Cir. 2024) (cleaned up). The latter requirement, though sometimes still discussed as constitutional ripeness, turns on the same inquiry as standing's injury-in-fact component. Prudential ripeness, by contrast, is a matter of judge-made policy rather than jurisdiction; it describes the practice of refusing jurisdiction on the ground that a case is not yet fit for review and delay will not harm the parties. *See id.* Courts cannot decline jurisdiction where there is a "purely legal" issue that "will not be clarified by further factual development" and the plaintiffs would suffer hardship from the denial of "prompt judicial review." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014).

These principles establish justiciability here. The gas ban is already harming plaintiffs, as alleged in the complaint and supported by declarations, and those harms will be exacerbated after the ban is implemented. The risk of harm from the statutory ban is not speculative or hypothetical. As this Court recognized, the statute mandates that the Council implement the ban by a date certain. Those injuries are traceable to the statute and would be redressed by a decision from this Court declaring the statute preempted and enjoining its enforcement. This reality readily establishes constitutional standing and ripeness.[3] And because this facial preemption challenge is a purely legal dispute that does not require factual development to resolve, it is prudentially ripe, too. The

---

[3] There is no dispute that the plaintiff organizations satisfy the additional requirements for associational standing that the interests at stake are germane to their purposes and that individual members' participation is unnecessary. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000); Dkt. 1 ¶ 34.

Secretary's unsupported speculation that the Council might not follow through on its statutory mandate is no obstacle to justiciability.

**I.    Plaintiffs Have Standing to Challenge New York's Gas Ban.**

      **A.    Plaintiffs' Actual and Imminent Economic Harms Are Article III Injuries.**

Whether framed as standing or constitutional ripeness, the Secretary's injury arguments "boil down to the same question." *Susan B. Anthony List*, 573 U.S. at 157 n.5 (attribution omitted) (choosing to address the question as one of standing); *see infra* pp. 21-22. The question is whether Plaintiffs can challenge the statutory provisions mandating that the Council implement the gas ban before the Council has finished doing so. The answer is yes.

"It is well settled that pre-enforcement challenges to government regulations can be Article III cases or controversies." *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 473 (7th Cir. 2012). Plaintiffs "do[] not have to await the consummation of threatened injury to obtain preventive relief." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). Rather, a "realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement" will do. *Id.*; *accord Am. Booksellers Found. v. Dean*, 342 F.3d 96, 101 (2d Cir. 2003); *see also 303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2308 (2023) ("a credible threat" sufficed to show standing (attribution omitted)); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) (plaintiffs need only identify a "substantial risk" of future harm, not "literal[] certain[ty] that the harms they identify will come about").[4] Or as the Tenth Circuit put it, "[o]nce the gun has

---

[4] In what appears to be an attempt to suggest that a higher standard applies, the Secretary focuses on *Clapper*'s "certainly impending" formulation, 568 U.S. at 410. *See* Dkt. 38-1 at 7. That attempt is misplaced. Before, in, and after *Clapper*, the Supreme Court has made clear that "literal[] certain[ty]" is not required; a substantial risk of harm is enough. *See Clapper*, 568 U.S. at 414 n.5 (collecting cases finding "standing based on a 'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm" (quoting *Monsanto*, 561 U.S. at 153)); *Susan B. Anthony List*, 573 U.S. at 158 ("An allegation of future

been cocked and aimed and the finger is on the trigger, it is not necessary to wait until the bullet strikes to invoke the Declaratory Judgment Act." *United States v. Colo. Sup. Ct.*, 87 F.3d 1161, 1166 (10th Cir. 1996) (attribution omitted).

> **1.      Plaintiffs are now suffering, and will in the future suffer, concrete and particularized economic harms as a result of the statutory gas ban.**

Plaintiffs and their members are already suffering concrete injuries, and those injuries will only be exacerbated once the gas ban takes effect as required by the challenged statute. *Supra* pp. 4-6.[5] Economic injuries like those at issue here are the bread and butter of Article III injury. *See, e.g.*, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) ("monetary injury to the plaintiff" is one of the "most obvious" forms of "concrete injury in fact under Article III").

Plaintiffs are already suffering economic harm from the gas ban, which is scheduled to eliminate the gas appliance and service market for new buildings in just over a year. Plaintiffs and their members have made investments that even now are forcing them to "proceed and risk penalties," Dkt. 37-9, Nanula Decl. ¶ 5, or otherwise endure financial loss in preparation for compliance with the ban. *Supra* pp. 4-5. Buildings are not planned in a day; Plaintiffs must prepare now for the reality that come December 31, 2025, they will be prohibited from installing gas infrastructure and appliances. These kinds of "compliance costs" borne in anticipation of a "new regulatory regime" constitute "a classic injury-in-fact." *Grand River Enters. Six Nations v. Boughton*, 988 F.3d 114, 121 (2d Cir. 2021) (attribution omitted); *see also Council for Responsible*

---

injury may suffice if the threatened injury is 'certainly impending,' or there is a '"substantial risk" that the harm will occur.'" (quoting *Clapper*, 568 U.S. at 414 n.5)); *see also Citizens for Resp. & Ethics in Washington v. Trump*, 971 F.3d 102, 139-40 (2d Cir. 2020) (Leval, J., statement in support of the denial of *en banc* rehearing) (collecting post-*Clapper* cases confirming that "certainty of impending injury is not necessary" and that a "substantial risk," "risk of real harm," or "sufficient likelihood of future injury" will suffice (cleaned up)).

