# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MULHERN GAS CO., INC., *et al.*,<br><br>                Plaintiffs,<br><br>    v.<br><br>WALTER T. MOSLEY, in his official capacity as New York Secretary of State,<br><br>                Defendant,<br><br>NEW YORK GEOTHERMAL ENERGY ORGANIZATION and PUSH BUFFALO,<br><br>                Intervenor-Defendants. | Case No. 1:23-cv-01267 (GTS/CFH) |

**[Proposed] Brief of the Guarini Center on Environmental, Energy and Land Use Law as *Amicus Curiae* in Support of
Defendant and Intervenors' Opposition to Plaintiff's Motion for Summary Judgment**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

ARGUMENT .................................................................................................................. 2

    I.  EPCA Grants Manufacturers Limited Rights Related To Their Manufacturing And Marketing Obligations Under The Statute—But Does Not Guarantee Their Exemption From Any Laws Unrelated To Their Federal Duties .......................................................................... 2

    II.  New York's Pending Limitations On Fossil Fuel Infrastructure And Appliances In Newly Constructed Buildings Are Not Preempted By EPCA ............................................................. 7

CONCLUSION ............................................................................................................... 12

## TABLE OF AUTHORITIES

**Cases**

*Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492 (9th Cir. 2005) .................................................................................. 5, 6, 7, 8

*Bldg. Indus. Ass'n of Washington v. Washington State Bldg. Code Council*, 683 F.3d 1144 (9th Cir. 2012) ........................................................................................................................ 5, 7

*California Restaurant Association v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024) .............. 6, 7

*Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251 (2013) ........................................................... 9

*Dish Network Corp. v. Ace Am. Ins. Co.*, 431 F. Supp. 3d 415 (S.D.N.Y. 2019) ........................... 7

*New Jersey Thoroughbred Horsemen's Ass'n, Inc. v. NCAA*, 584 U.S. 453 (2018) ...................... 5

*TRW Inc. v. Andrews*, 534 U.S. 19 (2001) ..................................................................................... 8


**Statutes**

42 U.S.C. § 6201 ........................................................................................................................... 10

42 U.S.C. § 6291 ............................................................................................................................. 2

42 U.S.C. § 6291(2) ........................................................................................................................ 2

42 U.S.C. § 6291(4) ........................................................................................................................ 8

42 U.S.C. § 6291(5) ........................................................................................................................ 9

42 U.S.C. § 6291(6)(A) .......................................................................................................... 2, 8, 10

42 U.S.C. § 6291(6)(B) ................................................................................................................... 2

42 U.S.C. § 6293 .................................................................................................................. 2, 4, 5, 9

42 U.S.C. § 6293(c)(1) ................................................................................................................ 3, 8

42 U.S.C. § 6293(e) ........................................................................................................................ 8

42 U.S.C. § 6294 ..................................................................................................................... 4, 5, 9

42 U.S.C. § 6294(c)(1) ................................................................................................................ 3, 8

42 U.S.C. § 6295 ..................................................................................................................... passim

42 U.S.C. § 6295(c) ........................................................................................................................ 5

42 U.S.C. § 6295(*l*)(1)(D) .............................................................................................................. 3

42 U.S.C. § 6295(m)(4)(B) ............................................................................................................. 3

42 U.S.C. § 6295(o)(4) .................................................................................................................. 11

42 U.S.C. § 6295(s) ........................................................................................................................ 8

42 U.S.C. § 6296 ............................................................................................................................ 5

42 U.S.C. § 6296(a) ....................................................................................................................... 3

42 U.S.C. § 6296(b) ....................................................................................................................... 3

42 U.S.C. § 6296(d) ....................................................................................................................... 3

42 U.S.C. § 6297 ........................................................................................................................ 2, 4

42 U.S.C. § 6297(a) ....................................................................................................................... 4

42 U.S.C. § 6297(a)(1) ................................................................................................................... 8

42 U.S.C. § 6297(b) ....................................................................................................................... 4

42 U.S.C. § 6297(c) ..................................................................................................... 1, 4, 5, 9, 10

42 U.S.C. § 6297(c)(1) ................................................................................................................... 5

42 U.S.C. § 6297(c)(3) ................................................................................................................... 5

42 U.S.C. § 6297(d)(4) ................................................................................................................. 11

42 U.S.C. § 6302 ........................................................................................................................ 2, 5

42 U.S.C. § 6302(a)(5) ................................................................................................................... 3

42 U.S.C. §§ 6311–17 .................................................................................................................... 2

