# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MULHERN GAS CO., INC., et al.,<br><br>                  Plaintiffs,<br><br>                v.<br><br>WALTER T. MOSLEY, in his official capacity as Secretary of State,<br><br>                  Defendant. | Case No. 1:23-cv-01267 (GTS/CFH)<br><br>**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS – FED. R. CIV. P. 12(c)** |

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** .................................................................................................... ii

**PRELIMINARY STATEMENT** ............................................................................................... 1

**ARGUMENT** ............................................................................................................................. 2

**I. Plaintiffs fail to meet their burden to show standing.** ........................................................ 2

    **A. Plaintiffs fail to show a legally cognizable injury.** ........................................................ 2

    **B. Plaintiffs fail to show that their alleged injury is traceable to the Defendant** .......... 5

    **C. Plaintiffs fail to show redressability** ................................................................................ 7

**II. Plaintiffs' claims do not present a ripe case or controversy** ............................................... 7

**CONCLUSION** ........................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*303 Creative LLC v. Elenis*,
    600 U.S. 570 (2023) ................................................................................................................ 3

*Abelar v. IBM (In re IBM Arb. Agreement Litig.)*,
    76 F.4th 74 (2d Cir. 2023), cert. den. 144 S. Ct. 827 (2024) .................................................. 8

*Air Transp. Ass'n of Am., Inc. v. Cuomo*,
    520 F.3d 218 (2d Cir. 2008) .................................................................................................... 3

*Am. Booksellers Found. v. Dean*,
    342 F.3d 96 (2d Cir. 2003) ...................................................................................................... 3

*Ashwander v. Tennessee Valley Authority*,
    297 U.S. 288 (1936) ................................................................................................................ 2

*Babbitt v. United Farm Workers Nat'l Union*,
    442 U.S. 289 (1979) ................................................................................................................ 3

*Bennett v. Spear*,
    520 U.S. 154 (1997) .......................................................................................................... 1, 10

*California v. Texas*,
    593 U.S. 659 (2021) ................................................................................................................ 4

*Club Madonna, Inc. v. City of Miami Beach*,
    924 F.3d 1370 (11th Cir. 2019) ............................................................................................. 10

*Ctr. for Individual Freedom v. Madigan*,
    697 F.3d 464 (7th Cir. 2012) ................................................................................................... 3

*Doherty v. Bice*,
    101 F.4th 169 (2d Cir. 2024) ................................................................................................... 4

*Essex Cty. v. Zagata*,
    91 N.Y.2d 447 (1998) ........................................................................................................... 10

*Flast v. Cohen*,
    392 U.S. 83 (1968) .................................................................................................................. 1

*Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*,
    528 U.S. 167 (2000) ................................................................................................................ 7

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011) .................................................................................................... 9

*Lujan v. Defs. of Wildlife ("Lujan")*,
    504 U.S. 555 (1992) ................................................................................................ *passim*

*Mendez v. Banks*,
    65 F.4th 56 (2d Cir. 2023) ............................................................................................ 8-9

*N. Mill St., LLC v. City of Aspen*,
    6 F.4th 1216 (10th Cir. 2021), Fed. R. Civ. ..................................................................... 9

*N.Y. Motor Truck Ass'n v. Pataki*,
    No. 03 CV 2386, 2004 WL 2937803 (S.D.N.Y. 2004) ..................................................... 8

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*,
    440 F.3d 459 (D.C. Cir. 2006) ........................................................................................ 10

*Nat'l Org. for Marriage, Inc. v. Walsh*,
    714 F.3d 682 (2d Cir. 2013) ............................................................................................ 9

*National Park Hospitality Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003) ......................................................................................................... 9

*Retail Industry Leaders Ass'n v. Fielder*,
    475 F.3d 180 (4th Cir. 2007) ........................................................................................... 3

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ......................................................................................................... 8

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ........................................................................................................ 10

*Tweed–New Haven Airport Auth. v. Tong*,
    930 F.3d 65 (2d Cir. 2019) .......................................................................................... 3, 6

*United States v. Colo. Sup. Ct.*,
    87 F.3d 1161 (10th Cir. 1996) ......................................................................................... 3

*Walton v. New York State Dept. of Correctional Servs.*,
    8 N.Y.3d 186 (2007) ....................................................................................................... 10

