**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

MULHERN GAS CO., INC., et al.,

               Plaintiffs,

    v.

WALTER T. MOSLEY, in his official
capacity as New York Secretary of State,

              Defendant,

NEW YORK GEOTHERMAL ENERGY
ORGANIZATION and PUSH BUFFALO,

          Intervenor-Defendants.

Case No. 1:23-cv-01267 (GTS/CFH)

**REPLY IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT,
DECLARATORY RELIEF, AND
PERMANENT INJUNCTION**

## TABLE OF CONTENTS

**Page**

ARGUMENT ............................................................................................................. 1

  I.  New York's Gas Ban Is Preempted. .................................................................. 1

      A.    The Secretary's and Intervenors' Arguments Rewrite § 6297(c). ........................ 2

      B.    The Secretary and Intervenors write "concerning" out of the statute. ................... 5

            1.  The Secretary's arguments about how "energy use" is calculated cannot get around "concerning." ........................................................................... 6

            2.  New York's ban falls within the ordinary scope of "concerning." ................... 8

      C.    EPCA's Structure and Purpose Confirm That New York's Ban Is Preempted. ... 11

            1.  EPCA's context confirms that preemption is not limited to regulations affecting design and manufacturing; regardless, the ban does just that. ......... 11

            2.  Intervenors' attempt to revive the 1978 preemption provision defies Congress's decision to expand preemption. ...................................................... 13

            3.  Allowing state bans on appliances would upend the statutory scheme. ......... 15

      D.    Plaintiffs' Claim Does Not Turn on an Unconstrained Right to Use. ................. 16

      E.    The Natural Gas Act Has No Bearing on EPCA Preemption. ............................. 17

  II.  Plaintiffs' Facial Challenge Is Not Overbroad................................................... 17

  III.  Plaintiffs Have Standing and Are Entitled to Prospective Relief. .................................... 19

CONCLUSION.................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*23-34 94th St. Grocery Corp. v. N.Y.C. Bd. of Health*,
685 F.3d 174 (2d Cir. 2012).........................................................................................9

*Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev.*
*Comm'n*,
410 F.3d 492 (9th Cir. 2005) ........................................................................2, 11, 13

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
569 U.S. 641 (2013).....................................................................................................15

*Bldg. Indus. Ass'n of Wash. v. Wash. State Bldg. Code Council*,
683 F.3d 1144 (9th Cir. 2012) ..............................................................................8, 15

*Buono v. Tyco Fire Prods., LP*,
78 F.4th 490 (2d Cir. 2023) .........................................................................................1

*Cal. Div. of Lab. Standards Enf't v. Dillingham Constr., N.A.*,
519 U.S. 316 (1997)....................................................................................................10

*Cal. Rest. Ass'n v. City of Berkeley*,
89 F.4th 1094 (9th Cir. 2024) ........................................................................... *passim*

*Citizens United v. FEC*,
558 U.S. 310 (2010)....................................................................................................19

*Community Housing Improvement Program v. City of New York*,
59 F.4th 540 (2d Cir. 2023) .......................................................................................18

*Coventry Health Care of Mo., Inc. v. Nevils*,
137 S. Ct. 1190 (2017)..............................................................................................4, 8

*Dan's City Used Cars, Inc. v. Pelkey*,
569 U.S. 251 (2013)....................................................................................................10

*Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*,
144 S. Ct. 457 (2024)....................................................................................................4

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
541 U.S. 246 (2004)........................................................................................10, 11, 15

*Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*,
554 U.S. 33 (2008).........................................................................................................4

*Holder v. Martinez Gutierrez*,
    566 U.S. 583 (2012) .................................................................................................14

*Hydrolevel Corp. v. Am. Soc'y of Mech. Eng'rs, Inc.*,
    635 F.2d 118 (2d Cir. 1980) ....................................................................................20

*Hyland v. Navient Corp.*,
    48 F.4th 110 (2d Cir. 2022) ....................................................................................20

*John Doe No. 1 v. Reed*,
    561 U.S. 186 (2010) ...........................................................................................17, 18

*Lamar, Archer & Cofrin, LLP v. Appling*,
    138 S. Ct. 1752 (2018) ...............................................................................................8

*Loper Bright Enters. v. Raimondo*,
    144 S. Ct. 2244 (2024) .............................................................................................10

*McAllister v. N.Y.C. Police Dep't*,
    49 F. Supp. 2d 688 (S.D.N.Y. 1999) ......................................................................20

*Metro. Taxicab Bd. of Trade v. City of New York*,
    615 F.3d 152 (2d Cir. 2010) ......................................................................................9

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) .................................................................................................17

*New York v. Nat'l Highway Traffic Safety Admin.*,
    974 F.3d 87 (2d Cir. 2020) ......................................................................................14

*Obduskey v. McCarthy & Holthus LLP*,
    139 S. Ct. 1029 (2019) .........................................................................................4, 12

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
    579 U.S. 115 (2016) ...............................................................................................1, 2

*Pulsifer v. United States*,
    144 S. Ct. 718 (2024) .................................................................................................8

*Rowe v. New Hampshire Motor Transport Ass'n*,
    552 U.S. 364 (2008) .........................................................................................8, 9, 17

*Simmons v. Himmelreich*,
    578 U.S. 621 (2016) ...................................................................................................4

*Tweed–New Haven Airport Auth. v. Tong*,
    930 F.3d 65 (2d Cir. 2019) ......................................................................................20

*United States v. Mead Corp.*,
   533 U.S. 218 (2001) ...............................................................................14

*United States v. Sup. Ct. of N.M.*,
   839 F.3d 888 (10th Cir. 2016) ...............................................................18

*Van Buren v. United States*,
   141 S. Ct. 1648 (2021) ........................................................................3, 14

*Wash. State Grange v. Wash. State Republican Party*,
   552 U.S. 442 (2008) ...............................................................................17

*Wyeth v. Levine*,
   555 U.S. 555 (2009) ...............................................................................10

*Ysleta Del Sur Pueblo v. Texas*,
   142 S. Ct. 1929 (2022) .............................................................................3

