UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

———————————————————————

MULHERN GAS CO., INC.; NEW YORK STATE
BUILDERS ASSOCIATION; NATIONAL
ASSOCIATION OF HOME BUILDERS; NEW
YORK PROPANE GAS ASSOCIATION;
NATIONAL PROPANE GAS ASSOCIATION;
NORTHEAST HEARTH, PATIO, AND
BARBEQUE ASSOCIATION; PLUMBING
CONTRACTORS ASSOCIATION OF LONG
ISLAND; LICENSED PLUMBING ASSOCIATION
OF NEW YORK CITY, INC., doing business as
Master Plumbers Council of the City of New York;
HOLMES MECH. LLC; INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS
LOCAL 1049; PLUMBERS LOCAL UNION NO.
200; INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL UNION 97; and
TRANSPORT WORKERS LOCAL 101, AFL-CIO,

       Plaintiffs,

v.

WALTER T. MOSLEY in his official capacity as
New York Secretary of State and member of the
State Fire Prevention and Building Code Council,

       Defendant,

NEW YORK GEOTHERMAL ENERGY
ORGANIZATION; and PUSH BUFFALO,

       Intervenor Defendants.

———————————————————————

1:23-CV-1267
(GTS/PJE)

APPEARANCES:

REICHMAN JORGENSEN LEHMAN
& FELDBERG LLP
 Counsel for Plaintiffs
1201 West Peachtree Street, Suite 2300
Atlanta, GA 30309

OF COUNSEL:

SARAH JORGENSEN, ESQ.
CAROLINE M. WALTERS, ESQ.
BRIAN C. BARAN, ESQ.
COURTLAND L. REICHMAN, ESQ.

HON. LETITIA A. JAMES
NEW YORK ATTORNEY GENERAL
   Counsel for Defendant Mosley
Main Place Tower, Suite 300A
350 Main Street
Buffalo, NY 14202

CHRISTOPHER C. GORE, ESQ.
TIMOTHY L. HOFFMAN, ESQ.
Assistant Attorneys General

28 Liberty Street
New York, NY 10005

LAURA MIRMAN-HESLIN, ESQ.
Assistant Attorneys General

EARTHJUSTICE
   Counsel for Intervenor Defendants
48 Wall Street, 15th Floor
New York, NY 10005

DROR LADIN, ESQ.
MEAGAN BURTON, ESQ.

BAKER BOTT LLP
   Counsel for Amicus AHRI
700 K Street NW
Washington, DC 20001

ERIK T. KOONS, ESQ.

SIERRA CLUB
   Counsel for Amicus Sierra Club
50 F Street NW
Washington, DC 20001

BRIDGET LEE, ESQ.

GUARINI CENTER ON ENVIRONMENTAL,
ENERGY and LAND USE LAW
  Counsel for Amicus Guarini Center
139 MacDougal Street, Wilf Hall, Suite 3rd Floor
New York, NY 10012

NATHANIEL MATTISON, ESQ.

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this preemption action filed by Mulhern Gas Co., Inc.,

New York State Builders Association, National Association of Home Builders, New York

Propane Gas Association, National Propane Gas Association, Northeast Hearth, Patio and

Barbeque Association, Plumbing Contractors Association of Long Island, Licensed Plumbing

Association of New York City, Inc., Holmes Mech. LLC, International Brotherhood of Electrical

2

Workers Local 1049, Plumbers Local Union No. 200, International Brotherhood of Electrical

Workers Local Union 97, and Transport Workers Union Local 101 AFL-CIO ("Plaintiffs")

against Walter T. Mosley in his official capacity as New York Secretary of State ("Defendant"),

are the following: (1) Defendant's motion for judgment on the pleadings based on lack of

subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(c);[1] and (2) Plaintiffs' motion for

summary judgment pursuant to Fed. R. Civ. P. 56, issuing both a declaratory judgment pursuant

to 28 U.S.C. § 2201(a), and a permanent injunction.   (Dkt. Nos. 37, 38.)   New York

Geothermal Energy Organization and PUSH Buffalo were granted permission to join this suit as

Intervenor Defendants for the purpose of opposing Plaintiffs' motion for summary judgment.

(Dkt. Nos. 42, 49.)   Air Conditioning, Heating and Refrigeration Institute ("AHRI"), Sierra

Club, and Guarini Center on Environmental, Energy and Land Use Law ("Guarini Center") were

all granted permission to file amicus curiae briefs related to Plaintiffs' motion for summary

judgment.   (Dkt. Nos. 43, 57, 59.)   For the reasons set forth below, Defendant's motion for

judgment on the pleadings is denied, and Plaintiffs' motion for summary judgment (seeking both

a declaratory judgment and permanent injunction) is denied.

I.      **RELEVANT BACKGROUND**

   A.      **Plaintiffs' Complaint**

   Generally, in their Complaint, Plaintiffs allege that certain amendments to the New York

---

[1]      The Court notes that, generally, a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is treated in the same manner as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).   However, where (as here), a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is based upon a lack of subject-matter jurisdiction, such a motion is generally a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).   *See, e.g., U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F.Supp.2d 443, 448-49 (S.D.N.Y.2001).

Energy Law and New York Executive Law (found at N.Y. Energy L. § 11-104[6]-[8] and N.Y. Exec. L. § 378[19]) that require provisions to be adopted into the Energy Conservation Construction Code ("Energy Code") and Uniform Fire Prevention and Building Code ("Building Code") prohibiting "the installation of fossil-fuel equipment and building systems" in certain new buildings are preempted by the Energy Policy and Conservation Act ("EPCA") because such statutes impose what amounts to a regulation on the energy use of fossil-fuel equipment, including for appliances that are covered by the EPCA, and do not qualify for any of the enumerated waiver conditions outlined in the EPCA. (*See generally*, Dkt. No. 1.) As relief for their claims, Plaintiffs request (a) declaratory judgment that the relevant statutory provisions are preempted by the EPCA, (b) a permanent injunction enjoining enforcement of the statutory fossil-fuel equipment prohibition, (c) costs and attorneys' fees, and (d) any other relief that may be just and proper. (*Id.* at ¶ 91.)

B.      **Procedural History**

On October 12, 2023, Plaintiffs filed the Complaint in this action. (Dkt. No. 1.) On December 18, 2023, Defendants filed a motion to dismiss for lack of subject-matter jurisdiction. (Dkt. No. 19.) The Court granted that motion in part and denied it in part on August 29, 2024, finding that former defendants New York Department of State, the New York State Fire Prevention and Building Code Council ("Code Council"), and all individual members of the Code Council with the exception of the New York Secretary of State (who was, at that time, Robert Rodriguez), needed to be dismissed because the Eleventh Amendment barred the claims asserted against them. (Dkt. No. 28.)

Plaintiffs and Defendant filed the currently pending motions on November 5, 2024. (Dkt. No. 37, 38.) During the briefing of those motions, New York Geothermal Energy

4

Organization and PUSH Buffalo were granted permission to intervene as defendants related to Plaintiffs' motion for summary judgment; and AHRI, Sierra Club, and Guarini Center were granted permission to file amicus curiae briefs also related to that motion.   (Dkt. Nos. 43, 49, 57, 59.)   The parties have additionally filed supplemental authority and a factual update regarding the progress that the Code Council has made in formulating the code provisions in accordance with the challenged statutes.   (Dkt. Nos. 61, 62, 63.)