[5] Because all plaintiffs are seeking the same relief, only one plaintiff needs to have standing for this suit to proceed. *See, e.g.*, *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017).

*Nutrition v. James*, 2024 WL 1700036, at *4 (S.D.N.Y. Apr. 19, 2024) (finding standing to bring a pre-enforcement challenge based on compliance burdens); *cf. LaFleur v. Whitman*, 300 F.3d 256, 270 (2d Cir. 2002) (injury-in-fact "need not be large" (attribution omitted)).

Plaintiffs are also suffering other harms such as lost sales, work opportunities, and revenue. *See, e.g.*, *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) ("[a]ny monetary loss suffered by the plaintiff satisfies" the injury-in-fact requirement); *Cottrell v. Alcon Labs.*, 874 F.3d 154, 163 (3d Cir. 2017) ("[W]here a plaintiff alleges financial harm, standing is often assumed without discussion." (cleaned up)); *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 212 (4th Cir. 2020) ("constriction of [a plaintiff's] pool of potential customers" was injury-in-fact); *Ezell v. City of Chicago*, 651 F.3d 684, 696 (7th Cir. 2011) ("Action Target, as a supplier of firing-range facilities, is harmed by the firing-range ban . . . ."). Once the ban takes effect, Plaintiffs will inevitably suffer these same types of injuries, which will only be exacerbated, leading for example to the demise of certain businesses or lines of business. These concrete and particularized harms satisfy Article III under well-established case law.

The Secretary makes no serious challenge to the nature of these harms. It is telling that the Secretary buries his only argument in this regard in a footnote that cites no authority. The Secretary suggests that these harms are not "concrete injury in fact" because "business decisions, construction planning and consumer behavior" are "subject to a myriad of influences." Dkt. 38-1 at 10 n.4. But binding precedent is to the contrary: "A plaintiff is not required to show that a statute is the sole or the but-for cause of an injury." *Tweed–New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019) (reversing the district court's decision that "the causation element was not satisfied" "because other uncertainties stood in the way of the completion of" the plaintiff's planned runway extension besides the statute banning it). True, some customers would choose

electric appliances and some projects would be built without gas even without the ban. But the statute takes away that choice; it "stands as an absolute barrier" to installing gas infrastructure and appliances, and so it harms Plaintiffs. *See id.* (quoting *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261 (1977)). To take just a few examples, Mulhern Gas and Holmes Mechanical will not be able to sell or install banned equipment and appliances in New York and will of course not be hired to service appliances that are never installed. *See* Dkt. 37-5, Cummings Decl. ¶ 7; Dkt. 37-13, Holmes Decl. ¶¶ 3-4. And with gas infrastructure banned from new buildings, union members will not be employed to install gas mains, piping, or infrastructure. *See supra* p. 6. Those are inevitable results of the ban, not speculation.[6]

### 2. The Council's and Secretary's nondiscretionary duty to implement the gas ban by a date certain satisfies the imminence requirement.

The gas ban—and with it, Plaintiffs' harm—is imminent; there is nothing hypothetical about it. The challenged statute unambiguously requires the gas ban to take effect on December 31, 2025; the Council and Secretary have no option but to comply. *Supra* pp. 3-4. Plaintiffs therefore face, at a minimum, "a realistic danger of sustaining a direct injury as a result of the [gas ban's] operation or enforcement" once the Code provisions are adopted, as they must be. *Babbitt*, 442 U.S. at 298. Article III requires nothing more in a facial preemption challenge like this one. *See, e.g., Tweed–New Haven Airport Auth.*, 930 F.3d at 71 (airport authority had standing to bring a pre-enforcement preemption challenge to a statute prohibiting a runway expansion); *Air Transp. Ass'n of Am. v. Cuomo*, 520 F.3d 218, 222 (2d Cir. 2008) (per curiam)

---

[6] Indeed, as Intervenors recognize, their economic interest in preserving the challenged statute is the mirror image of Plaintiffs' economic injury. *See* Dkt. 39-2 at 8-10 (Intervenors explaining that the challenged statute advances their interests at the expense of Plaintiffs' "by simultaneously reducing the market for gas combustion and increasing the market for heat pumps" (citing Dkt. 39-3, Nowak Decl. ¶¶ 3, 7)).

("Air Transport's preenforcement [preemption] challenge presents no problem of unripeness or other barriers to justiciability.").