N.Y. Energy Law § 11-104(6) ....................................................................................................... 1

N.Y. Energy Law § 11-104(7) ............................................................................................... 1, 9, 10

N.Y. Energy Law §§ 11-104(6) ............................................................................................... 9, 10

N.Y. Energy Law §§ 11-104(8) ..................................................................................................... 1

N.Y. Executive Law § 378(19) ............................................................................................. 1, 9, 10

N.Y. Executive Law § 378(20) ...................................................................................................... 1

**Regulations**

Energy Conservation Program: Energy Conservation Standards for Consumer Furnaces, 88 Fed. Reg. 87,502 (Dec. 18, 2023) ................................................................................................... 4

**Other Authorities**

S. Rep. No. 100-6 (1987) ............................................................................................................... 4

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs challenge portions of two state statutes—N.Y. Executive Law § 378(19)–(20) and N.Y. Energy Law § 11-104(6)–(8) (collectively, the "New York statutes")—and argue that they are preempted by the federal Energy Policy and Conservation Act ("EPCA"). Pls.' Mem. 1, 7–8. In the New York statutes, the State Legislature has directed the State Fire Prevention and Building Code Council ("Code Council") to amend the state's building and energy codes to prohibit future installation of fossil fuel supply infrastructure and fossil fuel-consuming appliances in newly constructed buildings, subject to multiple exceptions. N.Y. Exec. Law §§ 378(19)(a)–(d), (f); N.Y. Energy Law §§ 11-104(6)(b), (7)(a)–(c), (7)(e). In so doing, the State Legislature expressly was concerned with controlling buildings' air pollution impacts—particularly climate change effects arising from the burning of fossil fuels. N.Y. Exec. Law § 378(19)(a); N.Y. Energy Law § 11-104(6)(a)–(b).

As amply documented by Defendant and Intervenors, EPCA's text, structure, and history demonstrate that Plaintiffs' reading of the statute is unfounded, and that the New York statutes do not "concern[] … energy use," 42 U.S.C. § 6297(c),[1] thus placing them outside EPCA's zone of preemption. *See generally* Def.'s Mem. 11–24; Intervenors' Mem. 2–11. We write separately to explain how EPCA creates limited rights for manufacturers, which are focused on ensuring manufacturers are not subject to multiple, potentially conflicting energy efficiency-focused regulations that affect the design of their products or how those products' energy impacts are disclosed to consumers. These rights do *not* include any right to expect the ongoing or universal availability of fossil fuels, nor an unlimited guarantee that EPCA-covered, fossil fuel-consuming

---

[1] Unless otherwise indicated, all subsequent statutory references in this brief are to Title 42, United States Code.

1

appliances may be installed everywhere and forever. EPCA thus does not forbid states from controlling the availability of fossil fuels through building codes, nor does it prohibit states from restricting the installation of fossil fuel-consuming, EPCA-covered appliances for reasons unrelated to those appliances' efficiency. Accordingly, the Court should deny Plaintiffs' motion for summary judgment and requests for relief.

## ARGUMENT

I. **EPCA Grants Manufacturers Limited Rights Related To Their Manufacturing And Marketing Obligations Under The Statute—But Does Not Guarantee Their Exemption From Any Laws Unrelated To Their Federal Duties**

EPCA's statutory structure is centered on improving the energy utilization of "covered products,"[2] focusing specifically on how those products are designed to consume and transform energy into useful outputs, and on how purchasers are informed about products' energy impacts. *See generally* §§ 6291–6297, 6302.[3] As amended, EPCA imposes an extensive set of duties on the Department of Energy ("DOE") to ensure that products covered by the act achieve minimum energy performance levels—which the statute terms "energy conservation standards"[4]—and that DOE increases these minimums through time (as appropriate). *See generally* §§ 6293, 6295. EPCA's regulatory scheme also imposes duties on manufacturers, to ensure that they design covered products to meet applicable energy conservation standards, and that they inform

---

[2] "Covered products" are "consumer products of a type" subject to EPCA regulation. § 6291(2).

[3] EPCA's provisions regulating commercial and industrial equipment largely track those pertaining to consumer products. *See generally* §§ 6311–17. Therefore, remainder of this brief will refer only to EPCA's provisions regulating covered consumer products.

[4] An "energy conservation standard" usually is "a performance standard which prescribes a *minimum level of energy efficiency* or a *maximum quantity of energy use* … determined in accordance with test procedures prescribed under section 6293" of the act. § 6291(6)(A) (emphasis added). For certain consumer products, DOE instead may prescribe a design standard instead of a performance standard. § 6291(6)(B).