**CONSTITUTIONS**

ARTICLE III………………………………………………………………………………………2, 7

Eleventh Amendment........................................................................................................... 5

**FEDERAL STATUTES**

5 U.S.C.
    § 704 .................................................................................................................................. 1

Clean Water Act ........................................................................................................................... 10

**STATE STATUTES**

2023 Amendments……………………………………………………………………….*passim*

State Administrative Procedure Act………………………………………………………………… 3

State Environmental Quality Review Act .................................................................................... 3

**RULES**

Rule 7(a) ........................................................................................................................................ 9

Rule 12(b)(1) ................................................................................................................................. 6

Rule 12(b)(6) ................................................................................................................................. 9

Rule 12(c) ...................................................................................................................................... 9

Fed. R. Civ. P. 12(g)(2) ................................................................................................................. 9

Fed. R. Civ. P. 12(h)(2) ................................................................................................................. 9

Rule 56.1 ....................................................................................................................................... 4

**MISCELLANEOUS AUTHORITIES**

13B Charles Alan Wright, et al., *Federal Practice and Procedure* § 3532.1 at 2, 5
    (3d Ed., June 2024 update) ...................................................................................................... 9

## PRELIMINARY STATEMENT

Plaintiffs' opposition lays bare that they seek something federal courts simply do not provide: an advisory ruling. *Flast v. Cohen*, 392 U.S. 83, 95 (1968) ("no justiciable controversy is presented" when a party is "asking for an advisory opinion.") Plaintiffs challenge statutes (the "2023 Amendments") that direct rulemaking action to incorporate restrictions on the use of fossil-fuel equipment and building systems in new construction into the New York State Uniform Fire Prevention and Building Code and the Energy Conservation Construction Code (the "Code Amendments"). However, as this Court has already determined, the 2023 Amendments do not themselves impose the restrictions Plaintiffs oppose, nor do they directly amend the codes to insert those restrictions. That can only be accomplished through an administrative rulemaking process by the New York State Fire Prevention and Building Code Council ("Code Council") that has yet to be completed.[1] Thus, by challenging the 2023 Amendments now instead of waiting for the Code Amendments to be adopted, Plaintiffs effectively seek a protective ruling that the Code Amendments will be preempted if they are adopted. But that request contravenes the bedrock principle of administrative law: courts do not review agency actions before they are final. *See Bennett v. Spear,* 520 U.S. 154, 177-78 (1997); *see also* 5 U.S.C. § 704 (judicial review is available only for "final agency action."). And absent such final agency action, Plaintiffs cannot show standing because there has been no "invasion of a legally protected interest." *Lujan v. Defs. of Wildlife* ("*Lujan*"), 504 U.S. 555, 560-61 (1992).

Plaintiffs resort to a combination of legal fictions, disregard of this Court's legal determinations, and distortion of Defendant's position in an attempt to manufacture a justiciable

---

[1] To date, the Code Council has issued a Notice of Rule in Development inviting public input into the formulation of the amendments (Dkt. 26-2 at 2), but the more formal rulemaking steps, including publication of a Notice of Proposed Rule Making in the State Register, have not begun.

controversy, but they come up short. Primarily, Plaintiffs blur the distinction between the statutes and the proposed Code Amendments, pretending as if the statutes have already given legal effect to the proposed restrictions and treating the code amendment process as a meaningless act. This Court has already refuted that argument. Dkt. 28 at 12. And while Defendant expects that some form of Code Amendments imposing the restrictions that Plaintiffs oppose will ultimately be adopted, Plaintiffs ask the Court to treat something inherently predictive as if it has already occurred. But the Code Amendments have not yet been adopted and Plaintiffs don't have a crystal ball; their "claims based merely upon 'assumed potential invasions' of rights are not enough to warrant judicial intervention." *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 324-25 (1936) (citations omitted). Any ruling on the constitutionality of the proposed restrictions – which won't be enshrined in New York law unless and until the Code Amendments are adopted – would thus be advisory, and the Court should decline Plaintiffs' request for such a ruling.

## ARGUMENT

### I.     Plaintiffs fail to meet their burden to show standing.

To establish Article III standing, a plaintiff bears the burden of showing: (1) an injury in fact that is concrete, particularized, and actual or imminent, (2) that the cause of the injury is fairly traceable to an action by the defendant and not the result of independent action by a third party not before the court, and (3) that the injury would likely be redressed by the requested judicial relief. *Lujan,* 504 U.S. at 560-61. Failure to make the requisite showing as to any one of the three criteria defeats standing (*id*. at 561) and here, Plaintiffs fail as to each of the three.