**Statutes**

15 U.S.C. § 717(b) .....................................................................................17

49 U.S.C. § 32919(a) ...................................................................................9

Energy Policy and Conservation Act of 1975,
   42 U.S.C. §§ 6201-6422 ................................................................ *passim*

   § 6291(1)-(2) ........................................................................................18

   § 6291(4) ...............................................................................................6

   § 6291(4)-(6) .........................................................................................3

   § 6291(6)(A) ..........................................................................................6

   § 6291(8) .............................................................................................11

   § 6292(a) .............................................................................................18

   § 6292(b) .............................................................................................18

   § 6292(b)(1) ...........................................................................................6

   § 6293(b)(3) ...........................................................................................7

   § 6294(a)(2)(I)(i) ....................................................................................7

   § 6295(*l*)(1) ...........................................................................................6

   § 6295(o)(4) ......................................................................................7, 15

§ 6297(a)(1) .................................................................................................2, 11

§ 6297(a)(2) ..............................................................................................2, 3, 13

§ 6297(b) ......................................................................................................5, 13

§ 6297(c) ...............................................................................................2, 3, 7, 12

§ 6297(d)(1) ......................................................................................................12

§ 6297(d)(1)(A) ...........................................................................................3, 14

§ 6297(d)(1)(B) .................................................................................................14

§ 6297(d)(3) ...........................................................................................6, 12, 13

§ 6297(d)(4) ...........................................................................................7, 14, 15

§ 6297(f)(3) ...................................................................................................6, 7

§ 6297(f)(3)(B) ...................................................................................................8

§ 6297(f)(3)(C) .................................................................................................15

§ 6297(f)(3)(F) ...................................................................................................8

§ 6297(f)(3)(G) ...................................................................................................8

§ 6311(1)-(2) .....................................................................................................18

§ 6312(b) ..........................................................................................................18

N.Y. Energy § 11-104(6)(b) .............................................................................20

N.Y. Exec. § 378(19) ........................................................................................20

**Rules**

Fed. R. Evid. 803(3) ..........................................................................................20

**Other Authorities**

Energy Conservation Program for Consumer Products,
    47 Fed. Reg. 14,424 (Apr. 2, 1982) (proposed rule)....................................14

Energy Conservation Program for Consumer Products,
    47 Fed. Reg. 57,198 (Dec. 22, 1982) ...........................................................14

S. Rep. No. 100-6 (1987) ..................................................................................13

If a state law concerns a covered appliance's energy use, it is preempted. Banning covered appliances and the infrastructure needed to fuel them necessarily concerns covered appliances' energy use. That is what the Ninth Circuit held, and this Court should, too.

The problem with the Secretary's, Intervenors', and amici's positions is that they seek to avoid the plain text of the statute Congress wrote. Their scattershot attempts to add or change language, rely on other statutes, and invoke policy arguments result from the reality that the statute is unambiguous. Their central argument is that the statute preempts only "energy conservation standards" that require manufacturers to redesign appliances, but this reading cannot be reconciled with the statutory language, other statutory provisions such as the waiver provision, or the statute's history and purpose. They also rely on a strawman argument that the gas ban is preempted only if EPCA provides an unconstrained individual right to use any covered appliance. But nothing in this case turns on such a right, and nothing about recognizing that Congress preempted this law would threaten the wide range of state and local regulations that have long coexisted with EPCA.

The Secretary tries again to avoid the merits of this dispute, claiming that Plaintiffs' facial challenge is too broad and that all thirteen Plaintiffs lack standing. Not so. Plaintiffs' facial challenge must be evaluated in light of the breadth of the remedy requested, and any concerns are properly addressed by tailoring any relief to the gas ban's preempted scope. And Plaintiffs have standing for the reasons stated in their brief opposing the Secretary's Rule 12(c) motion, Dkt. 50. There is no obstacle to Plaintiffs' requested relief, and so the Court should grant the motion.

## ARGUMENT

### I.   New York's Gas Ban Is Preempted.

Contrary to the Secretary's assertion, Dkt. 48 at 18-19, binding precedent holds that there is no presumption against preemption in express preemption cases. *See Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016); *Buono v. Tyco Fire Prods., LP*, 78 F.4th 490, 495

(2d Cir. 2023). Rather, express preemption, like any question of statutory interpretation, starts with the text and, if the text is unambiguous, ends there. *Franklin Cal.*, 579 U.S. at 125.

EPCA's plain text establishes preemption here. New York's gas ban is a "State regulation concerning" the "energy use" of "covered product[s]," 42 U.S.C. § 6297(c),[1] because it regulates the quantity of energy used by natural gas appliances. *See* Dkt. 37-1 at 13-14. By prohibiting the installation of gas appliances and infrastructure, the gas ban necessarily concerns those appliances' energy use. If "concerning" is given any meaning, as it must be, preemption is not limited to energy conservation standards or design regulations. Instead, New York's ban on covered gas appliances and infrastructure readily falls within the language and context of § 6297(c).[2]

### A. The Secretary's and Intervenors' Arguments Rewrite § 6297(c).

The Secretary's and Intervenors' various formulations of § 6297(c) impermissibly transform the statute's language. Their rewrites cannot be squared with EPCA's text or structure.

**1.** The first problem with the Secretary's and Intervenors' position is their insistence that § 6297(c) preempts only competing "regulations that prescribe the equivalent of an energy conservation standard for a covered product." Dkt. 48 at 20; *see also* Dkt. 49 at 10. The Secretary inexplicably relies for this proposition on the Ninth Circuit's general description of EPCA's legislative history in a case involving a different preemption provision, § 6297(a)(1). *See, e.g.*, Dkt. 48 at 19, 21 (citing *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492 (9th Cir. 2005)). But when the Ninth Circuit actually confronted the

---

[1] All further statutory references are to Title 42 of the U.S. Code unless otherwise noted.