### C.     Parties' Arguments on Defendant's Motion for Judgment on the Pleadings

#### 1.   Defendant's Memorandum of Law

Generally, in his motion for judgment on the pleadings, Defendant argues that the Court lacks subject-matter jurisdiction over Plaintiffs' sole claim in this action (seeking relief based on preemption) because (a) Plaintiffs lack standing to bring such a claim in that they have not suffered any injury, nor have they alleged that any injury is actually imminent, and (b) such a claim is not yet ripe for review because the Code Council has not promulgated or adopted any amendments to the Codes that have made the fossil-fuel equipment prohibition enforceable against any Plaintiff.   (Dkt. No. 38, Attach. 1.)

More specifically, as to standing, Defendant argues that (a) the statutes that Plaintiffs challenge do not themselves cause any injury because they do not actually impose any enforceable requirement or restriction against Plaintiffs, but rather merely direct the Code Council to develop and promulgate amendments to the Codes, (b) the Code Council is required to follow a certain rulemaking procedure and comply with other requirements in formulating the amendments required by the statutes and thus Plaintiffs have nothing but speculation regarding what the Code amendments might eventually contain, (c) there is uncertainty as to when the Code amendments will be enacted, so, again, the claims of imminent future injury are merely

speculative at this point, (d) even if Plaintiffs can show an injury, they have not shown that any such injury is fairly traceable to an action by Defendant specifically, given that it was the Legislature, not the New York Secretary of State, who adopted the relevant statutes that Plaintiff challenges here, and (e) there is also no redressability because a court cannot enjoin enforcement of a statute that cannot actually be enforced.   (*Id.* at 12-18.)

Finally, as to ripeness, Defendant argues that Plaintiffs' claim is not ripe for review because the statutes do not impose any enforceable legal requirement on Plaintiffs, but rather any enforcement is contingent on the unknown outcome of the rulemaking procedure being undertaken by the Code Council, and any future enforcement would not take effect before 2026 at the earliest.   (*Id.* at 18-21.)

### 2.  Plaintiffs' Opposition Memorandum of Law

Generally, in opposition to Defendant's motion, Plaintiffs make two arguments.   (Dkt. No. 50.)   First, Plaintiffs argue that they have standing to challenge the mandated future prohibition of use of fossil-fuel equipment because (a) they have suffered, and will suffer, actual economic harms as a result of the statutes given that they are already experiencing "compliance costs" related to ensuring they are prepared for when the Code amendments are enacted, as well as lost sales, work opportunities and revenue that will only be exacerbated, (b) the harm alleged is imminent and actual in that, even if the statutes are not themselves directly enforceable, they *require* the Code Council to codify the prohibition into the Codes (i.e., the Code Council could not choose to refrain from implementing the prohibition without violating state law), and the statutes require that the Code amendments implementing the prohibition take effect by December 31, 2025, and (c) the injuries alleged are traceable to Defendant's approval and enforcement authority of the impending Code amendments (which are, again, mandated by the statutes), and

redressable because an injunction would bar Defendant from enforcing those Code amendments against Plaintiffs.   (*Id.* at 16-28.)

Second, Plaintiffs argue that this purely legal dispute over whether the statutes are preempted by federal law is ripe for all the same reasons it has suffered a sufficient injury for standing purposes.   (*Id.* at 29-30.)   Plaintiff also argues that Defendant has forfeited his prudential ripeness objection by not raising it in his original motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) (wherein he and former defendants challenged whether the Eleventh Amendment barred claims against those former defendants), but, nevertheless, if the Court were to consider the merits of his arguments, the issue of preemption raised here is a purely legal one, because, regardless of what the final content of the Code amendments might be, they will inevitably need to contain, as required by the statutes, the prohibition on fossil-fuel equipment. (*Id.* at 30-33.)

### 3.   Defendant's Reply Memorandum of Law

Generally, in reply, Defendant makes two arguments.   (Dkt. No. 53.)   First, Defendant argues that Plaintiffs have not established standing because (a) Plaintiffs have not shown a sufficient injury given that the statutes themselves do give any legal effect to a prohibition on fossil-fuel equipment, and the harms they allege are, at this time, speculative at best and based on hearsay and conclusory statements, (b) the alleged harm is not imminent because the Code amendments do not become effective on December 31, 2025, as Plaintiffs argue, but rather only after they are finally adopted, the timing of which is not certain, (c) Plaintiffs have not shown that the alleged injury is traceable to Defendant because Defendant played no role in the enactment of the statutes they challenge here, and (d) there is no redressability in enjoining enforcement of the statutes because it is enforcement of the yet-to-be-adopted Code amendments

that would actually cause the harm Plaintiffs allege, not the statutes themselves.   (*Id.* at 7-12.)

Second, Defendant argues that (a) Plaintiffs have not presented a ripe case or controversy because the statutes impose no legal requirements on Plaintiffs and any enforcement of a fossil-fuel prohibition against Plaintiffs is contingent upon uncertain future events, (b) Defendant has not waived prudential ripeness because his Answer contains such a defense, and he was not required to raise it in the previous motion to dismiss, and (c) again, the challenged statutes do not themselves impose any legal requirements on Plaintiffs.   (*Id.* at 12-15.)

### D.     Undisputed Material Facts on Plaintiffs' Motion for Summary Judgment

Under N.D.N.Y. Local Rule 56.1, a party opposing summary judgment must file a response to the moving party's Statement of Material Facts that "shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs," supported by "a specific citation to the record where the factual issue arises."   N.D.N.Y. L.R. 56.1(b).   This requirement is not a mere formality; rather "this and other local rules governing summary judgment are essential tools intended to relieve the district court of the onerous task of hunting through voluminous records without guidance from the parties."   *LaFever v. Clarke*, 17-CV-1206, 2021 WL 921688, at *6 (N.D.N.Y. Mar. 11, 2021) (Hurd, J.) (quoting *Frantti v. New York*, 414 F. Supp. 3d 257, 284 [N.D.N.Y. 2019] [Hurd, J.]).   Indeed, "[a] proper response to a movant's statement of material facts streamlines the summary judgment analysis 'by allocating responsibility for flagging genuine factual disputes on the participants ostensibly in the best position to do so: the litigants themselves.'"   *LaFever*, 2021 WL 921688, at *7 (quoting *Alke v. Adams*, 16-CV-0845, 2018 WL 5297809, at *2 [N.D.N.Y. Oct. 25, 2018] [Hurd, J.]).   "The Court may deem admitted any properly supported facts set forth in the Statement of Material

Facts that the opposing party does not specifically controvert."   N.D.N.Y. L.R. 56.1(b).