The Fourth Circuit's well-reasoned decision in *Retail Industry Leaders Ass'n v. Fielder*, 475 F.3d 180 (4th Cir. 2007), is directly on point.  There, Maryland's Secretary of Labor argued that the plaintiff's facial preemption challenge to a Maryland statute was not justiciable because the statute was "not yet effective and . . . he ha[d] not yet promulgated regulations implementing" it.  *Id.* at 186.  The Fourth Circuit disagreed, finding both standing and ripeness based on actual and imminent injury.  *See id.* at 186-88.  One of the plaintiff's members was already suffering actual injury because it had to "alter its internal accounting procedures and healthcare spending" in preparation for compliance with the statutory requirements, causing "administrative burdens" and "expenses."  *See id.*  And the member faced imminent injury from having to comply with the statute on its scheduled effective date.  *Id.*  The lack of implementing regulations was no obstacle to justiciability because any such regulations "could not alter the [statute's] provisions, which clearly establish[ed] the" allegedly preempted requirements.  *Id.* at 188 (discussing ripeness).

So too here:  Plaintiffs have already begun to alter their business strategy and bear costs in preparation for compliance with the gas ban; they will undoubtedly suffer further economic injuries once the ban is implemented; and the Council's ongoing rulemaking cannot and will not change what the statute requires.  Because the challenged statute "clearly establish[es]" the ban Plaintiffs claim is preempted, *Retail Indus.*, 475 F.3d at 188, Plaintiffs' injuries are imminent.

None of the Secretary's arguments overcomes these well-established principles.

a.      First, the Secretary's primary argument, on which all his claims hinge, is that Plaintiffs' injuries are not actual or imminent because the gas ban's implementation is uncertain.  *See, e.g.*, Dkt. 38-1 at 3, 7-9, 12-13.  That premise cannot be reconciled with the plain text of the

statute, which explicitly requires the Council to amend the Codes to include the gas ban by December 31, 2025. *Supra* pp. 3-4. As this Court has recognized, the statute gives the Council no choice in the matter; it "is tasked with integrating [the statute's] mandatory policy into the Codes" and must "merely do[] what is required of [it] pursuant to the Legislature's enacted statute." Dkt. 28 at 13. Indeed, the Council members relied on that point to secure their dismissal from this suit, conceding that "the Council's role here is limited to performing the non-discretionary duty of integrating the Legislature's prohibition into the two Codes." Dkt. 25 at 5; *see id.* at 5-7. Without any discretion on the Council's part, there is no meaningful contingency that could undermine the imminence (*i.e.*, certainty) of Plaintiffs' injury. *Cf. Clapper*, 568 U.S. at 412 (holding that, where a statute "at most *authorizes*—but does not *mandate* or *direct*—the surveillance that [the plaintiffs] fear," the plaintiffs' allegations were "conjectural").[7]

The Secretary inexplicably suggests that the Council's obligation to incorporate the gas ban into the Codes *begins* on December 31, 2025 and is temporally unbounded—which the Secretary then uses to claim that there is uncertainty as to the ban's timing. Dkt. 38-1 at 3 (asserting that "[t]he Legislature further directed that "*on or after*" December 31, 2025, the Codes be amended"); *id.* at 12-13 ("prohibitions would not take effect before 2026 at the very soonest"). The statute says no such thing. It bans "installation of fossil-fuel equipment and building systems . . . on or after" December 31, 2025. N.Y. Energy § 11-104(6); N.Y. Exec. § 378(19);

---

[7] It is for this reason that the Secretary's suggestion that there can be no legally cognizable harm from the statute because the statute does not directly impose a ban, Dkt. 38-1 at 6-7, is misplaced. True, the Council here is a "sort of middleman" that must implement the ban as prescribed by the statute before the ban takes effect. Dkt. 28 at 13. But that does not change the fact that the statute is the source of the ban, and it is the statute that commands the Council to complete its nondiscretionary duty to adopt the ban by a date certain. Any harms stemming from the ban thus derive from the statute. This "unusual" arrangement, *id.* at 12, does not make Plaintiffs' harms speculative or the case any less justiciable.

*supra* pp. 3-4.  "[O]n or after" modifies "installation" and thus dictates when the ban must take effect—and therefore by what date the Council must amend the codes.

Next, in an about-face from his earlier concession that the statute gives the Council a "non-discretionary duty," Dkt. 25 at 5, the Secretary now suggests that the Council has discretion to refuse to adopt the gas ban after all, which he says makes the "outcome" uncertain, Dkt. 38-1 at 3-4, 8-9, 12-14.  The Secretary speculates that the Council's obligations under the State Administrative Procedure Act ("APA") and the State Environmental Quality Review Act ("SEQRA") might somehow lead it to refuse to implement the ban.  *Id.* at 3-4, 8-9, 12-14.  But beyond outlining the administrative process, the Secretary does not explain how it could possibly cause him or the Council to stop short of complying with the statutory mandate to incorporate the ban into the Codes.  *See id.*  For good reason:  Nothing in the law of administrative procedure authorizes the Council or the Secretary to flout this (or any other) statute—and they could be compelled by state courts to comply with state law if they tried.