2

consumers about the effects of their energy choices clearly and accurately. *Cf.* § 6295(*l*)(1)(D) (indicating labeling rules are intended "to induce manufacturers to produce, and consumers … to purchase, covered products of such type … which achieve the maximum energy efficiency which is technologically feasible and economically justified").

Under EPCA, manufacturers generally are permitted to distribute only covered products that are at least as efficient as DOE-set energy conservation standards. § 6302(a)(5). Manufacturers also are required to supply relevant data to DOE that assists with energy conservation standards' development and enforcement. §§ 6296(b), (d). With respect to products' marketing, EPCA requires manufacturers to label products with disclosures concerning covered products' estimated annual operating costs (or, occasionally, "a different useful measure of energy consumption"), and provides that these disclosures must be based on DOE's covered product testing results. §§ 6294(c)(1), 6296(a). In addition, EPCA forbids manufacturers from making written representations or statements in broadcast advertising "with respect to the energy use or efficiency … of a covered product to which a test procedure is applicable … or the cost of energy consumed by such product, unless such product has been tested in accordance with such test procedure and such representation fairly discloses the results of such testing." § 6293(c)(1).

When it imposed the foregoing duties on manufacturers related to the manufacturing and marketing of covered products, Congress recognized the need to simplify manufacturers' *energy efficiency* compliance obligations in certain respects. Thus, for example, EPCA provides that "[a] manufacturer shall not be required to apply new standards to a product with respect to which other new standards have been required during the prior 6-year period." § 6295(m)(4)(B). This provides manufacturers some relief from the need to increase the energy performance of their products over relatively short time intervals, thereby avoiding some (but not all) of the challenges that might be

associated with more rapid updates to energy conservation standards. *Cf.* Energy Conservation Program: Energy Conservation Standards for Consumer Furnaces, 88 Fed. Reg. 87,502, 87,516–17 (Dec. 18, 2023) (discussing application of EPCA's "6-year lock-out" provision where components of a covered product themselves are covered products, and stating that "[t]he 6-year period applies to covered products *individually*, and ECPA does not provide exceptions to the review requirements when related products or components have overlapping review timeframes" (emphasis added)).

In addition to the foregoing duties and rights with respect to DOE, Congress included several preemption clauses pertaining to *state* laws and regulations that might interfere with manufacturers' obligations under EPCA. *See generally* § 6297. These provisions closely track the structure of DOE's and manufacturers' duties. *Compare* § 6297(a) *with* §§ 6293–6294; *and compare* §§ 6297(b)–(c) *with* § 6295. Overall, they ensure a high degree of national conformity to EPCA's requirements for covered products' design and for disclosures of covered products' energy efficiency when marketed. *See* S. Rep. No. 100-6, at 2, 4, 9 (1987).

However, EPCA's preemption provisions do not convey any promise that manufacturers will be exempt from *all* state laws that might affect their products, including where or when their products may be installed. *See id.* at 4, 9–11. No clause of these provisions explicitly shields manufacturers, for instance, from the traditional police powers of state governments to address the health, environmental, and safety concerns that may be associated with covered products' use, including health, environmental, and safety issues state residents face due to the localized burning of fossil fuels in buildings. *See generally* §§ 6297(a)–(c). EPCA's substantive provisions dictating manufacturers' obligations regarding covered products' design and marketing similarly are silent as to other kinds of legal obligations that manufacturers might face, such as duties to prevent or

4

abate water pollution or air pollution that might arise from covered products' production and distribution or covered products' use by end-users. *See generally* §§ 6293–6296, 6302.

Viewed in their full context, it is clear that EPCA's preemption provisions provide *targeted* protections for certain manufacturer interests: namely, those with respect to covered products' production and marketing, which correspond to manufacturers' federal duties. Put simply, for each federal duty, manufacturers have a "right" not to be subject to a competing sub-national duty that affects the efficiency levels to which products are designed, or that affects what manufacturers must disclose to end-users about products' efficiency. *See Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 500–03 (9th Cir. 2005); *cf. also New Jersey Thoroughbred Horsemen's Ass'n, Inc. v. NCAA*, 584 U.S. 453, 477–79 (2018) (Alito, J.) (discussing federal preemption cases, and stating that "if we look beyond the phrasing employed in the Airline Deregulation Act's preemption provision, [for example,] it is clear that this provision operates just like any other federal law with preemptive effect. It confers on private entities … a federal right to engage in *certain* conduct subject only to *certain* (federal) constraints" (emphasis added)).