A. <u>Plaintiffs fail to show a legally cognizable injury.</u>

To establish injury for purposes of Article III standing, a plaintiff must show "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not

2

conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Plaintiffs fail to make the necessary showing because their purported injury hinges entirely on the fiction that the 2023 Amendments have already given legal effect to the restrictions they oppose. *See* Dkt. 50 at 12 ("the challenged statute 'clearly establish[es]' the ban Plaintiffs claim is preempted."). But the Court has already rejected that theory: the 2023 amendments "*do not* themselves implement a prohibition on fossil-fuel equipment and systems." Dkt. 28 at 12 (emphasis added). Plaintiffs' injury argument thus fails at the threshold level: there will not be "an invasion of a legally protected interest" unless and until the restrictions Plaintiffs oppose actually become law.[2]

Nor do Plaintiffs find support from the multitude of pre-enforcement review cases they cite; those cases all involve challenges to laws that (1) mandate or prohibit some sort of conduct by the challenging party and (2) have mechanisms to enforce compliance with that mandate or prohibition.[3] Here, the 2023 Amendments themselves will never be enforceable against

---

[2] Plaintiffs attempt to muddy the waters by distorting Defendant's statements in prior briefing, but Defendant's position has been consistent and clear: the "nondiscretionary duty" imposed by the statutes was to *initiate* the state law rulemaking process (Dkt. 25 at 1), but that duty did not override the Council's duties under the State Administrative Procedure Act and the State Environmental Quality Review Act to consider public comments and identified environmental and economic impacts before voting on whether to adopt the potential Code Amendments. Dkt. 38-1 at 9. That is not "defying" the law, that is following the law. Dkt. 50 at 2.

[3] *See Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464 (7th Cir. 2012) (statute requiring regular financial disclosures; violations civilly and criminally punishable); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979) (statute prohibiting unfair labor practices; criminally punishable); *Am. Booksellers Found. v. Dean*, 342 F.3d 96 (2d Cir. 2003) (statute prohibiting the dissemination of indecent material to minors; criminally punishable); *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) (statute prohibiting discrimination in public accommodations; civilly punishable); *United States v. Colo. Sup. Ct.*, 87 F.3d 1161 (10th Cir. 1996) (rules of professional attorney conduct; punishable by disbarment); *Tweed–New Haven Airport Auth. v. Tong*, 930 F.3d 65 (2d Cir. 2019) (statute limiting runway length; civilly enforceable); *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218 (2d Cir. 2008) (statute requiring airlines to provide services to passengers during ground delays; civilly punishable); *Retail Industry Leaders Ass'n v. Fielder*, 475 F.3d 180 (4th Cir. 2007) (failure to make required reports or payments to secretary of labor punishable by civil penalties and enforceable on statute's effective date).

3

Plaintiffs, even on and after December 31, 2025, because they do not prohibit any conduct by Plaintiffs, and they do not contain an enforcement mechanism. While courts may presume a governmental intent to enforce the law, there must be a law to enforce for there to be standing. *California v. Texas*, 593 U.S. 659, 669-70 (2021). Unless and until the Code Amendments are adopted, there is no prohibition on any fossil-fuel equipment or building systems in New York, and there can be no pre-enforcement review.[4]

Plaintiffs' effort to show that their alleged injuries are concrete and particularized – by incorporating the declarations filed in support of their motion for summary judgment (Dkt. 50 at 5-6, 9-11) – also fails to meet their burden. First, even assuming the truth of the assertions, the alleged injuries stem from anticipated restrictions in regulations still in development but not yet proposed, not a final action. Parties may indeed suffer financial impact from the mere specter of a proposed rule becoming final, but courts don't open their doors until such rule is actually final. Regardless, as pointed out in Defendant's Rule 56.1 Response (Dkt. 48-1), those declarations do not support a finding that Plaintiffs are currently suffering or will suffer future economic injury caused by the 2023 Amendments. While courts may look beyond the pleadings to determine if there is subject matter jurisdiction, they "cannot rely on conclusory or hearsay statements contained in the affidavits." *Doherty v. Bice*, 101 F.4th 169, 172 (2d Cir. 2024). The Court should thus decline to consider Plaintiffs' declarations because they lack specific facts and are riddled with speculation, inadmissible hearsay, and conclusory statements. *See* Dkt. 48-1 at 25-28.