[2] The Secretary argues in a footnote that the challenged statute is not a "State regulation"—which EPCA defines to include "a law, regulation, or other requirement of a State"—because, although it is a "law," it is not, in his view, also covered by the catchall "other requirement of a State." Dkt. 48 at 16 n.3 (quoting § 6297(a)(2)). That is frivolous. The catchall "other requirement" captures other things like the specifically listed items so that states cannot label their way out of preemption; it does not carve some subset of laws and regulations out of the definition.

question presented here, it rejected the argument that EPCA preempts only "regulations that are the equivalent of 'energy conservation standards,'" *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1098, 1105 (9th Cir. 2024)—for good reason.

The argument hinges on giving different phrases—"energy conservation standard" and "regulation concerning [appliances'] energy use"—the same meaning. But in the very sentence at issue, EPCA uses "energy conservation standard" as the trigger for preemption, while using "regulation concerning the energy efficiency, energy use, or water use" to describe what is preempted. § 6297(c); *see also* § 6297(d)(1)(A) (allowing waiver for a regulation "which provides for any energy conservation standard or other requirement with respect to energy use, energy efficiency, or water use"). Courts usually presume that "differences in language like this convey differences in meaning." *Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1939 (2022) (attribution omitted). All the more so here, where Congress gave the terms "energy efficiency, "energy use," and "energy conservation standard" distinct statutory definitions, indicating that, though related, they are not identical. § 6291(4)-(6).

Congress's changes to the text confirm the point. The 1978 provision that Congress replaced with the current § 6297(c)'s "regulation concerning" language said almost exactly what the Secretary and Intervenors insist that § 6297(c) means now: It preempted "any energy efficiency standards or other requirement with respect to energy efficiency or energy use of a covered product." § 6297(a)(2) (1982). But Congress replaced that language. "When Congress amends legislation, courts must presume it intends the change to have real and substantial effect." *Van Buren v. United States*, 141 S. Ct. 1648, 1660-61 (2021) (attribution omitted).

The Secretary and Intervenors also argue that the reference in § 6297(c)'s heading to "energy conservation standards" means that the preemption provision only reaches energy

conservation standards.  Dkt. 48 at 21; Dkt. 49 at 7-8.  But as the Secretary concedes, headings "cannot substitute for the operative text of the statute."  Dkt. 48 at 21 (quoting *Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 47 (2008)).  Had Congress wanted to preempt "energy conservation standards" or their equivalents, "it could have said so."  *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1038 (2019).  Instead, in a sentence that includes the term "energy conservation standard" as the trigger for preemption, Congress used a different phrase to describe the preempted subject matter.  § 6297(c).

Congress easily could have used "energy conservation standard" to define what is preempted, but it did not.  Courts must "presume that Congress means what it says" and cannot "simply reconfigure the statute."  *Cal. Rest.*, 89 F.4th at 1105; *accord Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 144 S. Ct. 457, 474 (2024) (courts' "role is to apply the law, not rewrite it"); *Simmons v. Himmelreich*, 578 U.S. 621, 627 (2016) ("Absent persuasive indications to the contrary, we presume Congress says what it means and means what it says.").

**2.**     The Secretary further contends that the phrase "shall be effective with respect to such product" in § 6297(c) "ha[s] meaning only if the state regulation operates directly on the individual product itself in the first place," as opposed to indirectly banning covered products. Dkt. 48 at 20.  For starters, the gas ban does operate directly on covered appliances—by prohibiting their installation outright—so this argument gets the Secretary nowhere.

Regardless, the Secretary's textual analysis is wrong.  Limiting preemption to regulations that "operate[] directly" on covered products would read "concerning" out of the statute.  *See Coventry Health Care of Mo., Inc. v. Nevils,* 137 S. Ct. 1190, 1197 (2017) ("concerning" means the same thing as "relate to" and "expresses a broad preemptive purpose") (cleaned up); *Cal. Rest.*, 89 F.4th at 1098 (reversing the district court's decision that EPCA preempts only regulations "that

facially or directly regulate covered appliances" because it gave no effect to "concerning").

What's more, the Secretary's argument misconstrues the phrase. Some context is helpful:

> [E]ffective on the effective date of an energy conservation standard established in or prescribed under section 6295 of this title *for any covered product*, no State regulation concerning the energy efficiency, energy use, or water use of such covered product *shall be effective with respect to such product* . . . .

§ 6297(c) (emphasis added). The statute determines whether a regulation is preempted by asking whether it is a "regulation concerning the energy efficiency, energy use, or water use of such covered product." *Id.* By providing that a preempted regulation shall not "be effective with respect to such product," the statute is explaining the result of preemption, not adding a requirement for preemption to apply. § 6297(c). The phrase "shall be effective with respect to such product" points back to the opening clause's reference to "any covered product" for which there is a federal standard, which determines when § 6297(c) preemption begins. *Compare* § 6297(c) (preemption begins when a federal standard takes effect), *with* § 6297(b) (addressing preemption before that date). Read as a whole, § 6297(c) says that beginning when a federal standard takes effect for a product, "no State regulation" that meets EPCA's standard for preemption "shall be effective with respect to" the types of appliances the federal standard covers. In short, "[t]he phrase . . . simply limits EPCA's preemption to a regulation's *effect* on covered products—it doesn't say that the regulation must be *on* the covered products." *Cal. Rest.*, 89 F.4th at 1104.

**B.     The Secretary and Intervenors write "concerning" out of the statute.**

The Secretary and Intervenors never provide a satisfying explanation for the work done by the term "concerning." Lacking any persuasive response to that term's well-established breadth, the Secretary focuses instead on how "energy use" is calculated. But that does nothing to address the role of "concerning," much less explain why that term does not capture New York's ban. When the Secretary finally addresses "concerning," he argues only that the term, if it adds anything at

all, should not be stretched to its literal limits—which nobody is asking the Court to do here.

### 1. The Secretary's arguments about how "energy use" is calculated cannot get around "concerning."

The Secretary spends page after page emphasizing how "energy use" is calculated. *See* Dkt. 48 at 13-14, 20-21, 24-25, 27-29. To no avail. The question in this case is not how the energy use of an appliance is calculated, but rather whether a regulation precluding certain appliances from using any energy at all is a regulation concerning those appliances' energy use.