Applying this legal standard here, the following facts have been asserted and supported by record citations by Plaintiffs, and either expressly admitted or denied without a supporting record citation by Defendant.[2]

1.    In May 2023, New York passed N.Y. Energy L. § 11-104(6)-(8) and N.Y. Exec. L. § 378(19), which state that

> [T]o support the goal of zero on-site greenhouse gas emissions and help achieve the state's clean energy and climate agenda, including but not limited to greenhouse gas reduction requirements set forth within chapter one hundred six of the laws of two thousand nineteen . . . the code shall prohibit the installation of fossil-fuel equipment and building systems, in any new building not more than seven stories in height, except for new commercial or industrial buildings greater than one hundred thousand square feet in conditioned floor area, on or after December thirty-first, two thousand twenty-five, and the code shall prohibit the installation of fossil-fuel equipment and building systems, in all new buildings after December thirty-first, two thousand twenty-eight.[3]

2.    Those statutory amendments were passed by the New York legislature, signed by the Governor into law, and are effective now.[4]

---

[2]    In their Statement of Undisputed Material Facts, Plaintiffs have included a host of facts about the individual or organizational Plaintiffs, all of which are related to the issue of whether those Plaintiffs have suffered a harm related to the standing inquiry.   However, the Court finds that such asserted facts are either not sufficiently material to the relevant issues to merit inclusion here, or properly disputed by Defendant, specifically as to the issue of whether it is the statutory amendment that is the cause of those alleged injuries.   (*Compare* Dkt. No. 37. Attach. 2, at ¶¶ 7-31, *with* Dkt. No. 48, Attach. 1, at ¶¶ 7-31.)

[3]    The Court agrees with Defendant that the text of the statute speaks for itself and has therefore used the specific language of the statutes here rather than Plaintiffs' summary of what the statute says.   The language cited is from N.Y. Energy L. § 11-104, which the Court notes deviates from the almost identical language in N.Y. Exec. L. § 378(19) in small and immaterial ways.

[4]    Defendant admits that the statutes were passed by the legislature and signed by the

3.      The Code Council has already begun to comply with its statutory duty to amend the Building Code and Energy Code.[5]

4.      In June 2024, the Code Council published a Notice of Rule in Development that included draft amendments to the Codes.

5.      The Code Council's minutes from its meeting of June 28, 2024, report that it discussed "the draft regulation for the implementation of the prohibition on the installation and use of fossil-fuel equipment and building systems in certain new structures and buildings," and that the Code Council members were "encouraged to submit any comments as soon as possible, particularly within the next couple months, so that the Department can revise the language as necessary to stay on target with our timeline to update the Uniform Code and Energy Code."

6.      The Code Council's published minutes from its meeting on July 26, 2024, confirm that, at its June 2024 meeting, "[t]he Code Council was presented with the provision for

---

Governor, but argues, without citation to any evidence, that these statutes are not "effective" because the Court has previously found that the statutes are not, themselves, enforceable against Plaintiffs. (Dkt. No. 48, Attach. 1, at ¶ 2.)   However, whether the statutes are effective and whether they can be enforced against Plaintiffs are two different questions.   There seems to be no dispute that the statutes are effective, given that Defendant acknowledges that the Code Council now has a responsibility to amend the Codes in accordance with these statutes. Defendant's response is little more than an attempt to make a legal argument that is not appropriate in the context of responding to a Statement of Material Facts.

[5]      Defendant admits that the Code Council has begun the process to adopt amendments to the Codes, but denies the remainder of the asserted fact because it is merely an improper characterization of the legal effect of the statutory amendments.   (Dkt. No. 48, Attach. 1, at ¶ 3.) However, the evidence provided by Plaintiffs documents that the Code Council has indeed begun the process of amending the Codes to specifically include the prohibition of the installation of fossil-fuel equipment and building systems that is clearly outlined in and required by the statutes. (Dkt. No. 26, Attachs. 2-4.)   Because the Court disagrees that this asserted fact involves any unwarranted characterization of the statute, and because Defendant has not provided any other basis for denial, the Court has deemed this fact to be admitted.

fossil-fuel prohibition, which [is] codified in Article 11 of the State Energy Law and Section 378 of the Executive Law and will be set forth expressly in Part 1240 of Title 19," and that a "[Notice of Rule in Development] document for those proposed changes was published on the Division's website."

### E.    Parties' Arguments on Plaintiffs' Motion for Summary Judgment

#### 1.    Plaintiffs' Memorandum of Law

Generally, in their motion for summary judgment, Plaintiffs make three arguments. (Dkt. No. 37, Attach. 1.)   First, Plaintiffs argue that the prohibition on fossil-fuel equipment mandated by the challenged statutes is preempted by the EPCA.   (*Id.* at 12-20.)   More specifically, Plaintiffs argue that the statutory prohibition is a regulation concerning the energy use of appliances covered under the plain text of the preemption provision of the EPCA because the challenged statutes indirectly regulate energy use through a prohibition on fossil-fuel equipment, which necessarily means that the energy use of any fossil-fuel equipment will be zero.   (*Id.* at 13-14.)   Plaintiffs further argue that other aspects of the EPCA preemption provision support a finding that preemption applies in this case, including (a) an exemption to preemption like the one related to meeting certain conditions for local building codes shows that preemption ordinarily extends to local building codes, and (b) a ban on covered appliances that use a certain type of fuel would be at odds with the history and purpose of the EPCA.   (*Id.* at 14-19.)   They also argue that the challenged statutes do not qualify for any exception to preemption outlined in the EPCA.   (*Id.* at 19-20.)

Second, Plaintiffs argue that they are entitled to declaratory judgment because New York's prohibition on fossil-fuel equipment in certain new buildings is preempted by the EPCA. (*Id.* at 21.)

Third, Plaintiffs argue that they are also entitled to permanent injunctive relief because (a) the prohibition on fossil-fuel equipment will cause irreparable harm once implemented and enforced, (b) Plaintiffs would be unable to recover monetary damages from New York even if their damages could be quantified in monetary terms, (c) the balance of harms is greater to Plaintiffs than to Defendant, and (d) it is in the public interest to not enforce a state law that is preempted by federal law.   (*Id.* at 21-23.)

### 2.     Defendant's Opposition Memorandum of Law

Generally, in his opposition to Plaintiffs' motion, Defendant makes three arguments. (Dkt. No. 48.)   First, Defendant argues that Plaintiffs' facial challenge to the New York statutes must fail because it is overbroad given that the relevant amendments to those statutes are not limited to "covered products" under the EPCA, and therefore Plaintiffs cannot show that the statutes would be unconstitutional in all applications as required for a facial challenge.   (*Id.* at 17-18.)