Start with the New York APA.  The Secretary cites only section 202, which sets out the notice and comment rulemaking process.  *See* N.Y. A.P.A. § 202; Dkt. 38-1 at 3-4.  Nothing in that section authorizes any agency to deviate from a statutory mandate.  And the Secretary ignores section 205, which authorizes judicial review of agency rulemaking under Article 78 of the New York Civil Practice Law and Rules.  N.Y. A.P.A. § 205; *see Walton v. N.Y. State Dep't of Corr. Servs.*, 863 N.E.2d 1001, 1005 (N.Y. 2007).  Article 78 in turn allows courts to review whether an agency "failed to perform a duty enjoined upon it by law" and "whether a determination was . . . affected by an error of law or was arbitrary and capricious or an abuse of discretion."  N.Y. C.P.L.R. 7803(1), (3); *see, e.g.*, *Save America's Clocks, Inc. v. City of New York*, 124 N.E.3d 189, 195-96 (N.Y. 2019) (summarizing standards of review); *see also Adirondack Wild: Friends of the*

*Forest Preserve v. N.Y. State Adirondack Park Agency*, 138 N.E.3d 1055, 1059 (N.Y. 2019) ("irrational, arbitrary and capricious or contrary to law").  Under that standard, the Secretary and Council cannot contravene the Legislature's express instructions, which here unambiguously prescribe the terms of the gas ban.

SEQRA is no more help to the Secretary.  That statute is simply "a legislative attempt to ensure that state and local agencies consider the environmental impact of their proposed actions." *Spitzer v. Farrell*, 791 N.E.2d 394, 397 (N.Y. 2003).  Because "[n]othing in the law requires an agency to reach a particular result on any issue," *Jackson v. N.Y. State Urban Dev. Corp.*, 494 N.E.2d 429, 436 (N.Y. 1986), SEQRA cannot possibly authorize an agency to reach a result specifically prohibited by statute.  *Contra* Dkt. 38-1 at 4, 8-9, 14.

To be sure, the rulemaking process could affect the exact "contours" of the "final enforceable regulations," Dkt. 38-1 at 14.  The Legislature directed the Council to include certain exceptions to the gas ban and to define the precise scope of those exceptions.  *See* N.Y. Energy § 11-104(7)(b) (listing allowed exceptions for emergency backup power, manufactured homes, and parts of buildings used for specific purposes); *id.* § 11-104(7)(c) (requiring the exceptions, "to the fullest extent feasible," to be limited to "the system and area of the building for which" applying the gas ban "is infeasible," require "electrification ready" construction, and "minimize emissions"); *id.* § 11-104(7)(d) (requiring the Council to "periodically review[]" exceptions); N.Y. Exec. § 378(19)(c)-(e) (same scheme).  But nothing in this case turns on the exact scope of the exceptions or even the ban's final wording.  Plaintiffs contend that EPCA preempts the ban on its face; even if the Council were to give the exceptions their maximum scope, the statutorily prescribed ban will still prohibit gas appliances and infrastructure and thus will still be preempted.

That leaves the Secretary's suggestion that the Council could throw its statutory duty to the wind and vote against the ban or that he could refuse to approve it.  *See* Dkt. 38-1 at 9 (asserting that "the outcome of the Council's vote" is "uncertain"); *id.* at 5 (describing the Secretary's role in approving Code amendments).  The speculative possibility that the Secretary and Council will disregard the law neither makes Plaintiffs' injuries any less imminent nor justifies delaying review of their claim.  Courts evaluating standing to bring a pre-enforcement challenge "presume that the government will enforce the law as long as the relevant statute is recent and not moribund," absent "a disavowal by the government."  *Antonyuk v. James*, 120 F.4th 941, 1005-06 (2d Cir. 2024).  Likewise, courts "generally presume that government agencies comply with the law."  *E.g.*, *WildEarth Guardians v. Connor*, 920 F.3d 1245, 1261 (10th Cir. 2019); *accord Pit River Tribe v. U.S. Forest Serv.*, 615 F.3d 1069, 1082 (9th Cir. 2010) (same); *cf. Steubing v. Brinegar*, 511 F.2d 489, 495 (2d Cir. 1975) ("The plaintiffs had a right to assume that federal officials would comply with applicable law.").  That is all the more so here given that the Council has already taken steps to implement the ban on schedule in accordance with the Legislature's mandate, *supra* pp. 3-4.