Thus, for example, a state plainly cannot set standards that apply to manufacturers regarding room air conditioners that require those devices to achieve higher energy efficiency ratios than applicable federal standards. *See* §§ 6295(c), 6297(c). Similarly, EPCA limits a state's ability to require *purchasers* to choose only product units that are more efficient than federal standards, or to install only such more efficient units in new construction. *See* §§ 6297(c)(1), (3); *see also Bldg. Indus. Ass'n of Washington v. Washington State Bldg. Code Council*, 683 F.3d 1144, 1151–52 (9th Cir. 2012). These *purchaser* protections logically relate to *manufacturers'* "right" (absent an exception) not to be compelled by a state to distribute only versions of their products

5

that are designed to be more efficient than required by the energy conservation standards set under section 6295.

Yet prior cases make clear that that section 6297 does *not* preempt regulations that do *not* implicate manufacturers' specific EPCA obligations. For instance, in *Air Conditioning & Refrigeration Institute v. Energy Resources Conservation & Development Commission*, the Ninth Circuit held that section 6297(a) did not preempt California from, *inter alia*, requiring that manufacturers label their products with their names and the products' model numbers and dates of manufacture. *Air Conditioning & Refrigeration Inst.*, 410 F.3d at 500–02. The Ninth Circuit reasoned that California's regulations did not address product label disclosures of "any measure of energy consumption," which are the actual subject of manufacturers' duties under section 6294. *Id.* at 501–02. The Ninth Circuit further concluded that Congress's use of the phrase "with respect to" in section 6297(a) did not cause California's requirements to be preempted: looking to case law concerning equivalent terminology, the court stated that "the term 'relate to' cannot be taken to extend to the furthest stretch of its indeterminacy, or else for all practical purposes pre-emption would never run its course." *Id.* at 502 (quotation marks and citation omitted). Because California's requirements were not logically or substantially connected to manufacturers' EPCA disclosure duties, the Ninth Circuit held that they could be enforced. *Id.*

*California Restaurant Association v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024) is the only appellate opinion that does not adhere to the foregoing understanding of EPCA's preemptive scope. Yet, as detailed in the dissent from the circuit's denial of rehearing en banc, there are serious reasons to doubt the soundness of the panel's holding in that case: the panel misconstrued EPCA's language by assigning "key terms … colloquial meanings instead of the technical meanings required by established canons of statutory interpretation," *id.* at 1120 (Friedland, J., dissenting

from denial of rehearing en banc), and it furthermore "engage[d] in 'uncritical literalism'" when reasoning from the statute's use of the term "concerning," *id.* at 1126 (Friedland, J., dissenting from denial of rehearing en banc). The panel also departed from the Ninth Circuit's own precedents examining EPCA preemption—which support a view of manufacturer rights and the statute's preemptive effect tailored to Congress's clear policy purposes—without any substantial justification for the divergence. *Compare generally id.* at 1100–07, *with Air Conditioning & Refrigeration Inst.*, 410 F.3d at 497–505, *and with Bldg. Indus. Ass'n of Washington*, 683 F.3d at 1145–49, 1151–53. This Court need not repeat *California Restaurant Association*'s mistakes: "federal courts have an obligation to engage in independent analysis, with binding precedent set only by the Supreme Court and the Court of Appeals for that circuit." *Dish Network Corp. v. Ace Am. Ins. Co.*, 431 F. Supp. 3d 415, 425 (S.D.N.Y. 2019) (quotation marks and citation omitted).

## II. New York's Pending Limitations On Fossil Fuel Infrastructure And Appliances In Newly Constructed Buildings Are Not Preempted By EPCA

As described in detail by Defendant and Intervenors, Plaintiffs misconstrue EPCA's technical language and ignore its full context, and they thus misunderstand EPCA's preemptive effect. Def.'s Mem. 16–24; Interventors' Mem. 2–7, 11–15. When section 6297(c)'s key terms are given their proper meanings, and due attention is paid to their statutory context, it is clear the New York statutes are beyond EPCA's preemptive reach. The New York statutes do not affect the energy performance levels to which manufacturers' products must be designed. Rather, the New York statutes simply direct the Code Council to limit where and when fossil fuel-consuming covered appliances may be installed—namely, in certain newly constructed buildings. EPCA does not grant manufacturers any protections from this exercise of New York's police powers. *See also* Def.'s Mem. 10–16; Intervenors' Mem. 9–11.