Finally, Plaintiffs' imminence argument fails because it is premised on the fiction that the 2023 Amendments have somehow already made the restrictions effective as of December 31,

---

[4] And contrary to Plaintiffs' assertion (Dkt. 50 at 20), Defendant's position is not that a potential plaintiff must wait until the Code amendments are actually in effect to bring suit. Once the Code Amendments are adopted, they may be challenged in court without waiting for the effective date.

4

2025. As discussed above, no effective date will adhere until the Code Amendments are finally adopted. Nor is it Defendant's position that "the Council's obligation to incorporate the gas ban into the Codes *begins* on December 31, 2025," (Dkt. 50 at 13). The Council is already at work on the Code Amendments but the schedule for adoption is subject to the constraints of a governmental body that meets quarterly with a large docket, as well as the possibility of the need to amend and repropose the regulations based on comments received during the administrative process. Dkt. 38-1 at 8-9.

B. <u>Plaintiffs fail to show that their alleged injury is traceable to the Defendant.</u>

Plaintiffs fail to meaningfully confront the causation criterion, which requires them to show that their claimed injury is fairly traceable to an action by the Defendant and not the result of independent action by a third party not before the court. *Lujan*, 504 U.S. at 560. As alleged in the complaint, Plaintiffs' harm arises exclusively from the mere existence of the statutes they challenge (Dkt. 1 at ¶ 3), but they do not dispute that the Secretary played no role in the enactment of the statutes. On the contrary, the Legislature's enactment of the statutes was the very definition of "independent action of a third party not before the court." Instead, Plaintiffs offer deflection and distortion and fail to meet their burden on the causation criterion.

First, Plaintiffs offer the excuse that "the Legislature is not a party because it can't be a party" due to sovereign immunity (Dkt. 50 at 19), as though that situation was somehow unavoidable. But Plaintiffs were aware of the Eleventh Amendment when they made the strategic decision to file in federal court rather than state court. They don't get to choose a stand-in for the party whose action they challenge simply because they can't reach that actor in their preferred forum. Nor can Plaintiffs now sidestep the allegations in the complaint which pin their asserted harm entirely to an action - enactment of the statutes - that is traceable only to the Legislature.

5

Second, Plaintiffs argue that there is traceability to the Secretary because he can allegedly enforce the statutes. Dkt. 50 at 19. This completely disregards the Court's unambiguous conclusion to the contrary, *i.e.*, that the challenged statutes do not include any mechanism "through which a state official *can* enforce" the statutes. Dkt. 28 at 12 (emphasis added).[5] Nor does the Secretary's role in the codification process constitute enforcement: "the act of codification itself does not enforce the terms of the statute against any individual . . ." Dkt. 28 at 14-15. Thus, Plaintiffs' case citations are simply inapposite; they all stand for the proposition that traceability can be shown as to a defendant who *has* authority to enforce the challenged statute in cases where, unlike here, the statute at issue was itself enforceable. Dkt. 50 at 19-20.[6]

Finally, Plaintiffs willfully misstate Defendant's position, asserting that "[t]he Secretary has conceded that he is a proper *Ex parte Young* defendant precisely because he plays a role in enforcing the statute." Dkt. No. 50 at 1. Plaintiffs don't explain how this asserted concession would override the Court's legal determination that the statutes are not enforceable but, regardless, Defendant never made any such concession. Defendant's position, made clear to Plaintiffs from the outset, is that the Secretary will have authority to enforce the proposed Code Amendments, if and when they are adopted, not that he has authority to enforce the statutes or

---

[5] Even worse, Plaintiffs selectively truncate a quote from the Court's Order on Defendant's Rule 12(b)(1) motion to support their argument that the Court "recognized the Secretary's role in approving and enforcing the challenged statute[s]" (Dkt. 50 at 9 and n.9), but the full quote shows that the Court was referring to the Secretary's authority to enforce the proposed Code Amendments after they are adopted, not to any purported authority to enforce the statutes. *See* Dkt. 28 at 11.