According to the Secretary, the only role "energy use" plays is as a "technically-defined measurement . . . 'determined in accordance with test procedures under section 6293.'" Dkt. 48 at 25 (quoting § 6291(4)); *see also id*. at 23. Not so. An "energy conservation standard" can, of course, be "a performance standard which prescribes . . . a maximum quantity of energy use . . . for a covered product." § 6291(6)(A). But "energy use" does other things in the statute, too. It informs whether the Department of Energy can classify products as covered products, *see* § 6292(b)(1) (setting a minimum "average annual per-household energy use by products of" the type to be covered); it informs whether the Department can impose new energy conservation standards, § 6295(*l*)(1) (similar); and—most importantly here—it is among the preempted subject matter, § 6297(c). And statutory context refutes the notion that preemption ends at the manufacturer, as the Secretary's reading requires. *See* § 6297(d)(3), (f)(3); *infra* pp. 11-13.

Next, the Secretary contends that the term "point of use" in the "energy use" definition should be given a technical meaning, not its ordinary meaning. Dkt. 48 at 27-28. But preemption does not turn on whether "point of use" takes its ordinary meaning of the "place where something is used," as the Ninth Circuit held, *Cal. Rest.*, 89 F.4th at 1101 (attribution omitted), or distinguishes "site energy" from "source energy," as the Secretary contends, Dkt. 48 at 28.

Even assuming that "energy use" is only ever calculated in the lab, EPCA nonetheless

preempts regulations that operate in the real world. EPCA does not say it is preempting "regulations requiring recalculation of a product's energy use"; it says "regulations concerning . . . energy use." Laws that, like New York's, categorically prohibit gas appliances' energy use (or viewed another way, ban gas appliances whenever their energy use exceeds zero) "concern[]" those appliances' energy use. *Cal. Rest.*, 89 F.4th at 1102-03. That understanding of § 6297(c) aligns with the well-settled meaning of "concerning" in preemption provisions, *infra* pp. 8-11, and with the statutory context, including the building code exemption, § 6297(f)(3), and Congress's indications that it did not want to make types of products unavailable, §§ 6295(o)(4), 6297(d)(4).

Nor do the statute's instructions to use particular "test procedures" establish that Congress cared only about regulations on appliances' theoretical energy use (at a lab) and gave free rein to states to regulate their energy use in practice. Congress required test procedures to measure "a representative average use cycle or period of use." § 6293(b)(3). That reinforces Congress's concern with real-world conditions. The fact that representative energy use is calculated in a lab does not mean regulations that work outside the lab cannot concern energy use.

So too for the Secretary's labeling argument. According to the Secretary, because EPCA directs the Department to promulgate regulations "prescrib[ing] labeling or other disclosure requirements for the energy use of" certain appliances, § 6294(a)(2)(I)(i), EPCA must not have anything to say about appliances' energy use from the moment the manufacturer affixes a label with that information. *See* Dkt. 48 at 28-29. But again, Congress preempted regulations concerning energy use, not just regulations that require it to be recalculated for purposes of a label.

Ultimately, the Secretary's theory that Congress preempted only regulations that change an appliance's "energy use" as determined in the lab is not just contrary to § 6297(c)'s text but also irreconcilable with § 6297(f)(3)'s building code exemption. *Contra* Dkt. 48 at 32. Suppose

a building code sets a maximum building-wide energy consumption, § 6297(f)(3)(F), that is calculated by adding up all the appliances' off-the-rack, lab-tested "estimated energy use" values, § 6297(f)(3)(G). So long as no appliance is required to exceed federal standards, § 6297(f)(3)(B), such a building code could qualify for the exemption. *See Bldg. Indus. Ass'n of Wash. v. Wash. State Bldg. Code Council*, 683 F.3d 1144, 1145-46, 1148-49 (9th Cir. 2012) (code requiring a "15% reduction in new buildings' energy consumption" qualified for the exemption). But if the Secretary were right, the regulation would not be preempted in the first place because it does not change the lab-tested value for any appliance's energy use. That would make the building code exemption superfluous. *See, e.g.*, *Cal. Rest.*, 89 F.4th at 1101 (exemption indicates that building codes concerning energy use would otherwise be preempted). "[T]hat kind of superfluity, in and of itself, refutes [the Secretary's] reading." *Pulsifer v. United States*, 144 S. Ct. 718, 731 (2024).

In sum, none of these arguments on technical meanings supports limiting the statute to appliance design and manufacture or escapes the term "concerning."

### 2. New York's ban falls within the ordinary scope of "concerning."

The Secretary and Intervenors fail to confront the well-established meaning of "concerning." Instead, they attack a strawman, arguing that the Court should not construe the term as "limitless." Dkt. 48 at 30-32; *see also* Dkt. 49 at 15-19 (presenting a parade of horribles with no resemblance to the gas ban). Nobody is asking it to. All Plaintiffs ask is that the Court apply the statute Congress wrote, which given its choice of "concerning" is broad but not unlimited.

Congress uses "concerning," like "relating to," to "express[] a broad pre-emptive purpose." *Coventry*, 137 S. Ct. at 1197; *accord Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759-60 (2018). These terms, while not unbounded, are not easily evaded. For example, in *Rowe v. New Hampshire Motor Transport Ass'n*, 552 U.S. 364 (2008), the Supreme Court confirmed that at the very least, laws with "a significant impact related to Congress' deregulatory

and pre-emption-related objectives" are preempted by a "related to" provision, *id.* at 371 (cleaned up). Specifically, the Court held that a state law was impermissibly "related to" the prices of motor carriers because, although the law did not directly regulate trucking companies, it accomplished the same result by prohibiting retailers from accepting deliveries from trucking companies that did not follow certain rules. *See id.* at 368-69, 372. That the state law was "less 'direct' than it might be" could not save it from preemption because it "produce[d] the very effect that the federal law sought to avoid." *Id.* at 372; *see also id.* at 373 (noting that allowing this type of law "could easily lead to a patchwork of state" laws, contrary to congressional intent). Put another way, states cannot evade preemption "related to" a subject of federal regulation just by doing indirectly what they cannot do directly. *See Cal. Rest.*, 89 F.4th at 1107 (collecting cases).