Second, Defendant argues that the EPCA does not, in any event, preempt the relevant statutes or proposed Code amendments.   (*Id.* at 18-32.)   Specifically, Defendant argues that Plaintiffs have misinterpreted the EPCA in determining that it would preempt the relevant New York statutes because (a) they attempt to apply definitions other than the highly technical ones that Congress intended in order to extend the reach of the EPCA beyond regulation of energy conservation standards, particularly as to the term "energy use," (b) they conflate the EPCA's purpose of ensuring uniform energy conservation standards in the design and manufacture of covered equipment with the availability of a certain type of fuel to use that equipment (the latter of which, Defendant argues, the EPCA does not cover), and (c) they attempt to stretch the term "concerning" beyond its logical bounds but, regardless, no interpretation of that term would

bring the challenged statutes within the purview of the EPCA.    (*Id.*).    Defendant further argues that the Court should decline to follow the Ninth Circuit's decision in *California Restaurant Assoc. v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024), because that court erred in applying the same incomplete and erroneous definition of "energy use" advanced here by Plaintiffs, and by inappropriately relying on a colloquial definition of the term "point of use" rather than the technical definition that should have been applied.    (*Id.* at 27-29.)    Defendant also argues that it does not matter whether any exceptions listed in the EPCA would apply to the challenged statutes because Plaintiffs have not, and cannot, show that those statutes regulate the energy use of any covered product, and thus the statutes are not covered by the EPCA's preemption provision in the first place.    (*Id.* at 31-32.)

Third, Defendant argues that Plaintiffs are not entitled to declaratory or injunctive relief, both because the challenged statutes are not preempted, and because there are outstanding questions related to whether Plaintiffs have sufficient standing to justify those forms of relief. (*Id.* at 33-36.)

### 3.    Intervenor Defendants' Opposition Memorandum of Law

Generally, in their opposition memorandum of law, the Intervenor Defendants make three arguments.    (Dkt. No. 49.)    First, the Intervenor Defendants argue that the EPCA does not preempt all regulations related to the use of certain equipment, but rather only those that concern energy use or energy efficiency, and therefore it does not preempt regulations that, like the ones at issue here, do not address conservation standards, but rather health and safety concerns.    (*Id.* at 6-11.)    The Intervenor Defendants also argue that the exceptions listed in the EPCA do not suggest that the statutes are preempted, but rather support the argument that regulations not related to restricting or addressing energy consumption are not covered by the EPCA at all.    (*Id.*

at 8.)

Second, the Intervenor Defendants argue that the challenged statutes do not concern the energy use of covered appliances, but rather constitute health-and-welfare legislation aimed at addressing the threats posed by climate change and the public health consequences of air pollution.   (*Id.* at 11-15.)

Third, the Intervenor Defendants argue that Plaintiffs' proposed interpretation of the EPCA's preemption clause produces absurd and expansive results such as prohibiting a state from ever preventing the use of any covered product for any reason, even if such products pose a significant risk to the health of state residents in certain locations or applications.   (*Id.* at 15-19.)

### 4.    Plaintiffs' Reply Memorandum of Law

Generally, in their reply memorandum of law, Plaintiffs make six arguments.   (Dkt. No. 54.)   First, Plaintiffs argue that, in assessing a case where, like here, there is an express preemption statute, there is no presumption against preemption that should be applied.   (*Id.* at 7-8.)

Second, Plaintiffs argue that Defendants' arguments regarding interpretation of the EPCA are incorrect because (a) Defendants conflate the term "energy conservation standard" with the terms "energy use" or "energy efficiency," (b) their reliance on headings in the relevant section of the EPCA is misplaced because those headings cannot override the actual text of the statute, (c) their interpretations and arguments ignore the use of the word "concerning" in the preemption provision, (d) regardless of how "point of use" is defined, the EPCA does not cover only regulations that directly affect energy use, but also those that *concern* energy use, and such can include the actual use of energy as the covered product operates in practice as opposed to during laboratory testing, and (e) Defendants' attempt to limit "energy use" to only laboratory testing

14

values is irreconcilable with the building code exemption contained in the EPCA preemption clause. (*Id.* at 8-17.)

Third, Plaintiffs argue that the structure and purpose of the EPCA indicate that the challenged statutes are preempted. (*Id.* at 17-22.) More specifically, Plaintiffs argue that (a) the preemption provision does not apply only to design and manufacturing of covered equipment, but also distribution, sale, and servicing, and, regardless, the challenged statutes affect the design and manufacture of covered equipment because manufacturers will now have to design and manufacture non-fossil-fuel products if they want to be able to have their products installed in new buildings in New York, (b) in adopting amendments to the EPCA in 1987, Congress rejected the Department of Energy's previous interpretation of the preemption provision contrary to what Defendants assert, and in fact changed the scope of preemption based on their dissatisfaction with that interpretation, and (c) accepting Defendants' arguments would make the EPCA easy to evade because states could simply ban any specific lower efficiency products they disagree with based on fuel type, even if such products meet federal energy efficiency or energy use standards. (*Id.*)

Fourth, Plaintiffs argue that their claim of preemption is not based on whether there is an unrestrained right to use certain products or fuel types, but rather the fact that the challenged statutes indirectly attempt to regulate the energy use of those products. (*Id.* at 22-23.)

Fifth, Plaintiffs argue that their facial challenge is not overbroad because the requirement to show no constitutional application regarding a facial challenge applies only to the type of applications that are contemplated by their claim (i.e., related to what is covered by the challenged statutes), not every conceivable way in which the state could possibly regulate energy equipment, and Plaintiffs have in fact shown that there is no constitutional application of the

15

fossil-fuel equipment prohibition.   (*Id.* at 23-25.)   Plaintiffs further argue that any concerns about the breadth of their claim would be more appropriately considered when determining the scope of the remedy, not the validity of the claim itself.   (*Id.* at 25.)

Sixth, in response to Defendant's argument about the appropriate remedy, Plaintiffs argue that they have standing sufficient to be entitled to declaratory and injunctive relief because they have already begun to suffer costs of complying with the impending code amendments.   (*Id.* at 25-26.)

### 5.    Amicus Curiae Briefs

#### i.    AHRI

In its amicus curiae brief, AHRI argues that this Court should find New York State's prohibition on fossil-fuel equipment in certain new buildings to be preempted by the EPCA, and discusses some of the relevant history of the EPCA, related legislation, and the rulemaking process applicable to adopting standards under the EPCA to show that Congress granted the federal government the exclusive authority to regulate energy conservation standards.   (Dkt. No. 43, Attach. 1.)   It also urges the Court to follow the Ninth Circuit's holding and reasoning in *California Restaurant Assoc.*   (*Id.*)

#### ii.    Sierra Club

In its amicus curiae brief, Sierra Club discusses the harmful effect that natural gas appliances and the pollutants formed from the burning of natural gas have on both indoor and outdoor air quality and the resulting negative effects on human health, including increased rates of respiratory and cardiovascular illnesses.   (Dkt. No. 57.)

#### iii.    Guarini Center

In its amicus curiae brief, Guarini Center argues that the EPCA does not guarantee that

manufacturers of covered appliances will be protected from laws that are unrelated to the scope

of the EPCA, which is limited in relevant part to establishing energy conservation standards and

labeling requirements for covered products.   (Dkt. No. 59.)

## II.    GOVERNING LEGAL STANDARDS

### A.    Standards Governing a Motion to Dismiss for Lack of Subject-Matter Jurisdiction

"It is a fundamental precept that federal courts are courts of limited jurisdiction."   *Owen*

*Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).   Generally, a claim may be

properly dismissed for lack of subject-matter jurisdiction where a district court lacks

constitutional or statutory power to adjudicate it.   *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir.