The Secretary nonetheless insists that "[c]ourts reject assertions of injury in fact under these exact circumstances"—that is, where the "timing" and "outcome" of the Council's vote "remain uncertain." Dkt. 38-1 at 9.  As explained, those are not the circumstances here.  So it is no surprise that neither of the cases the Secretary cites remotely resembles this one.  *See Lacewell v. Off. of the Comptroller of the Currency*, 999 F.3d 130, 142-48 (2d Cir. 2021) (no substantial risk of injury where the claim depended on a chain of speculative and discretionary events); *N.Y. Bankers Ass'n v. City of New York*, 2014 WL 4435427, at *10 (S.D.N.Y. Sept. 9, 2014) (enforcement of the challenged statute was impossible because the mayor had disavowed and was blocking enforcement at the time of the suit).  Indeed, *Lacewell* recognized that courts have found standing

where a new statute "had already led to pecuniary injury at the time of the lawsuit" or "such injury was inevitable"—both of which are the case here. *See* 999 F.3d at 147 (collecting cases).

**b.** Second, and relatedly, the Secretary argues that Plaintiffs lack standing because the gas ban is not yet enforceable against them. Dkt. 38-1 at 9-10. But that does not preclude standing. "Where the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect." *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102, 143 (1974); *accord Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010) (same). "[P]re-enforcement challenges to recently enacted legislation" thus can be, and "often are, brought "even before the legislation's effective date." *Mintz v. Chiumento*, 724 F. Supp. 3d 40, 51-52 (N.D.N.Y. 2024) (collecting cases).[8]

That the gas ban's effective date is a year away does not make it—or Plaintiffs' injuries—any less imminent. Article III's imminence requirement is about the "probability of harm, not its temporal proximity." *520 S. Mich. Ave. Assocs. v. Devine*, 433 F.3d 961, 962 (7th Cir. 2006); *accord Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 343 (2d Cir. 2009) ("In describing imminence, the [*Lujan*] Court was not imposing a strict temporal requirement that a future injury occur within a particular time period following the filing of the complaint. Instead, the Court focused on the *certainty* of that injury occurring in the future, seeking to ensure that the injury was not speculative."), *aff'd in relevant part by an equally divided court, rev'd in other part*, 564 U.S. 410 (2011). So it is enough that the ban is "looming and certain." *Roman Cath. Archdiocese of*

---

[8] The Secretary cites *Vitagliano v. County of Westchester*, 71 F.4th 130, 136 (2d Cir. 2023), for the proposition that "to obtain pre-enforcement review [a] plaintiff must show, *inter alia*, that the proscription in the challenged law is presently enforceable." Dkt. 38-1 at 10. But *Vitagliano* does not say that. *See* 71 F.4th at 136-40. In fact, that case recognizes that the opposite is true. *Id.* at 140 n.5 (citing *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988), as a case "permitting a pre-enforcement challenge to a statute initiated before the statute became effective").

*N.Y. v. Sebelius*, 907 F. Supp. 2d 310, 325 (E.D.N.Y. 2012) (collecting cases); *see, e.g.*, *Village of Bensenville v. FAA*, 376 F.3d 1114, 1119 (D.C. Cir. 2004) (plaintiffs had standing to challenge a fee that would not take effect for thirteen years because the order authorizing it was final and "the impending threat of injury to the [plaintiffs was] sufficiently real to constitute injury-in-fact" (cleaned up)); *Geo Grp. v. Newsom*, 50 F.4th 745, 753-54 (9th Cir. 2022) (injuries were "sufficiently imminent even though they will not occur for at least two years" and depended on agency action in the meantime).

Besides, the ban's impending effective date is close enough that the statute is already harming Plaintiffs by interfering with their businesses and work opportunities. *Supra* pp. 4-6; *see New York v. United States*, 505 U.S. 144, 175 (1992) (challenge to a statute was ripe because the plaintiff needed to begin preparing to comply even though the effective date was four years away).

\* \* \*

In sum, the Council has no choice but to implement the gas ban—and to do so by a date certain, December 31, 2025. Plaintiffs thus face the required "realistic danger" or "substantial risk" of harm tethered to the challenged statute. *See Babbitt*, 442 U.S. at 298; *Susan B. Anthony List*, 573 U.S. at 158. Because no contingencies would affect whether the gas ban is implemented, Plaintiffs' current and future injuries resulting from the ban satisfy the injury-in-fact requirement.

### B.    Plaintiffs' Injuries Are Traceable to the Secretary's Enforcement Authority and Redressable by the Requested Declaratory and Injunctive Relief.

With Plaintiffs' injury-in-fact established, the remaining requirements fall easily into place. Plaintiffs' injuries result from the impending gas ban, including its approval and enforcement by the Secretary, and thus are "fairly traceable to the challenged action of the defendant." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). And "as to redressability, there is no question that a favorable decision will likely redress" Plaintiffs' injuries by barring enforcement

of the challenged statute. *Tweed–New Haven*, 930 F.3d at 72 (addressing a preemption claim); *accord Cayuga Nation v. Tanner*, 824 F.3d 321, 332 (2d Cir. 2016) (injury caused by an ordinance "could be redressed by a favorable decision finding that the [o]rdinance is preempted"); *see also, e.g.*, *Chamber of Com. of the U.S. v. Whiting*, 563 U.S. 582, 593-94 (2011) (resolving a "pre-enforcement" preemption suit "against those charged with administering" the challenged law).