Defendant is correct in characterizing how Plaintiff's amputation of the phrase "determined in accordance with test procedures under section 6293 of this title" from the statutory definition of "energy use," § 6291(4), affects the term's meaning and role in the overall statute. *See* Def.'s Mem. 16–17, 19–21. Seen from the perspective of manufacturer rights under EPCA, Plaintiffs' misquotation of section 6291(4) is unjustified because section 6293's test procedures are key to understanding what manufacturers are and are not obligated to do under EPCA. Section 6293's test procedures dictate the content of the labels that manufacturers must attach to covered products, as well as what manufacturers can (and cannot) say to potential purchasers of covered products regarding those products' energy performance. *See* §§ 6293(c)(1), 6294(c)(1). Section 6293 provides the foundation for the energy conservation standards to which covered products must be designed. § 6291(6)(A); *see also* § 6293(e). And section 6293 provides the means to assess products' compliance with energy conservation standards. § 6295(s). Moreover, section 6293's test procedures dictate, in part, how *states* are permitted to regulate covered product's labeling, additionally shaping what manufacturers can (and cannot) say about those products. § 6297(a)(1); *Air Conditioning & Refrigeration Inst.*, 410 F.3d at 500–02.

Section 6293 cannot be relevant in some places in the statute but irrelevant to understanding and applying section 6297(c): "[i]t is a cardinal principle of statutory construction that a statute ought … to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quotation marks and citation omitted). If one therefore interpolates the full statutory definitions of "energy efficiency" and "energy use" into the provision, section 6297(c) reads as follows:

> [E]ffective on the effective date of an energy conservation standard … for any covered product, no State regulation concerning *the ratio of the useful output of services from a consumer product to the energy use of such product, determined in accordance with test procedures under section 6293 of this title* [or] *the quantity of*

> *energy directly consumed by a consumer product at point of use, determined in accordance with test procedures under section 6293 of this title* … of such covered product shall be effective with respect to such product ….

*See* §§ 6291(4)–(5), 6297(c). The New York statutes plainly are not regulations that dictate useful output ratios or energy consumption maximums for covered products that are measurable through section 6293's test procedures. While the New York statutes direct the Code Council to make fossil fuels unavailable in most new construction, as well as to prohibit the installation of fossil fuel-consuming appliances in most new construction, N.Y. Exec. Law §§ 378(19)(a)–(d), (f); N.Y. Energy Law §§ 11-104(6)(b), (7)(a)–(c), (7)(e), these directions have no effect on the fossil fuel quantities covered products are *designed* to consume, which is Congress' express concern in EPCA's appliance testing and standards setting provisions. *See* §§ 6293, 6295. Therefore, the New York statutes have no inherent relationship to "energy use," as defined under EPCA, nor the manufacturer rights and obligations that flow from that term and the product testing procedures dictated by section 6293. *See also* Def.'s Mem. 14–16, 20; Intervenors' Mem. 7–11.

Considering the full statutory definition of "energy use" (as well as "energy efficiency") in context highlights a second error by Plaintiffs: namely, their simplistic construction of "concerning," as used in section 6297(c). *See also* Def.'s Mem. 21–23. While it undoubtedly is true, as Plaintiffs say, that words like "concerning," "relating to," and "with respect to" all have the effect of broadening the scope of a preemption clause, Pls.' Mem. 7, "the breadth of the words … does not mean the sky is the limit." *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013). Section 6297(c)'s words and their context show that the term "concerning" does not extend EPCA's preemptive effect to reach the New York statutes.

The first evidence of limits on the reach of "concerning" comes from the words used in section 6297(c) itself. When the definitions of "energy use" and "energy efficiency" are unpacked,

9

as above, it is evident that the scope of the state laws and regulations that might be swept up by the word "concerning" is limited: preemptible state laws and regulations must have a connection to the measurable amounts of energy covered products are designed to use. *See* § 6297(c). The New York statutes, however, are entirely unconcerned with these matters. Simply put, the New York statutes do not require fossil fuel-consuming products to be redesigned in any way, since they neither directly nor indirectly prescribe "a minimum level of" measurable product output performance for those products, nor "a maximum quantity of" measurable fuel consumption by those products. *Compare* N.Y. Exec. Law §§ 378(19)(a)–(d), (f), *and* N.Y. Energy Law §§ 11-104(6)(b), (7)(a)–(c), (7)(e), *with* § 6291(6)(A). The New York statutes merely diminish one set of opportunities for fossil fuel-consuming covered products to be used in the future. *See also* Def.'s Mem. 14 – 16, 18 n.6; Intervenors' Mem. 9–11.