[6] For example, in *Tweed-New Haven Airport Auth.*, 930 F.3d at 70, the Connecticut Attorney General had authority to enforce an allegedly preempted statute that limited the runway length at plaintiff's airport, and plaintiff established present injury from threatened enforcement of the statute if it were to attempt to lengthen its runway. Both elements are missing here: the Secretary has no authority to enforce the statutes and no plaintiff faces any threat of enforcement of the statutes. Any enforcement will occur only if and when the Code Amendments are adopted, and that would be enforcement of the codes, not of the statutes.

6

that the statutes even include any enforceable provisions. *See* Dkt. 50-1 at ¶¶ 10,12,14;[7] *see also* Dkt. 33 at 9-10; Dkt. 19-1 at 5, n. 5; Dkt. 25 at 5-7. Thus, Plaintiffs fail to show traceability to Defendant and cannot meet their burden to demonstrate standing.

    C. <u>Plaintiffs fail to show redressability.</u>

Plaintiffs' argument regarding redressability just restates their argument as to causation and fails for the same reasons. Any restrictions on the use of fossil-fuel building systems and equipment that may be adopted will be implemented and enforced through the codes, not the statutes. Dkt. 28 at 12. Thus, while a challenge to the Code Amendments post adoption could provide redress (but is currently premature), Plaintiffs' complaint is limited to the statutes (Dkt. 1 at ¶ 41) and redressability is therefore absent. Nor can Plaintiffs somehow accrue standing by waiting for the Code Amendments to be finally adopted, because Article III standing must exist "at the outset of the litigation." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 180 (2000).

    **II.**    **Plaintiffs' claims do not present a ripe case or controversy.**

Plaintiffs fail to establish the prerequisites for ripeness because the statutes they attack "do not themselves implement a prohibition" and have "little or no practical effect in terms of enforcement against the Plaintiffs" absent subsequent codification by the Code Council. Dkt. 28 at 12. Not only do the 2023 Amendments impose no legal requirements upon Plaintiffs and cannot be enforced against them, even subsequent agency codification itself is but "a step in the path of allowing eventual enforcement . . . [and] does not enforce the terms of the statute against any individual." *Id.* at 14. Consequently, Plaintiffs' case fails to satisfy the "standard for ripeness

---

[7] As the 12/22/23 draft joint case management plan shows, Defendant sought a practical approach to avoid unneeded motions and allow the Court to address the merits if and when the restrictions Plaintiffs oppose are adopted. Dkt. 50.1 at ¶¶ 10,12,14; *see also* Dkt. 33 at 9-10.

in a declaratory judgment action" because it "depend[s] upon contingent future events that may or may not occur as anticipated," and thus does not present a "substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Abelar v. IBM (In re IBM Arb. Agreement Litig.),* 76 F.4th 74, 86-87 (2d Cir. 2023) (internal quotations and citation omitted), *cert. den.* 144 S. Ct. 827 (2024); *see also N.Y. Motor Truck Ass'n v. Pataki,* No. 03 CV 2386, 2004 WL 2937803 at *8 (S.D.N.Y. 2004) ("Absent a genuine threat of enforcement of the disputed statute, a case or controversy involving that statute does not exist.").

Viewed through the lenses of both constitutional and prudential ripeness, Plaintiffs' claims are premature, inchoate, and not justiciable. They assert that they satisfy constitutional ripeness because they have established injury-in-fact for purposes of standing, but as explained above, that is wrong. Because the statutes they challenge have no enforcement effect upon them, Plaintiffs have not suffered the "invasion of a legally protected interest" required for standing's injury-in-fact criterion. *Lujan,* 504 U.S. at 560. Without the existence of legal harm from the 2023 Amendments, Plaintiffs' assertions of injury also lack the "concreteness" necessary for standing, *Spokeo, Inc. v. Robins,* 578 U.S. 330, 340 (2016) ("'concrete' injury must be '*de facto*'; that is, it must actually exist."). And because, as Plaintiffs acknowledge, the "exact 'contours' of the 'final enforceable regulations' . . .includ[ing] certain exceptions" have yet to be established through rulemaking (Dkt. 50 at 15), their claims of injury are "conjectural or hypothetical, [not] actual or imminent." *Lujan,* 500 U.S. at 560. As recently confirmed by the Second Circuit, these same deficiencies in Plaintiffs' case also fail to satisfy the "constitutional prerequisite" for ripeness, for "to be ripe, and therefore justiciable," a claim "must present a real, substantial controversy, not a mere hypothetical question . . . [that] depends upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Mendez v. Banks,* 65 F.4th 56,

8

60 (2d Cir. 2023), quoting *Nat'l Org. for Marriage, Inc. v. Walsh,* 714 F.3d 682, 687 (2d Cir. 2013). Principles of constitutional ripeness counsel "avoidance of premature adjudication" over Plaintiffs' speculative claims. *Mendez,* 65 F.4th at 60.