The Second Circuit has rejected similar attempts to end-run preemption provisions. *See, e.g.*, *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156-58 (2d Cir. 2010) (holding that New York City could not evade EPCA's provision preempting regulations "related to fuel economy standards," 49 U.S.C. § 32919(a), by using "hybrid" as a "proxy for 'greater fuel efficiency'"); *23-34 94th St. Grocery Corp. v. N.Y.C. Bd. of Health*, 685 F.3d 174, 183 (2d Cir. 2012) (rejecting the argument that a city law did not "explicitly" regulate preempted activity as "ignor[ing] the practical effect" of the law). Just as in those cases, New York's ban produces the very effect sought to be avoided and is preempted. If a state cannot impose otherwise preempted regulations on trucking companies by moving the regulations one step down the distribution chain to retailers, then New York cannot evade the undisputed prohibition on imposing energy conservation standards on manufacturers by banning its residents from using appliances whose energy use (or energy efficiency) it dislikes.

None of that leaves § 6297(c) without a limiting principle. Congress's intent as understood

through the statute it wrote is the limiting principle, just as it is for similarly broad preemption provisions. *See, e.g.*, *Cal. Div. of Lab. Standards Enf't v. Dillingham Constr., N.A.*, 519 U.S. 316, 325 (1997) ("[T]o determine whether a state law has the forbidden connection [with ERISA plans], we look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." (cleaned up)). For example, generally applicable regulations with only a tangential effect on the preempted subject matter are ordinarily not preempted. *See, e.g.*, *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 263-64 (2013). Likewise, by prohibiting states from regulating concerning appliances' energy use, EPCA says nothing about whether states must take actions to ensure access to gas distribution (or any other type of energy) that is not already available.

The Secretary's approach to "concerning," by contrast, is at odds with the statute's text and Supreme Court precedent. The Secretary creates a new limiting principle for § 6297(c) not found in the text: A regulation concerns energy use only "when it forces an appliance manufacturer to modify product design to meet a[ state or local] 'energy use' standard." Dkt. 48 at 30.[3] Such a regulation would indeed be preempted. But that rewrite "engraft[s]" a "limiting component" onto Congress's work, incorrectly narrowing its preemptive reach. *See Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 253 (2004); *Cal. Rest.*, 89 F.4th at 1106-07 (collecting cases). Under the Secretary's reading, the State can ban New Yorkers from using appliances that meet federal standards as long as it has not banned manufacturers from designing or selling them. This makes "no sense": "The manufacturer's right to sell federally approved [appliances] is

---

[3] The Secretary suggests that the Department's recent litigation position on this point is entitled to deference. Dkt. 48 at 30 n.8 (citing *Wyeth v. Levine*, 555 U.S. 555, 577 (2009)). It is not. *Wyeth* itself explained that "agencies have no special authority to pronounce on pre-emption absent delegation by Congress." 555 U.S. at 576-77. Moreover, since *Wyeth*, the Supreme Court has held that "courts need not and under the APA may not defer to an agency interpretation of the law." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024).

meaningless in the absence of a purchaser's right to [use] them." *Cf. Engine Mfrs.*, 541 U.S. at 255. That New York's ban "do[es] not eliminate all demand for covered" gas appliances is of no moment. *Id.* "[I]f one State . . . may enact such rules, then so may any other; and the end result would undo Congress's carefully calibrated regulatory scheme." *Id.*

The Ninth Circuit's *Air Conditioning* decision does not support the Secretary's novel limit. *Contra* Dkt. 48 at 10, 22. That case held that a different provision preempting state regulations requiring "the disclosure of information with respect to any measure of energy consumption," § 6297(a)(1), did not preempt a requirement that appliances be labeled with the "manufacturer's name, the model name, and the date of manufacture"—none of which is a "measure of energy consumption," § 6291(8). 410 F.3d at 500-02. That straightforward application of § 6297(a)(1) says nothing about whether § 6297(c) preempts state gas bans. The Secretary understandably does not rely on the Ninth Circuit's answer to that question: Yes. *Cal. Rest.*, 89 F.4th at 1107.

## C.     EPCA's Structure and Purpose Confirm That New York's Ban Is Preempted.

The Secretary and Intervenors both assert that "EPCA's preemption provision serves the limited purpose of preventing States and localities from attempting to do at their level what DOE does at the federal level," by which they mean affecting manufacturing and design choices. Dkt. 48 at 15; *see also* Dkt. 49 at 6. These arguments are irreconcilable with EPCA's structure and purpose, and, in any event, would not save the gas ban from preemption.

### 1.    EPCA's context confirms that preemption is not limited to regulations affecting design and manufacturing; regardless, the ban does just that.

The Secretary contends that EPCA is concerned only with what manufacturers do before a consumer product is marketed; the point, he says, was to "allow manufacturers to design and produce each of their covered products to meet one 'energy conservation standard.'" Dkt. 48 at 14-15; *see also id.* at 22-23. That argument is both wrong and beside the point: EPCA does not

ignore what happens after "products roll off the factory floor," *Cal. Rest.*, 89 F.4th at 1103, and regardless, the gas ban does affect manufacture and design.

Nothing in § 6297(c)'s text limits its reach to laws affecting appliances' design. Rather, § 6297(c) preempts any "regulation concerning" a covered product's "energy use." If Congress meant to preempt "regulations of appliance design" or simply "energy conservation standards," "it could have said so." *Obduskey*, 139 S. Ct. at 1038. Instead, Congress chose a broader approach.

Context confirms the point. Congress allowed the Department to waive preemption in certain circumstances, § 6297(d)(1), but prohibited waivers when the "State regulation will significantly burden manufacturing, marketing, distribution, sale, or servicing of the covered product on a national basis," § 6297(d)(3). "So the federal government must consider the complete lifecycle of an appliance—from manufacturing to servicing—in reviewing a waiver petition. Such a provision would make little sense if the scope of EPCA's preemption ends with the design or manufacture of the product." *Cal. Rest.*, 89 F.4th at 1104. So too for the building code exemption, which would make no sense if federal preemption ended at the factory floor. Dkt. 37-1 at 15-16.