2000).   A district court may look to evidence outside of the pleadings when resolving a motion

to dismiss for lack of subject-matter jurisdiction.   *Makarova*, 201 F.3d at 113.   The plaintiff

bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence.

*Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]).   When a

court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must

be resolved and inferences drawn in favor of the plaintiff.   *Aurecchione v. Schoolman Transp.*

*Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

### B.    Standards Governing a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that

there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as

a matter of law."   Fed. R. Civ. P. 56(a).   A dispute of fact is "genuine" if "the [record] evidence

is such that a reasonable jury could return a verdict for the [non-movant]."   *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).[6]   As for the materiality requirement, a dispute of fact is

"material" if it "might affect the outcome of the suit under the governing law . . . . Factual

disputes that are irrelevant or unnecessary will not be counted."   *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all

ambiguities and draw all reasonable inferences against the movant.   *Anderson*, 477 U.S. at 255.

In addition, "[the movant] bears the initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of the . . . [record] which it believes

demonstrate[s] the absence of any genuine issue of material fact."   *Celotex v. Catrett*, 477 U.S.

317, 323-24 (1986).   However, when the movant has met its initial burden, the non-movant must

come forward with specific facts showing a genuine issue of material fact for trial.   Fed. R. Civ.

P. 56(a), (c), (e).[7]

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant

willfully fails to respond to a motion for summary judgment, a district court has no duty to

perform an independent review of the record to find proof of a factual dispute.

Of course, when a non-movant willfully fails to respond to a motion for summary

judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that

---

[6]      As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to
create a genuine issue of fact."   *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)
[citation omitted].   As the Supreme Court has explained, "[The non-movant] must do more than
simply show that there is some metaphysical doubt as to the material facts."   *Matsushita Elec.
Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[7]      Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to
the movant's Statement of Material Facts, which admits or denies each of the movant's factual
assertions in matching number paragraphs, and supports any denials with a specific citation to
the record where the factual issue arises.   N.D.N.Y. L. R. 7.1(a)(3).

the motion is to be granted automatically."   *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

Rather, as indicated above, the Court must assure itself that, based on the undisputed material

facts, the law indeed warrants judgment for the movant.   *Champion*, 76 F.3d at 486; *Allen v.

Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.);

N.D.N.Y. L.R. 7.1(b)(3).   What the non-movant's failure to respond to the motion does is

lighten the movant's burden.

 For these reasons, this Court has often enforced Local Rule 56.1 by deeming facts set

forth in a movant's statement of material facts to be admitted, where (1) those facts are supported

by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that

statement.[8]

 Similarly, in this District, where a non-movant has willfully failed to respond to a

movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed

to have "consented" to the legal arguments contained in that memorandum of law under Local

Rule 7.1(a)(3).[9]   Stated another way, when a non-movant fails to oppose a legal argument

asserted by a movant, the movant may succeed on the argument by showing that the argument

---

[8]      Among other things, Local Rule 56.1(b) requires that the non-movant file a response to
the movant's Statement of Material Facts, which admits or denies each of the movant's factual
assertions in matching numbered paragraphs, and supports any denials with a specific citation to
the record where the factual issue arises.   N.D.N.Y. L. R. 56.1(b).

[9]      *See*, *e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31
(N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to
oppose several arguments by defendants in their motion for summary judgment as consent by
plaintiff to the granting of summary judgment for defendants with regard to the claims that the
arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-
0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's
failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession
by plaintiff that the court should exclude [the expert's] testimony" on that ground).

possess facial merit, which has appropriately been characterized as a "modest" burden.   *See* N.D.N.Y. L.R. 7.1(a)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

III.    **ANALYSIS**

    A.    **Whether Plaintiff's Complaint Should Be Dismissed for Lack of Standing and Lack of Ripeness**

    After careful consideration, the Court answers this question in the negative for the reasons stated in Plaintiffs' opposition memorandum of law.   *See, supra,* Part I.C.2 of this Decision and Order.   To those reasons, the Court adds the following analysis.

    To establish Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."   *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact "must be concrete and particularized, as well as actual or imminent," rather than "conjectural or hypothetical."   *Carney v. Adams*, 592 U.S. 53, 58 (2020).   "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements."   *Spokeo*, 578 U.S. at 338.

    As an initial matter, Defendant again, as he did in the prior Fed. R. Civ. P. 12(b)(1) motion, repeatedly highlights the fact that, although Plaintiffs have alleged that N.Y. Energy L. § 11-104(6)-(8) and N.Y. Exec. L. § 378(19) are preempted, it is the yet-to-be-adopted Code amendments that would be the actual source of their alleged injury.   However, the Court finds

that fact to be less material to the issue of standing than it was when the Court previously determined whether certain former defendants were shielded from suit by the Eleventh Amendment.   During that previous determination, the Court found that those individuals were not proper defendants under *Ex Parte Young* because, although they were tasked with enacting the Code amendments mandated by the relevant statutes, they did not have any role in enforcing the statutes themselves.   (Dkt. No. 28, at 10-12.)   The Court also found, as Defendant quotes, that the statutes have "little or no practical effect in terms of enforcement against the Plaintiffs until it is implemented as directed through the Codes."   (*Id.* at 12.)   The question of what was being enforced, and by whom, was directly dispositive to the issue being decided on that motion.

That is not, however, the case in assessing standing.   Although it is still true that the challenged statutes do not themselves impose an enforceable prohibition on fossil-fuel equipment, the fact that they direct the Code Council to implement that prohibition through amendment of the Codes has the potential to cause the type of harm that could create standing. Despite all of Defendant's objections that the lack of an enforcement mechanism in the statutes themselves renders them incapable of causing Plaintiffs' alleged injury, it is an inescapable fact that the Code Council would not be amending the Codes to include the relevant fossil-fuel equipment prohibition had it not been directed to do so by the Legislature through the statutes. Defendant is therefore correct in asserting that final adoption of the Code amendments is required before the prohibition will be enforceable against Plaintiffs, but that fact does not inevitably lead to Defendant's conclusion that the challenged statutes cannot be considered a source of any legal injury, or that any injury flowing from them is too remote or speculative to confer standing.   In other words, even if the injury will not come to be fully felt until the Code amendments are adopted and enforceable, that future injury flows directly from the statutes

21

themselves.