The Secretary, without a hint of irony, first contends that Plaintiffs cannot satisfy the traceability requirement because the challenged statute was "adopted by the Legislature, which is not a party here, not by the Secretary." Dkt. 38-1 at 10. Not so. As the Secretary is well aware, the Legislature is not a party because it cannot be a party. Dkt. 19-1 at 3-4 (Secretary's brief explaining sovereign immunity). That is what *Ex parte Young* is for. The Secretary has long since conceded that his enforcement authority makes him a proper *Ex parte Young* defendant. Dkt. 19-1 at 2 (contending only that relief against the Secretary is limited "to declaratory and prospective injunctive relief"); Dkt. 25 at 3 (conceding that Plaintiffs "can pursue prospective injunctive relief against the Secretary"). And this Court has already recognized the Secretary's role in approving and enforcing the challenged statute. Dkt. 28 at 16 (Given the Secretary's duty to review and approve Code amendments, "it is the Secretary . . . that enacts amendments to the Codes; and thus it is the Secretary that has the authority to implement the relevant statutes directing the gas equipment amendments that Plaintiffs now challenge . . . ."). [9]

Here, the same enforcement authority that makes the Secretary a proper *Ex parte Young* defendant also satisfies the traceability and redressability requirements. *See, e.g.*, *Tweed–New Haven*, 930 F.3d at 71 (finding standing in an *Ex parte Young* suit against a state attorney general

---

[9] *See also* Dkt. 28 at 11 ("[T]he relevant statutes and related provisions of the New York Executive Law affirmatively place enforcement responsibility on the Secretary and local/county government, not the Code Council."); *see also id.* at 12 (recognizing the Secretary's distinct role relative to the other Council members).

based on injuries caused by a state statute that were redressable by a declaratory judgment that the statute was preempted); *Matsumoto v. Labrador*, __ F.4th __, 2024 WL 4927266, at *6 (9th Cir. Dec. 2, 2024) (collecting cases holding that the defendant's authority to enforce a challenged statute satisfies the traceability requirement); *Frank v. Lee*, 84 F.4th 1119, 1135-36 (10th Cir. 2023) ("For the same reasons [the defendants are proper *Ex parte Young* defendants], they have sufficient enforcement authority to satisfy the causation element of standing.").[10]

Second, reprising his injury argument, the Secretary contends that neither the traceability nor redressability requirements can be satisfied because the gas ban is not yet enforceable. Dkt. 38-1 at 11. That is wrong for all the same reasons it does not defeat Plaintiffs' injury. If the Secretary were right, no plaintiff would ever have standing to challenge a government action before its effective date. That is not the law. *See, e.g.*, *Stolt–Nielsen S.A.*, 559 U.S. at 670 n.2; *Reg'l Rail Reorganization Act Cases*, 419 U.S. at 143; *supra* pp. 17-18. The Secretary's cited cases are not to the contrary—and could hardly be farther afield. *See California v. Texas*, 141 S. Ct. 2104, 2112, 2114-16 (2021) (injury was not traceable to the Affordable Care Act's insurance coverage mandate or redressable by an injunction because Congress had zeroed out the penalty, making the mandate "textually unenforceable"); *Liu v. U.S. Congress*, 834 F. App'x 600, 604-06 (2d Cir. 2020) (plaintiff lacked standing to sue Congress and its leaders for vote dilution because the alleged injury was caused by third-party actors, and because federal courts lack the power to award the requested relief, which included compelling Congress to enact particular statutes and "declar[ing] the Senate unconstitutional").

---

[10] *See also, e.g.*, *Mi Familia Vota v. Ogg*, 105 F.4th 313, 329 n.11 (5th Cir. 2024) (recognizing "significant overlap" (cleaned up)); *Doe v. Holcomb*, 883 F.3d 971, 975 (7th Cir. 2018) (similar).

## II.    This Purely Legal Dispute Is Ripe.

The "major purpose" of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (cleaned up).  As noted, "[r]ipeness has both constitutional and prudential dimensions." *Cotton*, 96 F.4th at 256; *accord Stolt–Nielsen*, 559 U.S. at 670 n.2 ("Ripeness reflects constitutional considerations that implicate Article III limitations on judicial power, as well as prudential reasons for refusing to exercise jurisdiction." (cleaned up)).  The Secretary forfeited prudential ripeness, but regardless, both are satisfied here.