Moreover, a narrow understanding of the reach of the word "concerning" follows from how EPCA's preemption provisions guarantee a limited set of manufacturer rights. As discussed in detail above, EPCA's preemption provisions provide targeted protection for a discrete set of manufacturer interests with respect to covered products: principally, the efficiency levels to which covered products must be engineered, and how covered products' energy impacts are disclosed to consumers. Plaintiffs' argument in this case seems to rely in part, however, on EPCA *additionally* protecting a manufacturer interest in the ready availability of particular fuel sources. *See* Pls.' Mem. 10–12. But EPCA contains no evidence of a manufacturer interest in fossil fuels' ubiquitous or permanent availability. To begin with, Congress's declared purposes for EPCA do not support a manufacturer interest in fossil fuels' continued availability for use by covered products. Instead, Congress's statement of purpose generally favors reduced energy consumption. *See generally* § 6201. Moreover, section 6295 (the most pertinent substantive provision here) does not imply a

10

manufacturer interest in fossil fuels' further availability either. Section 6295 simply sets initial energy conservation standards for a range of covered products, and provides a process for those standards' upward amendment. *See generally* § 6295. Like other EPCA provisions, section 6295—in conjunction with section 6297(c)—only assures manufacturers that their appliances generally may be *offered* for sale if they comply with its terms; it provides no guarantee, though, that those appliances must or will be used.

Furthermore, and again contrary to Plaintiffs' apparent contention, *see* Pls.' Mem. 10–12, EPCA does not protect a manufacturer expectation that the local availability of their covered products will not be diminished by *any* state regulation. The statutory provision on which Plaintiffs most heavily rely to support their argument concerns DOE's inability to waive preemption for a state energy efficiency regulation if "interested persons have established, by a preponderance of the evidence, that the State regulation is likely to result in the unavailability in the State of any covered product type … of performance characteristics (including reliability), features, sizes, capacities, and volumes that are substantially the same as those generally available in the State at the time of the Secretary's finding …." § 6297(d)(4). This provision mirrors—and is the logical consequence of—DOE's own inability to set *energy conservation standards* that are "likely to result in the unavailability in the United States … of performance characteristics (including reliability), features, sizes, capacities, and volumes that are substantially the same as those generally available in the United States at the time of the Secretary's finding." § 6295(o)(4). Looking at these provisions together, and in their broader statutory context, it is plain that whether *other* types of regulations that pertain to other subject matter—such as local air quality or climate change—may result in covered products' unavailability neither is a matter that is within DOE's ability to review in the first place, nor is it potentially of concern to DOE as the main regulator

11

under EPCA's statutory scheme. At most, EPCA protects manufacturers only from having their products become "unavailable" due to *energy efficiency* regulations (whether federal or state). EPCA's structure does not suggest that the statute offers any protection to manufacturers from *other* types of regulations that may diminish or foreclose portions of the national market for their products. *See also* Intervenors' Mem. 3–4, 7, 9–11.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for summary judgment and Plaintiff's request for declaratory and injunctive relief.

December 13, 2024                                  Respectfully submitted,

/s/ Nathaniel R. Mattison
Nathaniel R. Mattison (Bar No. 705918)
GUARINI CENTER ON ENVIRONMENTAL,
ENERGY AND LAND USE LAW
NEW YORK UNIVERSITY SCHOOL OF LAW
139 MacDougal Street, 3rd Floor
New York, NY 10012
(212) 998-6146
nathaniel.mattison@law.nyu.edu

*Counsel for Proposed* Amicus Curiae
*Guarini Center on Environmental, Energy and Land Use Law*

12

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of New York by using the Court's CM/ECF system, which will send notice of such filing to all counsel who are registered CM/ECF users.

December 13, 2024

Respectfully submitted,

/s/ Nathaniel R. Mattison
Nathaniel R. Mattison (Bar No. 705918)
GUARINI CENTER ON ENVIRONMENTAL,
ENERGY AND LAND USE LAW
NEW YORK UNIVERSITY SCHOOL OF LAW
139 MacDougal Street, 3rd Floor
New York, NY 10012
(212) 998-6146
nathaniel.mattison@law.nyu.edu

*Counsel for Proposed* Amicus Curiae
*Guarini Center on Environmental, Energy and Land Use Law*