Plaintiffs assert that the Secretary has waived lack of prudential ripeness as a defense pursuant to Fed. R. Civ. P. 12(g)(2) (Dkt. 50 at 30-31), but that is also wrong. On the instant "[Rule] 12(c) motion the court considers . . . the answer," *L-7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 422 (2d Cir. 2011), and here the Secretary's Answer states defenses including that Plaintiffs' allegations are unripe, are unreviewable for lack of final agency action, and fail to state a claim upon which relief can be granted. Dkt. 29 at 15. In addition, assuming "[p]rudential ripeness is properly analyzed under Rule 12(b)(6) [failure to state a claim upon which relief can be granted]," *N. Mill St., LLC v. City of Aspen,* 6 F.4th 1216, 1230 (10th Cir. 2021), Fed. R. Civ. P. 12(h)(2)'s exceptions to Rule 12(g)(2) expressly provide that that defense "may be raised: (A) in any pleading allowed . . . under Rule 7(a);" or "(B) by a motion under Rule 12(c)." The Secretary has done both here.

Finally, although when considering ripeness "the line . . . between constitutional command and prudential wisdom . . . is very thin," 13B Charles Alan Wright, et al., *Federal Practice and Procedure* § 3532.1 at 2, 5 (3d Ed., June 2024 update), Plaintiffs' complaints about New York's statutes also fail to satisfy prudential ripeness standards. The 2023 Amendments "do[] not create adverse effects of a strictly legal kind" necessary to establish hardship for ripeness purposes because they "do[] not command anyone to do anything or refrain from doing anything; . . . grant, withhold, or modify any formal legal license, power, or authority; . . . subject anyone to civil or criminal liability . . . [nor] create[] legal rights or obligations." *National Park Hospitality Ass'n v. Dep't of Interior,* 538 U.S. 803, 809 (2003) (internal quotations and citation

omitted). Unlike New York's statutes, the laws challenged in cases relied upon by Plaintiffs (Dkt. 50 at 24-25) directly impose such legal requirements.[8]  But here, until such time as any prohibitions are adopted by the Code Council, "no rights or obligations have been determined" and no "legal consequences . . . flow." *Bennett,* 520 U.S. at 178. Because final action by the Code Council is necessary to "impose an obligation, deny a right or fix some legal relationship," until then this case also fails to satisfy the fitness element for ripeness. *Essex Cty. v. Zagata,* 91 N.Y.2d 447, 453 (1998); *see Walton v. New York State Dept. of Correctional Servs.,* 8 N.Y.3d 186, 195 (2007) ("The finality and exhaustion of remedies requirements are drawn from case law on ripeness for judicial review," citing *Essex Cty., supra*); *see also* Dkt. 31-1 at 13-15.

## CONCLUSION

For the reasons stated above, the Court should dismiss the complaint.

Dated: December 20, 2024  
       New York, New York

Respectfully submitted,

LETITIA JAMES  
Attorney General of the State of New York

By:  /s/Gavin G. McCabe  
    Gavin G. McCabe (Bar Roll No. 704875)  
    Timothy Hoffman  
    Laura Mirman-Heslin  
    Christopher Gore  
    Assistant Attorneys General  
    Office of the Attorney General  
    28 Liberty Street, 19th Floor  
    New York, NY 10005  
    Gavin.McCabe@ag.ny.gov

---

[8] *See,* e.g., *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 151 (2014) (challenged statute criminalized and set penalties for certain false statements during political campaign); *Club Madonna, Inc. v. City of Miami Beach,* 924 F.3d 1370, 1375-76 (11th Cir. 2019) (challenged ordinance set worker requirements for nude dance establishments and penalties for noncompliance); *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs,* 440 F.3d 459, 461 (D.C. Cir. 2006) (challenged final regulation set Clean Water Act permit requirements for dredge and fill discharges).