But even if EPCA preemption were limited to regulations affecting manufacturers' design decisions, New York's ban would still be preempted. To be sure, once a manufacturer decides to make a gas appliance, the gas ban has nothing more to say. But the ban kicks in a step earlier, when manufacturers are deciding what kind(s) of energy their appliances should run on. To sell in New York, manufacturers will have to design around a prohibition on the use of gas or oil and make production decisions based on which appliances they will be able to sell and where. The only way to sell appliances for new construction in New York will be to design and produce electric appliances. EPCA prohibits New York from forcing manufacturers and builders down that path. *See Cal. Rest.*, 89 F.4th at 1104 ("[N]o doubt Berkeley's ban, if adopted by States and

12

localities throughout the country, would 'significantly burden' the 'sale' of covered products 'on a national basis.'" (quoting § 6297(d)(3))).

This view aligns with EPCA's legislative history. *Contra* Dkt. 49 at 10-11. Congress wanted to avoid both "the unavailability in [any] State of a product type or of products of a particular performance class," and a "patchwork" of regulations in which an appliance would be legal in some places but not others. S. Rep. No. 100-6, at 2, 4 (1987). A patchwork of bans is just as disruptive as a patchwork of standards. Indeed, a patchwork of standards can be expressed as a patchwork of bans—appliances are banned wherever they do not meet state or local standards.

## 2. Intervenors' attempt to revive the 1978 preemption provision defies Congress's decision to expand preemption.

Intervenors contend that Congress "ratifi[ed]" the Department of Energy's narrow interpretation of preemption when it enacted the preemption provision in 1987. Dkt. 49 at 6, 8-10. But they have it backward: The 1987 amendment expanded the preemption provision from the 1978 version—which is what the Department was discussing in 1982—and simultaneously constrained the Department's authority to grant waivers to preemption. Far from adopting the Department's approach, Congress went out of its way to reject it.

The 1978 preemption provision covered "*any energy efficiency standard* or other requirement with respect to energy efficiency or energy use of a covered product." § 6297(a)(2) (1982) (emphasis added). The Department's waiver authority had a similar scope. *See* § 6297(b) (1982). But when the Department refused to follow Congress's instructions to set federal standards and instead freely granted waivers from preemption, Congress amended the statute to expand preemption and restrict the Department's waiver ability. *See Air Conditioning*, 410 F.3d at 499-500. Section 6297(c) now preempts "regulations concerning" energy use, rather than "energy efficiency standard[s]." And waivers are now limited to regulations that "provide[] for any *energy*

13

*conservation standard* or other requirement," § 6297(d)(1)(A) (emphasis added), are "needed to meet unusual and compelling State or local energy or water interests," § 6297(d)(1)(B), and are not "likely to result in the unavailability" of types or classes of appliances, § 6297(d)(4).

Intervenors have no explanation for why Congress, frustrated with the Department's approach to preemption, would have changed the provision's words but left its meaning in place. *See Van Buren*, 141 S. Ct. at 1660-61 (rejecting the government's argument that Congress carried forward the meaning of an earlier version of a statute despite changing its language).

Instead, Intervenors rely on the assertion that Congress "re-use[d] the identical phrase" from the 1978 provision to claim that Congress ratified a "settled" administrative interpretation. Dkt. 49 at 9-10. Intervenors are doubly mistaken. First, as just explained, Congress did not use the same phrase but instead replaced it. "That alteration dooms [Intervenors'] position, because the doctrine of congressional ratification applies only when Congress reenacts a statute without relevant change." *Holder v. Martinez Gutierrez*, 566 U.S. 583, 593 (2012). Second, there was nothing to ratify. One paragraph in a proposed rule's preamble, 47 Fed. Reg. 14,424, 14,456 (Apr. 2, 1982), and a final rule's preamble expressly declining "to specify or define" the scope of preemption, 47 Fed. Reg. 57,198, 57,215 (Dec. 22, 1982), do not add up to a settled interpretation. *See, e.g.*, *New York v. Nat'l Highway Traffic Safety Admin.*, 974 F.3d 87, 98 (2d Cir. 2020) (phrase had a "settled legal meaning" where the agency implemented its view in a final rule and stuck with it for decades); *United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001) (no deference to interpretations lacking the force of law). What's more, much of what the Department said at the time supports Plaintiffs: It suggested that a rule prohibiting "hook-ups for appliances with less than a certain efficiency would be subject to preemption." 47 Fed. Reg. at 57,215; *see also* 47 Fed. Reg. at 14,434 (noting that "[t]he statute is clear . . . in providing that" "effectively ban[ning]

14

appliances using certain types of fuel" "should not be the consequence of [federal] standards").

Ultimately, Intervenors' attempt to restore the 1978 statute boils down to the view that the Department would otherwise lack authority to waive the full scope of EPCA preemption.  *See* Dkt. 49 at 7-8.  That was the point.  Congress indicated that the Department's waiver authority is narrower than the scope of preemption when it used different language in different provisions of the same statute and expressly prohibited waivers in certain situations, *e.g.*, § 6297(d)(4).

### 3.  Allowing state bans on appliances would upend the statutory scheme.

Finally, if the Secretary and Intervenors were right, evading EPCA preemption would be an easy matter.  The crux of their position is that EPCA has nothing to say about banning any particular covered appliance.  So if New York wanted to impose a design requirement or efficiency standard more stringent than the federal standard—both of which the Secretary acknowledges are preempted—all it would need to do is make a list of appliances that do not meet its design or efficiency standard and ban them.  This is fair game under the Secretary's reading—and it is indistinguishable from what New York has done here: ban all appliances that use disfavored fuels. This interpretation would gut the preemption provision and enable the very patchwork Congress sought to avoid.  And it would undermine Congress's careful attention to preserving consumer choice. *See, e.g.*, §§ 6295(o)(4), 6297(d)(4); *Bldg. Indus.*, 683 F.3d at 1153 (regulations cannot discriminate among or favor "particular products or methods" (citing § 6297(f)(3)(C))).