Next, although Defendant takes great pains to convince the Court that it is entirely unknowable when the Code Council will adopt the Code amendments or what the content of those amendments will be, those arguments are contradicted by the statutes themselves and the evidence presented.   As to Defendant's argument that it is uncertain when the Code amendments will be adopted, the relevant text of N.Y. Energy L. § 11-104(6)(b) directs that "the code shall prohibit the installation of fossil-fuel equipment and building systems" in certain types of new buildings "*on or after* December thirty-first, two thousand twenty-five," and in all new buildings "after December thirty-first, two thousand twenty-eight."   N.Y. Energy L. § 11-104(6)(b) (emphasis added).   Under the plain language of the statute, it is therefore clear that the Legislature has directed that the Code amendments must be in place by December 31, 2025, or January 1, 2026 (as to the first phase of the prohibition) and January 1, 2029 (as to the second phase), because the amendments being enacted by then is the only way in which the codes will prohibit such activity "on or after" the specified dates.   Defendant does not address this language, but instead argues that it is simply not certain that the Code Council will implement the amendments by any certain date because "the schedule for adoption is subject to the constraints of a governmental body that meets quarterly with a large docket, as well as the possibility of a need to amend and repropose the regulations based on comments received during the administrative process."   (Dkt. No. 53, at 10.)   However, none of these hypothetical possibilities of delay change the fact that the statute directs that the code shall prohibit the installation of fossil-fuel equipment and building systems on or after December 31, 2025.   The Code Council may indeed not meet the deadline set by the Legislature if certain circumstances arise, but such speculative possibility is not sufficient to override the fact that the statutes set a

concrete date by when the prohibition is supposed to be in the Codes.   The Court therefore finds

that the timing of when the relevant prohibition will become enforceable is not so speculative as

to prevent it from being considered an imminent future injury.

The Court is likewise unpersuaded by Defendant's similar assertion that injury is still

speculative at this point because there is no clear indication as to what the content of the Codes

will be.   As an initial matter, although it is true that the full extent of what the Code amendments

would ultimately include cannot be not known before they are drafted, put through the

rulemaking process, and adopted, there is at least one thing the amendments are certain to

include: a prohibition of the installation of fossil-fuel equipment and building systems in certain

new buildings.   That prohibition is mandated by the relevant statutes, which means any Code

amendment would necessarily have to include at least that basic element.   As the Court has

already found, the Code Council has no discretion to not include that prohibition because it has

been specifically directed by the Legislature to include it in the Codes.   (Dkt. No. 28, at 13.)

Given that it is this prohibition that Plaintiffs challenge as being preempted by the EPCA, there

is no reason why uncertainty as to what else the Code amendments might ultimately include

would be detrimental to Plaintiffs' showing of a concrete, imminent injury.   Moreover, while the

motions have been pending, Plaintiffs have provided supplemental evidence in the form of a

copy of the draft Code amendments formulated by the Code Council, which include the fossil-

fuel equipment prohibition and provide an indication of the types of other amendments that are

likely to be in the final version of the Codes.   (*See generally* Dkt. No. 62, Attach. 2; Dkt. No.

62, Attach. 3; Dkt. No. 62, Attach. 4; Dkt. No. 62, Attach. 5, at 16-23.)   The Court therefore

rejects Defendant's argument that the content of the Code amendments that will eventually be

adopted is too speculative or unknowable to be the basis of Plaintiffs' assertion of an imminent

future injury.

The fact that Code amendments have not yet been passed and the fossil-fuel equipment prohibition is not yet enforceable against Plaintiffs does not prevent a finding that Plaintiffs have standing to challenge the statutes.   In cases involving pre-enforcement review, a plaintiff can be found to have an injury-in-fact "where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, and there exists a credible threat of prosecution thereunder.'"   *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 [1979]).   Here, the various Plaintiffs have clearly alleged a credible intention to continue to install fossil-fuel equipment in new buildings, because that activity is part of their businesses.   Moreover, there has been no evidence presented that would give the Court any reason to believe that Defendant does not intend to enforce the prohibition to stop individuals or entities such as Plaintiffs from installing fossil-fuel equipment in new buildings once it is adopted into the Codes.   *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988) (finding standing in a pre-enforcement case where "[t]he State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise").   The fact that the Code amendments have not yet been adopted does not prevent a finding of an imminent and credible threat of future enforcement because, as already discussed, the Code Council must amend the Codes to implement the fossil-fuel prohibition by a certain date.   To say that Plaintiffs cannot assert their right to sue at this stage merely because the date mandated by the Legislature for when the prohibition should be in the Codes is still six months away flies in the face of the longstanding ability of a plaintiff to sue for non-speculative and imminent future injuries.   *See Susan B. Anthony List*, 573 U.S. at 158 ("An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or

24

there is a 'substantial risk that the harm will occur'") (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 [2013]).

Nor does the Court find that it is necessary to precisely define any and all specific injuries that the Plaintiffs might suffer in order to find that standing exists.   As discussed above, Plaintiffs asserted a number of facts related to their motion for summary judgment regarding the injuries that have been or will be suffered by each Plaintiff, which variously include harm to business revenues and profits, disruption of long-term business strategy and asset planning, interference with ability to hire new technicians, and elimination or delay of planned investments (as to Plaintiff Mulhern Gas), harm to profits and business operations (as to Plaintiffs New York Propane Gas Association, National Propane Gas Association, New York State Builders Association, National Association of Home Builders), harm to business revenues and profits, disruption of long-term business strategies and asset planning, elimination of jobs, and interference with labor pools and hiring (as to Plaintiff Northeast Hearth, Patio, and Barbeque Association), loss of business and job opportunities (as to Plaintiff Plumbing Contractors of Long Island), loss of business revenues and profits (as to Plaintiff Holmes Mechanical), and loss of work and loss of employment (as to Plaintiffs International Brotherhood of Electrical Workers Local 1049 and Local Union 97, Plumbers Local Union No. 200, and Licensed Plumbing Association of New York City).   Defendant has provided, as part of his Statement of Additional Material Facts in Dispute, evidence that could suggest that declining sales of propane and propane equipment are not related to New York's statutory amendments that are the subject of this action.   (Dkt. No. 48, Attach. 1, at 14-15.)   As a result. there is an issue of fact regarding which of the specific harms the various Plaintiffs allege are, or will be, caused by the imminent codification of the prohibition on the installation of fossil-fuel equipment in new buildings.

However, although those issues of fact obscure the specific extent of the injury Plaintiffs are suffering or will suffer when the Code Amendments are adopted and become enforceable, they do not prevent the Court from finding that Plaintiffs have shown that they will suffer an imminent concrete harm as a result of the impending Code Amendments.   It cannot be logically disputed on the facts provided that a prohibition on the installation of fossil-fuel equipment in new buildings will have some tangible negative impact on Plaintiffs' businesses, regardless of whether a portion of such negative impacts might also be attributable to other factors, such as more consumers choosing to install heat pumps for reasons unrelated to the prohibition.

Beyond the existence of an injury, Defendant also argues that Plaintiffs have failed to show that their injury is traceable to him as opposed to the Legislature.   Again, this argument is based on an overly reductive reliance on the fact that the statutes and the Codes are two separate things.   While it is true that Plaintiffs have specifically alleged that the statutes (not the Codes) are preempted by the EPCA, and that the Secretary had nothing to do with the passing of the statutes, the Secretary's enforcement of the Codes is an extension of the injury that flows from the statutes; the injury cannot occur until the Secretary enforces the Codes, but that enforcement was made possible by the Legislature's actions in passing the statutes.   In other words, even though the statutes themselves are not enforceable, the Secretary, in enforcing the Code amendments implementing the statutory prohibition, would still be effecting the will of the Legislature as expressed through the statutes.   Therefore, to the extent Plaintiffs' alleged injuries are based on the threat of future enforcement, they are sufficiently traceable to Defendant.