### A.    Plaintiffs' Injury-in-Fact Also Establishes Constitutional Ripeness.

The constitutional ripeness requirement is satisfied for all the same reasons Plaintiffs have standing.  Constitutional ripeness asks simply whether the dispute "present[s] a real, substantial controversy, not a mere hypothetical question." *Cotton*, 96 F.4th at 256 (attribution omitted).  That collapses into the injury-in-fact component of standing.  *See, e.g.*, *Lacewell*, 999 F.3d at 149 (noting "the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical" (cleaned up)); *Nat'l Org. for Marriage*, 714 F.3d at 688-89 & nn.5-6 ("[c]onstitutional ripeness" is "really just about the" injury-in-fact requirement); *POET Biorefining, LLC v. EPA*, 970 F.3d 392, 403 (D.C. Cir. 2020) ("Constitutional ripeness is subsumed into the Article III requirement of standing . . . ." (cleaned up)).

Accordingly, because Plaintiffs here have standing to bring their claim, it follows that the claim is constitutionally ripe.  *See, e.g.*, *Duke Power Co. v. Carolina Env't Study Grp.*, 438 U.S. 59, 81 (1978) (holding that the conclusion that the plaintiffs had standing also satisfied the constitutional ripeness requirement); *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427-28 (D.C. Cir. 1996) ("[I]f a threatened injury is sufficiently imminent to establish standing,

the constitutional requirements of the ripeness doctrine will necessarily be satisfied." (citation

omitted)); *see also Susan B. Anthony List*, 573 U.S. 149 at 157 n.5.[11]

### B.    The Secretary's Prudential Ripeness Objection Is Forfeited and Incorrect.

#### 1.    The Secretary forfeited his prudential ripeness objection by failing to include it in his first Rule 12 motion.

Unlike standing and constitutional ripeness, issues of prudential ripeness are not

jurisdictional and can thus be waived or forfeited. *See Stolt–Nielsen*, 559 U.S. at 670 n.2 (rejecting

a prudential ripeness argument "as waived").    The Secretary previously moved under

Rule 12(b)(1) to dismiss some of Plaintiffs' requests for relief on the ground of sovereign

immunity, but did not raise prudential ripeness.  Dkt. 19-1 at 2, 9-10.  Parties are prohibited from

making successive Rule 12 motions, aside from certain enumerated exceptions.  Rule 12(g)(2)

provides:  "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule

must not make another motion under this rule raising a defense or objection that was available to

the party but omitted from its earlier motion."  Fed. R. Civ. P. 12(g)(2).  Together with Rule 12(h),

this provision enforces the policy that "[a] party who by motion invites the court to pass upon a

threshold defense should bring forward all the specified defenses he then has and thus allow the

court to do a reasonably complete job."  *See* Fed. R. Civ. P. 12(h) advisory committee's note to

1966 amendment.

---

[11] The Second Circuit has occasionally suggested that a distinction might exist in some cases, but it does not appear to have ever identified such a case.  *See Simmonds v. INS*, 326 F.3d 351, 358 (2d Cir. 2003) (leaving open "the possibility that a case may be rendered sufficiently abstract by its prematurity as to cause it to fail the requirements of Article III in other ways," but holding that the plaintiff's claim was constitutionally ripe because he alleged "a concrete injury" that was "not hypothetical"); *see also Nat'l Org. for Marriage*, 714 F.3d at 688 n.5 (explaining that the doctrines "are somewhat different in practice" in that describing claims as not ripe implies "that they someday might be," but that "[l]ogically, . . . there is no difference" (emphasis omitted)). In any event, there is no basis to distinguish between standing and constitutional ripeness here.

Rule 12(g)(2) bars the Secretary from asserting prudential ripeness objections now in a second motion.  All the prudential ripeness objections the Secretary raises in his Rule 12(c) motion were available when he made his Rule 12(b)(1) motion in December 2023 (and indeed, that motion relied on many of the same points to seek sovereign immunity for the Council members).  Neither of the exceptions to Rule 12(g)(2) applies:  Prudential ripeness is not among the issues enumerated in Rule 12(h)(2), and Rule 12(h)(3) does not apply because prudential ripeness is not jurisdictional.

Indeed, just four days after filing the Rule 12(b)(1) motion, the Secretary provided a draft case management plan identifying the same issue he raises now: "whether any challenge to the impending statutory provisions is justiciable until the completion of the administrative process for adoption."  Ex. 1 at 4; *see also id.* (comment noting that "defendants are not seeking to litigate ripeness/prematurity," but rather to defer summary judgment briefing until "the amendments become legally effective").  But the Secretary withheld those objections, choosing instead to wait for a decision on sovereign immunity and to then use prudential ripeness as an excuse to delay this case further.  *See* Dkt. 33 at 9-10 (Secretary arguing that ripeness concerns warrant postponing briefing until the Council adopts the Code amendments).  Tactics like that are exactly what Rule 12(g)(2) exists to prevent.