Nothing in EPCA's text, structure, or purpose suggests that it is so easy to evade.  To the contrary, Congress had every reason to expect that it would not "make[] any difference" for preemption if a state were to "select[] an indirect but wholly effective means" of achieving a prohibited purpose.  *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 569 U.S. 641, 652 (2013) (collecting cases rejecting attempts to end-run preemption); *Engine Mfrs.*, 541 U.S. at 253-55 (rejecting a reading that "would undo Congress's carefully calibrated regulatory scheme").  In

short, "States and localities can't skirt the text of broad preemption provisions by doing *indirectly* what Congress says they can't do *directly*."  *Cal. Rest.*, 89 F.4th at 1106-07 (collecting cases).

### D.    Plaintiffs' Claim Does Not Turn on an Unconstrained Right to Use.

Nothing about recognizing that New York's ban is preempted depends on the idea that EPCA "created an end-user right to operate EPCA-regulated appliances."  *Contra* Dkt. 48 at 18.  That is a strawman.  Recognizing that EPCA takes a real-world approach—not one confined to the factory floor—does not require the conclusion that no regulation can ever limit any individual's use of any covered appliance under any circumstance.  The statute limits preemption to regulations "concerning" a covered product's "energy efficiency, energy use, or water use."  § 6297(c).  New York's gas ban is such a regulation because banning covered "products that operate on . . . gas 'concerns' the energy use of those products," *Cal. Rest.*, 89 F.4th at 1103—not because it happens to affect the circumstances under which an individual may use a covered appliance.

As Judge Baker explained in the Ninth Circuit, EPCA is "unlikely" to preempt regulations that only "incidentally impact" covered products' gas consumption, such as "state and local taxes" or a decision to not extend a utility distribution system.  *Cal. Rest.*, 89 F.4th at 1117 (Baker, J., concurring).  New York's gas ban, by contrast, "cuts to the heart of what Congress sought to prevent."  *Id.* at 1119.  A ban on the installation of covered gas appliances and the infrastructure that fuels them is inextricably linked to covered appliances' energy use.  It is preempted not because it incidentally impacts "a right to *actually use* covered products," Dkt. 48 at 27, but because its effect—and admitted purpose—is to categorically prohibit covered gas appliances' energy use.  Nothing about applying EPCA's plain text to hold that New York's ban is preempted endangers health and safety regulations that have long coexisted with EPCA.

To be clear, merely invoking health and safety purposes cannot switch off preemption.  "Despite the importance of [those] objective[s]," EPCA does not "create[] an exception on that

16

basis." *See Rowe*, 552 U.S. at 373-74. The point is simply that applying EPCA's plain text to New York's ban will not cause the sky to fall. *Contra* Dkt. 49 at 15-19 (asserting that a preemption ruling "would automatically displace a staggering number of state and local laws"). Broad preemption provisions like EPCA's are ill suited to bright-line rules. No single case can map the outer boundaries of EPCA preemption, much less one that, as here, "does not present a borderline question." *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390 (1992).

### E.    The Natural Gas Act Has No Bearing on EPCA Preemption.

The Secretary briefly suggests that the Natural Gas Act's division of federal and state authority over gas distribution is relevant to preemption here. Dkt. 48 at 15-16. It is not. The Natural Gas Act provides for federal control over interstate transportation of natural gas but states that it "shall not apply to . . . the local distribution of natural gas." 15 U.S.C. § 717(b). That prevents the Federal Energy Regulatory Commission "from regulating the local distribution of gas," but it does not prevent Congress from later "deciding to supplant building codes that prevent the operation of natural gas appliances," as it did in EPCA. *Cal. Rest.*, 89 F.4th at 1106. This case simply has nothing to do with local gas distribution. New York's ban does not regulate gas distribution, but instead bans the use of any fossil fuel in new buildings.

## II.    Plaintiffs' Facial Challenge Is Not Overbroad.

The Secretary identifies one circumstance in which the gas ban may not be preempted and so contends that Plaintiffs' facial challenge fails entirely. Dkt. 48 at 17-18. This argument misapplies the legal standard and, in any event, goes at most to the proper remedy, not the merits.

To be sure, as a general matter, a facial challenge requires showing that the challenged law is "unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008). But the Secretary misunderstands the standard, which is tethered to the "plaintiffs' claim and the relief that would follow," *John Doe No. 1 v. Reed*, 561 U.S. 186,

194 (2010).  Where, as here, the claim and accompanying relief "reach beyond the particular circumstances of the[] plaintiffs," facial standards apply, but only "to the extent of that reach." *Reed*, 561 U.S. at 194.  In other words, "facial standards are applied . . . to the universe of applications contemplated by plaintiffs' claim, not to all conceivable applications contemplated by the challenged provision." *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 914 (10th Cir. 2016).[4]

Here, "the universe of applications contemplated by [P]laintiffs' claim" is the gas ban's effect on covered products as defined by EPCA.  *See, e.g.*, Dkt. 1 at ¶ 91 (requesting a "declaratory judgment . . . that the gas ban . . . is preempted by federal law because it concerns the energy use of appliances covered by" EPCA).  Thus, contrary to the Secretary's suggestion, it is irrelevant that the gas ban is not preempted to the extent it has an effect on products not covered by EPCA— a point no one is disputing.  *Sup. Ct. of N.M.*, 839 F.3d at 915 (facial analysis "focuses on only the constitutional validity of the subset of applications targeted by the plaintiffs' substantive claim").

Regardless, the challenged statute's prohibition on gas *infrastructure* has no possible constitutional application.  The inevitable result of a wholesale ban on gas systems is to prevent covered gas appliances from using any energy, which means there is no way for the infrastructure ban to operate without running afoul of EPCA's preemption provision.  By contrast, the direct ban on gas appliances is preempted only to the extent those appliances are covered products under EPCA.  As a practical matter, that includes most gas appliances.  *See, e.g.*, §§ 6291(1)-(2), 6292(a), 6311(1)-(2), 6312(b) (listing a wide range of covered products); §§ 6292(b), 6312(b) (authorizing rulemaking to cover additional products).