Defendant's arguments about redressability fail for the same reason.   He argues that there is nothing in the challenged statutes that can be enjoined because the statutes themselves are not enforceable, but this argument again ignores the fact that, even though the statutes are not

enforceable, they impose a requirement to include a certain provision in the Codes.    An injunction on the implementation and enforcement of the required Code amendments would have the effect of also enjoining the statutes from requiring such provisions be in the Codes. Again, the fact that the statutes are not enforceable does not mean that they have no practical effect.

Having found that Plaintiffs possess standing, the Court also finds that the issues presented are ripe for decision for many of the same reasons.    "To be justiciable, a cause of action must be ripe – it must present 'a real, substantial controversy, not a mere hypothetical question.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (quoting *AMSAT Cable Ltd. v. Cablevision of Connecticut*, 6 F.3d 867, 872 [2d Cir. 1993]).    "A claim is not ripe if it depends upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"    *Nat'l Org. for Marriage*, 6 F.3d at 687 (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 [1985]).    As already discussed, although the Code amendments have not yet been finalized or adopted, there is no doubt that they will inevitably be adopted and contain the prohibition mandated by the statute – the Code Council has no discretion to refuse to do otherwise.    There is also no evidence to suggest that adoption of the Code amendments will not be forthcoming within the timeline indicated within the challenged statutes. The imminent and non-speculative nature of the alleged harm therefore provides this Court with jurisdiction to consider Plaintiffs' claim.    *See Nat'l Org. for Marriage*, 6 F.3d at 687 (noting that constitutional ripeness focuses on whether the claimed injury is sufficiently actual or imminent).

Further, as to the matter of prudential ripeness, the Court must "'evaluate both the fitness of the issues for judicial decision and the hardships to the parties of withholding court consideration.'" *Nat'l Org. for Marriage*, 6 F.3d at 691 (quoting *New York Civil Liberties Union v. Grandeau*, 528 F.3d 122, 131-32 [2d Cir. 2008]). This involves assessing whether "the issues

sought to be adjudicated are contingent on future events or may never occur," and "whether the challenged action creates a direct and immediate dilemma for the parties." *Nat'l Org. for Marriage*, 6 F.3d at 691. As already discussed, although the Code amendments have yet to be adopted, there is no question that they will be required to contain the relevant prohibition on fossil-fuel equipment given that it is mandated for inclusion by the challenged statutes. Further, even if not yet enforceable, the matter of whether the prohibition would be preempted presents a legal question for which there is no reason to wait until after the Code amendments are adopted; what is true about the issue of preemption today will be true when those amendments are adopted in the near future.

For the above reasons, the Court finds that it has subject-matter jurisdiction to consider Plaintiffs' preemption claim.

### B.    Whether Plaintiffs Are Entitled to Judgment as a Matter of Law on Their Preemption Claim

After careful consideration, the Court answers this question in the negative for the reasons stated in Defendants' memoranda of law and the Intervenor Defendants' memorandum of law. *See, supra,* Parts I.D.2 and 3 of this Decision and Order. To those reasons, the Court adds the following analysis.

The preemption provision of the EPCA states that, except as provided in certain other sections and "effective on the effective date of an energy conservation standard established or prescribed . . . for any covered product, no State regulation concerning the energy efficiency, energy use, or water use of such covered product shall be effective with respect to such product unless" it meets certain exceptions that are not applicable here. 42 U.S.C. § 6297(c).

Key terms within this section are explicitly defined elsewhere in the EPCA. "Energy" is

defined as electricity or fossil fuels.   42 U.S.C. § 6291(3).   The term "energy efficiency" is defined as "the ratio of the useful output of services from a consumer product to the energy use of such product, determined in accordance with the test procedures under section 6293 of this title."  42 U.S.C. § 6291(5).   Most relevant to Plaintiffs' argument, the term "energy use" is defined as "the quantity of energy directly consumed by a consumer product at point of use, determined in accordance with test procedures under section 6293 of this title."   42 U.S.C. § 6291(4).   The EPCA does not directly define the term "point of use."   Section 6293, referenced in the above-stated definitions, indicates what test procedures are in effect with respect to covered products, and what the procedures are for amending or implementing new test procedures; the Secretary of the relevant federal agency is the one responsible for managing such procedures and amendments.   42 U.S.C. § 6293.

Plaintiffs argue that the EPCA preempts the challenged statutes because the prohibition on the installation of fossil-fuel equipment and systems in new buildings effectively means that the energy use of such equipment or systems will necessarily be zero (given that they cannot be installed or used at all), and therefore the prohibition represents an indirect attempt to regulate the energy use of covered products.   In making this interpretation, Plaintiffs rely heavily on the Ninth Circuit's recent decision in *California Restaurant Assoc. v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024).   Interpreting the applicability of the EPCA's preemption provision to a similar ordinance passed by the City of Berkeley that prohibited the installation of natural gas infrastructure (such as fuel gas piping) in newly constructed buildings, a panel of the Ninth Circuit held that such ordinance was preempted based on its interpretation of the terms "energy use" and "point of use."   *California Restaurant Assoc.*, 89 F.4th at 1101-02.   Specifically, the panel stated that the EPCA defines "energy use" "as 'the quantity of energy directly consumed

by a consumer product at point of use.' § 6291(4)."  *Id.*   The panel further stated that, "as a matter of ordinary meaning, 'point of use' means the 'place where something is used.' Oxford English Dictionary Online (2022)."  *Id.*   The panel, using these interpretations and operating under the premise that "the EPCA is concerned with the end-user's ability to use installed covered products at their intended final destinations," concluded that the ordinance was a regulation concerning energy use because the effect of the ordinance is to regulate the energy use of natural gas products in those new buildings to zero.  *Id.*

However, as both Defendant and Judge Friedland's dissenting opinion in *California Restaurant Assoc.* point out, there are multiple reasons to be skeptical of the conclusions reached by the Ninth Circuit panel.   The Court agrees with Judge Friedland's reasoning, as well as with that of a recent decision from the Southern District of New York, *Ass'n of Contracting Plumbers of the City of New York, Inc. v. City of New York*, 23-CV-11292, 2025 WL 843619 (S.D.N.Y. Mar. 18, 2025), in which that court assessed whether the EPCA preempted a law enacted by the City of New York that "generally prohibits the use of fossil fuels such as natural gas and heating fuel in newly constructed residential buildings in New York City," and found that it did not because such regulation did not concern the energy use of a covered product.   (Dkt. No. 61, Attach. 1, at 2.)   Recognizing the flaws in the Ninth Circuit panel's reasoning, the Court declines to follow *California Restaurant Assoc.*, and instead is persuaded by the more reasoned analysis outlined in the dissent opinion for *California Restaurant Assoc.*, and in *Ass'n of Contracting Plumbers of the City of New York, Inc.*, and adopts that analysis here.   Given the thorough analysis of preemption, the history and purpose of the EPCA, and how the terms "energy use" and "point of use" should be interpreted and applied related to laws that are highly similar to the ones involved in this litigation in both Judge Friedland's dissent and in *Ass'n of*

*Contracting Plumbers of the City of New York, Inc.*, the Court will not reiterate all those points here in any detail.   For those reasons, the Court rejects Plaintiffs' argument that the challenged statutes are regulations concerning energy use.