> **2.    Because waiting for the Council to complete the amendment process would harm Plaintiffs without facilitating judicial review, there is no prudential justification for declining jurisdiction.**

Regardless, the Secretary's prudential ripeness arguments are wrong on the merits.  In considering prudential ripeness, courts "ask whether the claim is fit for judicial resolution and whether and to what extent the parties will endure hardship if decision is withheld."  *Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 10 F.4th 87, 100 (2d Cir. 2021) (attribution omitted).  Prudential ripeness is a matter of policy, not Article III jurisdiction, and thus "is in some tension with [the Supreme Court's] recent reaffirmation of the principle that a federal court's

obligation to hear and decide cases within its jurisdiction is virtually unflagging." *Susan B. Anthony List*, 573 U.S. at 167 (cleaned up) (declining to "resolve the continuing vitality of the prudential ripeness doctrine").

In any event, prudential ripeness is "easily satisfied" when a case "presents an issue that is purely legal, and will not be clarified by further factual development" and the plaintiffs would suffer injury if "prompt judicial review" were denied. *Susan B. Anthony List*, 573 U.S. at 167 (cleaned up); *see also Club Madonna, Inc. v. City of Miami Beach*, 924 F.3d 1370, 1380 (11th Cir. 2019) (holding that "a facial challenge presenting a purely legal argument . . . is presumptively ripe for judicial review because that type of argument does not rely on a developed factual record" (cleaned up)); *Nat'l Ass'n of Home Builders v. U.S. Army Corps. of Eng'rs*, 440 F.3d 459, 464 (D.C. Cir. 2006) (similar). That is precisely the case here.

Whether New York's gas ban is preempted "is a purely legal question involving no future contingencies" that could affect the legal analysis. *See Cotton*, 96 F.4th at 256-57; *Club Madonna*, 924 F.3d at 1380; *see also Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983) (holding that a challenge was ripe because the "question of preemption is predominantly legal" and "need not await [factual] development"); *NE Hub Partners, LP v. CNG Transmission Corp.*, 239 F.3d 333, 344 (3d Cir. 2001) ("[A] determination of whether there is preemption primarily raises a legal issue, a circumstance which facilitates entry of a declaratory judgment."). As explained, *supra* pp. 12-17, any "future contingencies [that] remain are not determinative of the questions before" the Court. *Revitalizing Auto Cmtys.*, 10 F.4th at 100 (cleaned up); *see also, e.g.*, *see also Pearson v. Holder*, 624 F.3d 682, 684 (5th Cir. 2010).

And "denying prompt judicial review would impose a substantial hardship on" Plaintiffs. *Susan B. Anthony List*, 573 U.S. at 167-68. Plaintiffs are already suffering injuries from the effects of and need to prepare for the impending gas ban. Delaying judicial review would exacerbate those injuries and thus cause hardship to Plaintiffs. *See, e.g.*, *Pac. Gas & Elec.*, 461 U.S. at 201-02 (holding that a preemption issue "should be decided now" because "decisions to be made now or in the short future may be affected by whether we act," and "requir[ing] the industry to proceed without knowing whether the moratorium is valid would impose a palpable and considerable hardship on the utilities"); *City of Kennett v. EPA*, 887 F.3d 424, 433 (8th Cir. 2018) (finding hardship where the plaintiff needed to "make planning decisions" based on the challenged action). It is also in the public interest to resolve whether the gas ban is preempted before it is scheduled to take effect. *See Pac. Gas & Elec.*, 461 U.S. at 201-02 (recognizing that uncertainty over a California statute's validity "may ultimately work harm on the citizens of California"). And if Plaintiffs are correct that the gas ban is preempted, "delayed resolution would frustrate one of the key purposes of" EPCA by undermining national uniformity. *Id.* at 202 (attribution omitted).

In sum, "waiting to observe [the Council's] actions would only exacerbate [Plaintiffs'] asserted injury while doing nothing to enable judicial review." *Nat'l Treasury Emps. Union v. Chertoff*, 452 F.3d 839, 854 (D.C. Cir. 2006). This dispute can and should be decided now.

## CONCLUSION

For these reasons, the Secretary's motion should be denied.

25

Dated: December 10, 2024

Caroline M. Walters (NDNY Bar No. 705759)
REICHMAN JORGENSEN
    LEHMAN & FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965
cwalters@reichmanjorgensen.com

Brian C. Baran (*Pro Hac Vice*)
REICHMAN JORGENSEN
    LEHMAN & FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310
bbaran@reichmanjorgensen.com

Respectfully submitted,

*/s/ Sarah O. Jorgensen*

Sarah O. Jorgensen (NDNY Bar No. 704794)
REICHMAN JORGENSEN
    LEHMAN & FELDBERG LLP
1201 West Peachtree Street, Suite 2300
Atlanta, GA 30309
Telephone: (404) 609-1040
sjorgensen@reichmanjorgensen.com

Courtland L. Reichman (*Pro Hac Vice*)
REICHMAN JORGENSEN
    LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
creichman@reichmanjorgensen.com

*Attorneys for Plaintiffs*