---

[4] *Community Housing Improvement Program v. City of New York*, 59 F.4th 540 (2d Cir. 2023), is inapposite.  That decision simply rejected the argument that the "no set of circumstances" test had been replaced by a "more lenient approach[]," such as the First Amendment overbreadth standard, *see id.* at 548-50.  But *Reed*'s instruction to apply the relevant test "to the extent" of the "reach" of the facial claim at issue, 561 U.S. at 194, had nothing to do with the issue presented in the Second Circuit, and so the court did not address it.

Any concern over the breadth of Plaintiffs' claim is properly addressed by cabining the scope of the remedy to the gas ban's effect on covered products, not by, as the Secretary suggests, dismissing the claim. *See Citizens United v. FEC*, 558 U.S. 310, 331 (2010) (objection to scope of facial challenge "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint"). When the Ninth Circuit ruled on the similar facial challenge to Berkeley's ban, it did exactly that. Recognizing that "Berkeley may enforce its building code on non-covered products, but EPCA displaces its effect on covered products," *Cal. Rest.*, 89 F.4th at 1104, the Ninth Circuit ultimately "conclude[d] that EPCA preempts Berkeley's building code's effect against covered products," *id.* at 1099. The Court here should declare that EPCA preempts the New York gas ban's effect against covered products and enjoin it to that extent.

### III.    Plaintiffs Have Standing and Are Entitled to Prospective Relief.

There is no genuine dispute that Plaintiffs are entitled to declaratory and injunctive relief upon a finding that the gas ban is preempted. Dkt. 371 at 20-23. The Secretary's sole argument against awarding that relief is his view that all thirteen Plaintiffs lack standing. Dkt. 48 at 33-36. The Secretary's overarching challenge to justiciability is incorrect for the reasons explained in Plaintiffs' Rule 12(c) brief, Dkt. 50. None of the Secretary's new arguments flyspecking Plaintiffs' evidence raises a genuine dispute as to standing, let alone for all thirteen Plaintiffs.

1.    It is undisputed that some Plaintiffs and their members have already spent or otherwise lost money in preparation for compliance with the gas ban. This includes an identified member of two associations who testified that his company had already spent money on a project that cannot be completed before the gas ban's effective date and who even now must decide whether to "proceed and risk" statutory penalties or otherwise "delay project timelines at great expense." *See* Dkt. 37-2 ¶¶ 13-16; Dkt. 50 at 12-13. Other Plaintiffs are similarly now making investment or other planning decisions. *See* Dkt. 37-2 ¶¶ 7-12; Dkt. 50 at 13-14. These financial

19

harms and compliance burdens alone establish standing, Dkt. 50 at 17-18, and the Secretary has no evidentiary answer to them, Dkt. 48 at 34-35.  Because a single injured plaintiff is enough, the Court's analysis can stop there.  *E.g.*, *Hyland v. Navient Corp.*, 48 F.4th 110, 117 (2d Cir. 2022).[5]

The Secretary's main basis for disputing these harms is his insistence that the ban's "timing and content" are unknown.  *See* Dkt. 48 at 34-35.  As explained in Plaintiffs' Rule 12(c) briefing, however, the Secretary's suggestions that the Legislature set an optional starting date, not a deadline, and that the contents of the ban are unknown are both contrary to the statutory text. Dkt. 50 at 21-25.  The prohibition itself must be effective by a set date.  The statute mandates that "the code shall prohibit the installation of fossil-fuel equipment and building systems . . . on or after December [31, 2025]."  N.Y. Energy § 11-104(6)(b); *accord* N.Y. Exec. § 378(19).

**2.**    Nor does the Secretary's attempt to manufacture a genuine factual dispute by citing a scattering of news articles and webpages succeed.  Dkt. 48 at 35-36.  This evidence is immaterial because "[a] plaintiff is not required to show that a statute is the sole or the but-for cause of an injury."  *Tweed–New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019); Dkt. 50 at 18-19.  None of the submitted evidence contradicts or even addresses the harm that Plaintiffs and their members face now and will inevitably face when the ban goes into effect.  Dkt. 50 at 12-14, 26-27.  And the Secretary's evidence is inadmissible hearsay.  *See, e.g.*, *McAllister v. N.Y.C. Police Dep't*, 49 F. Supp. 2d 688, 705 n.12 (S.D.N.Y. 1999).

## CONCLUSION

For these reasons, Plaintiffs' motion should be granted.

---

[5] There is thus no need to resolve the Secretary's hearsay objections, Dkt. 48 at 34. Regardless, the statements are admissible as "statement[s] of the declarant's then-existing state of mind (such as motive, intent, or plan)."  Fed. R. Evid. 803(3); *see, e.g.*, *Hydrolevel Corp. v. Am. Soc'y of Mech. Eng'rs, Inc.*, 635 F.2d 118, 128 (2d Cir. 1980) ("Statements of a customer as to his reasons for not dealing with a supplier are admissible for this limited purpose." (cleaned up)).

Dated: December 20, 2024

Respectfully submitted,

_/s/ Sarah O. Jorgensen_

Caroline M. Walters (NDNY Bar No. 705759)
REICHMAN JORGENSEN
    LEHMAN & FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965
cwalters@reichmanjorgensen.com

Sarah O. Jorgensen (NDNY Bar No. 704794)
REICHMAN JORGENSEN
    LEHMAN & FELDBERG LLP
1201 West Peachtree Street, Suite 2300
Atlanta, GA 30309
Telephone: (404) 609-1040
sjorgensen@reichmanjorgensen.com

Brian C. Baran (*Pro Hac Vice*)
REICHMAN JORGENSEN
    LEHMAN & FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310
bbaran@reichmanjorgensen.com

Courtland L. Reichman (*Pro Hac Vice*)
REICHMAN JORGENSEN
    LEHMAN & FELDBERG LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
creichman@reichmanjorgensen.com

*Attorneys for Plaintiffs*