Plaintiffs expend a great many words arguing that the use of "concerning" in the EPCA preemption section means preemption applies to the challenged statutes.   However, even adopting the broad meaning of "concerning" that Plaintiffs assert as covering "not only its subject but also matters related to that subject," the word "concerning" does not alter the Court's conclusion.   (Dkt. No. 37, Attach. 1, at 13.)   As even Plaintiffs acknowledge, Congress' use of the word "concerning" does not create a limitless preemption; the regulation at issue must still relate to or be about or regarding the "energy use" of a covered product for preemption to apply. (Dkt. No. 54, at 14-15.)   Based on the definition of "energy use" contained in the EPCA (which has been interpreted as explained above), the challenged statutes neither directly regulate energy use of any covered equipment, nor do they in any way concern the energy use of a covered product – rather, they merely prohibit the installation of *any* fossil-fuel equipment or system in new buildings, regardless of the energy use of such equipment or systems.   This argument, like most of the arguments that Plaintiffs advance, suffers from the flaw that it is based upon Plaintiffs' own definition of "energy use," which is not the definition that is used in the EPCA and not the definition that this Court is now applying.

Plaintiffs further argue that relevant interpretation of "energy use" is irreconcilable with one of the exceptions included in Section 6297(f) related to building codes. Plaintiffs assert that

> Suppose a building code sets a maximum-building-wide energy
> consumption. § 6297(f)(3), that is calculated by adding up all the
> appliances' off-the-rack, lab-tested "estimated energy use" values,
> § 6297(f)(3)(G).   So long as no appliance is required to exceed
> federal standards, § 6297(f)(3)(B), such a building code could

31

> qualify for the exemption. . . . But if the Secretary were right, the regulation would not be preempted in the first place because it does not change the lab-tested value for any appliance's energy use.   That would make the building code exemption superfluous.

(Dkt. No. 54, at 13-14.)

This argument has no merit.   The relevant exception makes clear that it is applicable in situations where the underlying building code regulation is one concerning energy efficiency or energy use, as such regulations are typically preempted.   42 U.S.C. § 6297(f)(3). Contrary to Plaintiffs' assertion, the hypothetical regulation outlined above would be clearly preempted even when applying the interpretation of "energy use" adopted here by the Court because it explicitly sets a maximum building-wide energy consumption limit, and therefore would be an indirect regulation concerning the energy use of the covered products that could be used in that building. Because the Court's interpretation does not preclude situations in which this exception could be found applicable to an otherwise preempted building code regulation, it does not render this exception superfluous as Plaintiffs attempt to argue.

Plaintiffs also argue that the Court's interpretation would conflict with the waiver provision in Section 6297, because it would result in the unavailability of certain fossil-fuel products in New York.   However, the fact that the challenged statutes could decrease the availability of certain covered products in New York is irrelevant because, although burdens on manufacturers or others and availability of products are criteria the Secretary considers when determining whether to grant a waiver of preemption, New York does not need to show that it qualifies for a waiver from EPCA preemption, or that its regulation is consistent with the goals of the EPCA, because the Court has already found that the challenged statutes are simply not preempted.   Because the statutes here do not concern the energy use of covered products, they

are outside the scope of the EPCA's preemption, and therefore the EPCA has nothing to say about what they can regulate, even if those regulations happen to impact the availability to New York consumers of certain covered products.

The Court notes that, like many of Plaintiffs' arguments, their assertion that the Court's interpretation would conflict with the waiver provision is based, at least in part, on the Ninth Circuit panel's interpretations in *California Restaurant Assoc.*, which this Court has declined to adopt.   The Court notes in particular the panel's statement that the fact that the waiver petition process includes considering "the complete lifecycle of an appliance–from manufacturing to servicing" was persuasive evidence that preemption itself was not limited to only a measurement at "the factory floor."   (Dkt. No. 54, at 18.)   This is simply not a logical interpretation of the EPCA, under the circumstances.   The fact that a validly preempted state regulation concerning energy efficiency or energy use as the Court has here interpreted the term "energy use" might have downstream effects on the marketing, distribution, sale, or servicing of certain covered products would not mean that "energy use" itself must be defined as how much energy a specific product actually uses at any given time in a real-world location.   As already discussed, the Court disagrees with the panel's interpretations of both the statutory definition of "energy use" and the term "point of use," which is not explicitly defined in the statute, and it was the panel's interpretation of both of those terms that led to its understanding of energy use as being a real-world, ever-changing measurement as opposed to a static assessment of the typical quantity of energy consumed by such a product.   The panel uses the waiver provision as more evidence that its interpretation is correct, but there is simply no connection between what the Secretary is made to consider when assessing whether to grant a waiver for a regulation that is preempted and what actually renders a regulation preempted in the first place.   If a provision is preempted, Congress

33

can permit the Secretary to consider whatever factors it chooses when determining whether to grant a waiver.   That such factors include a consideration of whether the preempted regulation would burden downstream activities such as marketing, distribution, sales, and servicing does not mean that those activities have anything to do with whether preemption is warranted in the first place.   The language of the waiver provision does not change the fact that the panel ignored the portion of the definition of "energy use" that specifies the quantity of energy directly consumed must be determined in accordance with the relevant test procedures, or that it adopted a dictionary definition of "point of use" that was clearly contrary to the technical nature of the statute without explaining why it was rejecting the relevant technical definition discussed in detail by Judge Friedland.   The panel's use of selected wording from the waiver provision to bolster its deficient interpretations is simply not persuasive.   For these reasons, the Court finds no conflict between its interpretation of the relevant terms and the waiver provision.

Because the Court finds that the EPCA does not preempt the prohibition on fossil-fuel equipment and systems in new buildings mandated by N.Y. Energy L. § 11-104(6)-(8) and N.Y. Exec. L. § 378(19), Plaintiffs' motion for summary judgment (seeking a declaratory judgment and permanent injunction) is denied.

Further, because the Court is considering *sua sponte* entering summary judgment against Plaintiffs under Fed. R. Civ. P. 56(f)(1) regarding the preemption issue that they raise in their motion, Plaintiffs are hereby respectfully given notice of that fact, and granted twenty-one (21) days from the entry of this Decision and Order by which to respond.   If Plaintiffs do not provide a persuasive reason for not doing so, the Court will subsequently issue a Text Order entering judgment as a matter of law in Defendant's favor and dismissing Plaintiff's Complaint.

**ACCORDINGLY**, it is

34

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 38) is

**<u>DENIED</u>**; and it is further

**ORDERED** that Plaintiffs' motion for summary judgment (Dkt. No. 37) is **<u>DENIED</u>**;

and it is further

**ORDERED** that Plaintiffs have **TWENTY-ONE (21)** days to show cause as to why the

Court should not grant judgment as a matter of law to Defendant on the sole claim of preemption

and dismiss Plaintiffs' Complaint.

Dated: July 23, 2025
          Syracuse, New York



Glenn T. Suddaby
U.S. District Judge