**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

MULHERN GAS CO., INC., et al.,

                Plaintiffs,

                v.

WALTER T. MOSLEY, in his official
capacity as Secretary of State,

                Defendant.

Case No. 1:23-cv-01267 (GTS/CFH)

**DEFENDANT'S MEMORANDUM OF
LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR INJUNCTION PENDING
APPEAL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

STANDARD OF REVIEW ................................................................................. 2

ARGUMENT ....................................................................................................... 3

The Motion to Enjoin the Secretary from Approving the Code Amendments is Moot.................. 3

The Motion for an Injunction Pending Appeal Should Be Denied Because Plaintiffs Fail to Satisfy Any of the Factors Required for Granting Such Extraordinary Interim Relief. ................. 4

    I.   Plaintiffs Fail to Demonstrate a Strong Likelihood of Success on the Merits.................... 4

        A.  Plaintiffs Rely on the Wrong Legal Standard. .............................................. 4

        B.  Plaintiffs' Flawed Merits Arguments Were Previously Reviewed and Rejected by This Court. ............................................................................. 5

    II.  Plaintiffs Fail to Demonstrate that They Face an Irreparable Injury. ................................. 8

        A.  Plaintiffs' Alleged Injuries Would Not Be Redressed by Enjoining the Secretary from Enforcing the Code Amendments. .................................................. 8

        B.  Plaintiffs' Delay in Seeking Injunctive Relief and the Speculative Nature of Their Alleged Injuries Fail to Establish Irreparable Harm. .................................................. 10

    III. An Injunction Will Cause Defendant Irreparable Harm and Will Not Serve the Public Interest.......................................................................................................... 12

        A.  An Injunction Will Cause Irreparable Harm to Defendant and the State. .................. 12

        B.  An Injunction Will Harm the Public Interest. ............................................. 16

CONCLUSION.................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott v. Perez*,
585 U.S. 579 (2018)..................................................................................................14

*Achtman v. Kirby, McInerney & Squire, LLP*,
464 F.3d 328 (2d Cir. 2006).....................................................................................17

*Agudath Israel of Am. v. Cuomo*,
979 F.3d 177 (2d Cir. 2020)..................................................................................2, 4

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ..................................................................................16

*Amoco Prod. Co. v. Village of Gambell*,
480 U.S. 531 (1987)..................................................................................................14

*Antonyuk v. Bruen*,
624 F. Supp. 3d 210 (N.D.N.Y. 2022) .............................................................. 10-11

*Association of Contracting Plumbers of the City of New York, Inc. v. City of New York*,
No. 23-CV-11292, 2025 WL 843619 (S.D.N.Y. Mar. 18, 2025) ............................6

*Broecker v. N.Y.C. Dep't of Educ.*,
585 F. Supp. 3d 299 (E.D.N.Y. 2022), aff'd, 2023 WL 8888588 (2d Cir. Dec. 26, 2023) .................................................................................................................16

*California Restaurant Ass'n v. City of Berkeley*,
89 F.4th 1094 (9th Cir. 2024) ....................................................................................6

*California v. Bureau of Land Mgmt.*,
286 F. Supp. 3d 1054 (N.D. Cal. 2018) ..................................................................15

*Cayuga Indian Nation of N.Y. v. Village of Union Springs*,
317 F. Supp. 2d 152 (N.D.N.Y. 2004)...................................................................3, 6

*Chan v. U.S. Dep't of Transp.*,
No. 23-CV-10365, 2024 WL 5199945 (S.D.N.Y. Dec. 23, 2024) .........................17

*City of New York v. Wolfpack Tobacco*,
2013 WL 5312542 (S.D.N.Y. Sept. 9, 2013).........................................................16

*DeVivo Assocs. v. Nationwide Mut. Ins. Co.*,
No. 19-CV-2593, 2020 U.S. WL 2797244 (E.D.N.Y. May 29, 2020) ...................11

*Dexter 345, Inc. v. Cuomo,*
    663 F.3d 59 (2d Cir. 2011)..................................................................................11

*Dimartile v. Cuomo,*
    No. 20-CV-0859, 2020 U.S. Dist. WL 4877239 (N.D.N.Y. Aug. 19, 2020) ...........................3

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.,*
    498 F.3d 1031 (9th Cir. 2007) ..............................................................................9

*Gazzola v. Hochul,*
    645 F.Supp.3d 37 (N.D.N.Y. 2022)........................................................................11

*Geminatio v. Hustad,*
    No. 25-cv-00361, 2025 WL 1220233 (N.D.N.Y. Apr. 28, 2025)...........................................11

*Haaland v. Brackeen,*
    599 U.S. 255 (2023)..................................................................................8, 10

*In re World Trade Center Disaster Site Litigation,*
    503 F.3d 167 (2d Cir. 2007)................................................................................3

*Kansas v. United States,*
    249 F.3d 1213 (10th Cir. 2001) .............................................................................14

*Lux v. Rodrigues,*
    561 U.S. 1306 (2010)........................................................................................17

*New York v. Nuclear Regul. Comm'n,*
    550 F.2d 745 (2d Cir. 1977)................................................................................11

*New York v. U.S. Dep't of Homeland Sec.,*
    974 F.3d 210 (2d Cir. 2020)............................................................................3, 12

*Nken v. Holder,*
    556 U.S. 418 (2009)................................................................................ passim

*Ohio Citizens for Responsible Energy, Inc. v. Nuclear Regulatory Comm'n,*
    479 U.S. 1312 (1986)........................................................................................17

*Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.,*
    769 F.3d 105 (2d Cir. 2014).................................................................................5

*Sierra Club v. U.S. Dep't of Agric., Rural Utils. Serv.,*
    841 F. Supp. 2d 349 (D.D.C. 2012) .......................................................................14

*Tough Traveler, Ltd. v. Outbound Prods.,*
    60 F.3d 964 (2d Cir. 1995).................................................................................10

*Trump v. CASA, Inc.*,
　606 U.S. 830 (2025) ........................................................................ 14-15

*We the Patriots USA, Inc. v. Hochul*,
　17 F.4th 266 (2d Cir. 2021) ...................................................................3

*Westchester v. U.S. Dep't of Hous. & Urb. Dev.*,
　778 F.3d 412 (2d Cir. 2015)....................................................................4

*Winter v. Nat. Res. Def. Council, Inc.*,
　555 U.S. 7 (2008) ..................................................................................2

*Yang v. Kosinski*,
　960 F.3d 119 (2d Cir. 2020)...........................................................3, 16

**STATE STATUTES**

Climate Leadership and Community Protection Act
　2019 N.Y. Ch. 106 ................................................................13-14, 16-17

ECL
　§ 75-0109(2)(c) .....................................................................................13

N.Y. Energy Law
　§ 11-104(6) .................................................................................... passim

N.Y. Env't Conserv. Law
　§ 75-0107(1) ..........................................................................................13

N.Y. Exec. Law
　§ 378(19)(a) ...............................................................4, 13, 15, 17
　§ 378(20)(a) ............................................................................................3
　§ 381(2)...............................................................................................8-9

**STATE REGULATIONS**

19 N.Y.C.R.R. pt. 1204....................................................................8-9

**RULES**

Fed. R. Civ. P. 62(d) ......................................................................2, 17

**MISCELLANEOUS AUTHORITIES**

New York State Climate Action Council, *Scoping Plan* 175 (Dec. 2022),
　http://climate.ny.gov/resources/scoping-plan/ ...............................13, 15

## PRELIMINARY STATEMENT

Two and one-half years ago, the New York State Legislature amended the State Executive and Energy Laws to limit fossil fuel equipment and building systems in certain new buildings to address the serious and ongoing threats that climate change poses to human health and the environment in New York. Several months later, Plaintiffs commenced this lawsuit seeking to invalidate those laws, alleging that they were preempted by the Energy Policy and Conservation Act (EPCA), 42 U.S.C. § 6201 *et seq.* This Court recently rejected all of Plaintiffs' preemption arguments. Now, for the first time in this lengthy litigation, and only *after* losing on the merits, Plaintiffs seek interim relief by moving for an injunction pending appeal. To succeed on their post-judgment motion, Plaintiffs bear the heavy burden of demonstrating that they have a strong likelihood of success on the merits of a case they have already lost, that they will face irreparable harm absent an injunction, and that the balance of equities and the public interest favor the extraordinary relief they seek. Plaintiffs fail to satisfy any of these requirements, so their motion should be denied, for multiple reasons.

First, Plaintiffs' motion to enjoin Defendant New York Secretary of State from approving regulatory amendments to the State Uniform Fire Prevention and Building Code and the State Energy Conservation Construction Code (the Codes) is moot because the Secretary has already approved those regulations. In doing so, the Secretary followed prescribed public state administrative processes that Plaintiffs have long been aware of, underscoring their delay in seeking interim relief and undercutting any sense of urgency they now portray.

Second, Plaintiffs misstate the legal standard governing their motion, which requires that they demonstrate a strong likelihood of success on the merits, a near impossible task considering that this Court has already reviewed and rejected Plaintiffs' EPCA preemption arguments.

1

Third, while Plaintiffs seek to enjoin the Secretary from enforcing the Code amendments, the harms they claim would not be redressed by such an injunction because the Codes are primarily enforced by local governments who are not parties to this suit, and the injuries claimed by Plaintiffs could only come from Code enforcement by those non-parties. Plaintiffs' allegations of injuries are largely speculative and fail to demonstrate that the injunction they seek will redress any of their alleged irreparable harms.

Finally, the public interest and equities weigh decisively against Plaintiffs. The injunction sought by Plaintiffs would forestall the effects of legislation enacted for the benefit of all New Yorkers that seeks to improve public health and welfare by addressing serious and ongoing environmental harms. Those environmental risks, and the threat to the State's sovereign interests from delaying or preventing that remedial governmental action, are irreparable injuries. The harm to the public from an injunction that prevents the Codes from taking full effect is overwhelming, and the public interest in *not* granting injunctive relief dwarfs any purported harms asserted by Plaintiffs.

## STANDARD OF REVIEW

Any injunction is "an extraordinary remedy never awarded as of right," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008), and there is "substantial overlap" between the traditional factors governing the issuance of injunctive relief and those governing the issuance of a stay, *Nken v. Holder*, 556 U.S. 418, 434 (2009). In determining whether to grant an injunction pending appeal under Fed. R. Civ. P. 62(d), courts consider: (1) whether the movant has made a strong showing that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent the requested relief; (3) whether the requested relief will substantially injure other parties interested in the proceeding; and (4) where the public interest lies. *See Nken,* 556 U.S. at 433–434; *Agudath*

*Israel of Am. v. Cuomo*, 979 F.3d 177, 180 (2d Cir. 2020); *Dimartile v. Cuomo*, No. 20-CV-0859, 2020 U.S. Dist. WL 4877239, at *3 (N.D.N.Y. Aug. 19, 2020).

When the government is the party opposing the injunction, the third and fourth factors merge, *We the Patriots USA, Inc. v. Hochul,* 17 F.4th 266, 295 (2d Cir. 2021), and the movant must show that "the balance of equities tips in his [or her] favor," *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020). And while "more of one [factor] excuses less of the other," *World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (citations omitted), the movant must "satisfy[y] the first two factors," *Nken,* 556 U.S. at 435. Ultimately, the movant bears the "heavy burden" of establishing that these factors weigh in favor of the requested relief, *Cayuga Indian Nation of N.Y. v. Village of Union Springs,* 317 F. Supp. 2d 152, 155 (N.D.N.Y. 2004), and a stay or injunction "is not a matter of right, even if irreparable injury might otherwise result," but is rather "an exercise of judicial discretion," *New York v. U.S. Dep't of Homeland Sec.*, 974 F.3d 210, 214 (2d Cir. 2020) (quoting *Nken*, 556 U.S. at 434).

## ARGUMENT

### The Motion to Enjoin the Secretary from Approving the Code Amendments is Moot.

Plaintiffs' request to enjoin the Secretary from "approving . . . the implementing code provisions," Dkt. 70-1 at 24, is moot because the Secretary has already approved the regulations. Consistent with the requirements of state law, and after completing lengthy administrative processes, on September 16, 2025, the Secretary approved the amendments to the Codes and thereafter promulgated the amendments, as reflected in the Notice of Adoption published in the State Register on October 1, 2025. Under state law, the publishing of the Secretary's approval on October 1st satisfied the requirement that they be approved 90 days before taking effect on December 31, 2025. *See* N.Y. Exec. Law § 378(20)(a); Ex. 1, Declaration of New York Department of State Senior Counsel David A. Gonzalez (Gonzalez Decl.), ¶¶ 13–26, 28-29. Such

publication is the final step required by the Department in the rulemaking process. *Id.* ¶ 27. Accordingly, Plaintiffs' motion seeking to enjoin the Secretary from approving the Code amendments is moot because that approval has already occurred, as reflected in the published Notice of Adoption. *See Id.* ¶ 28; *Westchester v. U.S. Dep't of Hous. & Urb. Dev.,* 778 F.3d 412, 417 (2d Cir. 2015) (claims brought by city to enjoin federal agency's reallocation of its grant funding moot after funding already reallocated).

**The Motion for an Injunction Pending Appeal Should Be Denied Because Plaintiffs Fail to Satisfy Any of the Factors Required for Granting Such Extraordinary Interim Relief.**

### I. Plaintiffs Fail to Demonstrate a Strong Likelihood of Success on the Merits.

#### A. Plaintiffs Rely on the Wrong Legal Standard.

Plaintiffs seek to enjoin the Secretary from "approving or enforcing" state statutes "or the implementing code provisions" that address the human health and environmental threats from climate change through restrictions on the installation of fossil fuel equipment and building systems in certain new buildings. Dkt. 70-1 at 24; *see* N.Y. Energy Law § 11-104(6)–(8); N.Y. Exec. Law § 378-19. To succeed on their motion, Plaintiffs must demonstrate a strong likelihood of success on the merits. *Nken*, 556 U.S. at 434; *Agudath Israel of Am.*, 979 F.3d at 180. Plaintiffs repeatedly state that they can satisfy this burden by showing the existence of "a serious question going to the merits" of their case. Dkt. 70-1 at 7; *see id.* at 5 (stating that Plaintiffs must show "sufficiently serious questions going to the merits to make them a fair ground for litigation"); *id.* at 6 ("an injunction is warranted when 'there are serious questions going to the merits'"); *id.* at 7 ("a serious question going to the merits is enough"). On the contrary, it is not enough.

Plaintiffs misunderstand the applicable legal standard. Citing the Second Circuit case *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, Plaintiffs assert

that to demonstrate a likelihood of success on the merits, they must demonstrate irreparable harm and "either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and [a] balance of hardships tipping decidedly" in their favor. *Id.* at 5 (quoting *Citigroup Global Markets, Inc.*, 598 F.3d 30, 35 (2d Cir. 2010)). However, as the Second Circuit has subsequently explained, option 2, the "sufficiently serious questions" option, is not available to a party challenging "governmental action taken in the public interest pursuant to a statutory or regulatory regime." *Otoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014). This is because "governmental policies implemented through legislation or regulations developed through presumptively democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." *Id.* (quoting *Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995)).

Thus, because Plaintiffs are challenging governmental action "taken in the public interest pursuant to a statutory or regulatory scheme," *id.,* option 2 is not available to them. Further, Plaintiffs overlook that they are seeking an injunction pending appeal *after* this district court has entered judgment in Defendant's favor. And Plaintiffs cite no case to support the extraordinary assertion that, even though they have conclusively lost on the merits, this Court should grant injunction even if Plaintiffs are unlikely to succeed on the merits.

Instead, Plaintiffs must make a "strong showing" that they are likely to succeed on the merits. *Nken,* 556 U.S. at 434. As explained further below, Plaintiffs cannot meet this burden.

### B.  Plaintiffs' Flawed Merits Arguments Were Previously Reviewed and Rejected by This Court.

Plaintiffs do not demonstrate a strong likelihood of success on the merits. Their memorandum recycles arguments that the Secretary previously responded to, *see* Dkt. 48, and

this Court fully rejected in its July 23, 2025 Decision and Order, Dkt. 64. Plaintiffs apparently maintain that, having decisively lost their merits arguments below, they somehow now have a greater likelihood of success by reiterating them in the instant motion. That is decidedly not the case, and Plaintiffs have not carried their "heavy burden" to obtain injunctive relief here. *Cayuga Indian Nation of N.Y.*, 317 F.Supp.2d at 155.

In their memorandum, Plaintiffs reargue that *California Restaurant Association v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024), supports their theory of EPCA preemption. *See* Dkt. 70-1 at 1, 4, 7–8. They reiterate that their interpretation of the statutory term "energy use" is supported by that Ninth Circuit case. *Id*. at 7–8. They continue to assert that EPCA's exceptions to preemption, particularly the building code exception at 42 U.S.C. § 6297(f)(3), support their theory of preemption. *Id*. at 9–10. And they renew their argument that EPCA's waiver exception in Section 6297 "sheds some light" on whether New York's laws are preempted. *Id*. at 10. But this Court expressly rejected all these arguments on the merits, and they have not grown better with age.

In its Decision and Order, the Court explained that it did not follow *California Restaurant Association* because of "the flaws in the Ninth Circuit panel's reasoning." Dkt. 64 at 30. The Court was persuaded by "the more reasoned analysis" outlined in Judge Frieland's dissent in that case, and in the recent case *Association of Contracting Plumbers of the City of New York, Inc. v. City of New York,* No. 23-CV-11292, 2025 WL 843619 (S.D.N.Y. Mar. 18, 2025). The Court adopted those opinions' "thorough analysis of preemption, the history and purpose of the EPCA, and how the terms 'energy use' and 'point of use'" should be interpreted and applied to laws like those at issue here, ultimately "reject[ing] Plaintiffs' argument that the challenged statutes are regulations concerning energy use." Dkt. 64 at 30–31; *see* Dkt. 48, Def.'s

Mem. in Opp'n to Pls.' Mot. for Summ. J., incorporated herein by reference, at 5–7, 10–21. The Court explained that:

> Based on the definition of "energy use" contained in the EPCA (which has been interpreted as explained above), the challenged statutes neither directly regulate energy use of any covered equipment, nor do they in any way concern the energy use of a covered product – rather, they merely prohibit the installation of *any* fossil-fuel equipment or system in new buildings, regardless of the energy use of such equipment or systems. This argument, like most of the arguments Plaintiffs advance, suffers from the flaw that it is based upon Plaintiffs' own definition of "energy use," which is not the definition that is used in the EPCA and not the definition that this Court is now applying. *Id.*; *see* Dkt. 64 at 31.

The Court also rejected Plaintiffs' contention that EPCA's building code exemption is irreconcilable with the term "energy use" as an "argument [that] has no merit*." Id.* at 32. The Court stated that "[t]he relevant exception makes clear that it is applicable in situations where the underlying building code regulation is one concerning energy efficiency or energy use," and that applying the definition of "energy use" contained in EPCA rendered Plaintiffs' "superfluous[ness]" argument unavailing. *Id.*; *see* Dkt. 48 at 23–24.

Similarly, the Court found meritless "Plaintiffs['] . . . argu[ment] that the Court's interpretation would conflict with the waiver provision in Section 6297, because it would result in the unavailability of certain fossil-fuel products in New York." Dkt. 64 at 32.

According to the Court:

> [T]he fact that the challenged statutes could decrease the availability of certain covered products in New York is irrelevant because, although burdens on manufacturers or others and availability of products are criteria the Secretary considers when determining whether to grant a waiver of preemption, New York does not need to show that it qualifies for a waiver from EPCA preemption, or that its regulation is consistent with the goals of the EPCA, because the Court has already found that the challenged statutes are simply not preempted. Because the statutes here do not concern the energy use of covered products, they are outside the scope of the EPCA's preemption, and therefore the EPCA has nothing to say

about what they can regulate, even if those regulations happen to impact the availability to New York consumers of certain covered products. *Id.* at 32–33.

Plaintiffs continue to press arguments in their motion that this Court has already found unmeritorious. Therefore, Plaintiffs have shown little likelihood of success on the merits, much less the strong showing necessary to obtain an injunction pending appeal. Their motion should be denied on these grounds alone.

## II.    Plaintiffs Fail to Demonstrate that They Face an Irreparable Injury.

### A.    Plaintiffs' Alleged Injuries Would Not Be Redressed by Enjoining the Secretary from Enforcing the Code Amendments.

Plaintiffs' alleged injuries, *see* Dkt. 70-1 at 14–18, are the purported loss of business and work opportunities should the Code amendments be enforced as to certain new buildings, primarily in new home construction. Plaintiffs thus seek to enjoin the Secretary from "enforcing . . . the implementing code provisions." Dkt. 70-1 at 24. But Plaintiffs fail to show that these injuries would likely be redressed by an injunction that prevents the *Secretary* from enforcing the Code amendments. As explained below and in the accompanying Gonzalez Declaration, the Codes are enforced almost entirely by entities that are not parties to this lawsuit—counties, towns and villages. An injunction against the Secretary would not prevent those non-parties from enforcing the Codes. *See Haaland v. Brackeen,* 599 U.S. 255, 292–293 (2023) (requested injunction would not remedy alleged injury because the challenged law was not implemented by defendants, but instead by non-parties not bound by the injunction).

In New York, enforcement of the Codes is a local responsibility. *See* Dkt. 25-1, Department of State Manual for Administration and Enforcement of the Codes.  By statute, the approximately 1,600 local governments in New York—cities, towns, villages and counties—are responsible for administering and enforcing the Codes within their boundaries. *See* N.Y. Exec. Law § 381(2); N.Y. Energy Law § 11-107; 19 N.Y.C.R.R. §§ 1201.2, Part 1204. When a local

government opts out of Code enforcement, that responsibility is transferred to the county where the local government is located; if the county also opts out, only then does that enforcement responsibility pass to the Secretary. *See* N.Y. Exec. Law § 381(2); N.Y. Energy Law § 11-107. To date, there is no city, town, or village in which both the local government and the county have opted out of responsibility to administer and enforce the Codes, meaning that, for every privately-owned building, the Codes would be enforced in every city, town, and village by the local governments, not the Secretary. *See* Gonzalez Decl., ¶¶ 5–6.

For buildings in the custody of or undergoing construction activity by a New York governmental entity, such as a local government, county, or state agency, that entity itself is responsible for administering and enforcing the Codes for those buildings, not the Secretary. *See* 19 N.Y.C.R.R. § 1201.2; Gonzalez Decl., ¶ 7. Twelve counties in the State have delegated to the Secretary their responsibility for administering and enforcing the Codes for county buildings. *See id.* ¶ 8 (listing counties). Accordingly, the *only* buildings in New York for which the Secretary enforces the Codes are buildings in the custody of one of those twelve counties. For *all* other buildings subject to the Codes, whether privately-owned or publicly-controlled, the Codes are enforced by governmental entities that are not parties to this lawsuit. *See id.* ¶ 9.

Based on current Department of State data, local governments that are not parties to this lawsuit are responsible for administering and enforcing the Codes in over 99.9% of newly constructed buildings in New York. *See id.* ¶ 10. Consequently, an injunction against the Secretary in this case would, at most,[1] necessarily be limited to enjoining the Secretary from

---

[1] Plaintiffs cite no authority for the proposition that EPCA's preemption provision sweeps so broadly that it even precludes the States from imposing the Code amendments for buildings that the State and its political subdivisions will own and build to use for their own purposes. *Cf. Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist,* 498 F.3d 1031, 1040 (9th Cir. 2007) (observing that "[a]ctions taken by a state or its subdivision as a market participant are generally protected

enforcing the Code amendments in new buildings that are in the custody of one of the twelve counties that have delegated their responsibility to the Secretary and are not otherwise exempt. *See id.* ¶ 10. Plaintiffs have failed to establish that *any* of the harms they allege would stem from the Codes' prohibitions as applied to new construction for non-exempt, county-controlled buildings that have delegated enforcement responsibility to the Secretary. *See id.* ¶ 11. Rather, Plaintiffs' alleged injuries, *see* Dkt. 70-1 at 14–18, pertain to privately-owned new buildings, such as residential homes and multi-home subdivisions. Therefore, Plaintiffs have not shown that their alleged injuries are "likely" to be "redressed" by enjoining the Secretary. *See* Gonzalez Decl., ¶ 12; *Haaland,* 592 U.S. at 292.

### B. Plaintiffs' Delay in Seeking Injunctive Relief and the Speculative Nature of Their Alleged Injuries Fail to Establish Irreparable Harm.

In their October 2023 Complaint, Plaintiffs alleged that they were already experiencing irreparable harm from New York's new laws. *See* Dkt. 1, ¶ 3 (challenged laws "set to go into effect beginning December 31, 2025 [are] already [] causing irreparable harm to Plaintiffs today"); ¶ 7 (New York's laws are "already . . . caus[ing] irreparable harm to Plaintiffs"); ¶ 87 (characterizing alleged injuries as "irreparable harms"). Yet if they truly faced irreparable harm then, Plaintiffs would not have waited until now to move for interim injunctive relief *for the first time*. Plaintiffs' late-breaking claims of urgent, irreparable harm are irreconcilable with their dilatory conduct in this litigation.[2] *See Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964,

---

from federal preemption" and holding that state regulations are not preempted to the extent the regulations governed state and local governmental entities' purchasing and contract decisions).
[2] At this late date, having long been studiously aware of the administrative processes underway leading toward the challenged regulatory prohibitions taking effect, Plaintiffs claim their motion seeks to "maintain the status quo." Dkt. 70-1 at 1. But under the present circumstances, "the status quo is also a state in which the restrictions are scheduled to take effect . . . pursuant to a statute that was duly enacted," requiring an even more heightened showing for injunctive relief to issue. *Antonyuk v. Bruen,* 624 F. Supp. 3d 210, 245 n.25 (N.D.N.Y. 2022).

968 (2d Cir. 1995) (The "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." (quoting *Citibank, N.A. v. City Trust,* 756 F.2d 273, 277 (2d Cir. 1985))); *Gazzola v. Hochul,* 645 F.Supp.3d 37, 54 n.17 (N.D.N.Y. 2022).

Furthermore, as characterized in their memorandum, Plaintiffs' alleged injuries are in large part speculative and conclusory, and do not rise to the level of irreparable harm.[3] Long-standing precedent establishes that injunctive relief cannot be predicated upon allegations of irreparable injury that are speculative. See *New York v. Nuclear Regul. Comm'n*, 550 F.2d 745, 755 (2d Cir. 1977); *Dexter 345, Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011). The requirement that the alleged injury not be remote or speculative is "an essential component []" of irreparable harm. *Geminatio v. Hustad,* No. 25-cv-00361, 2025 WL 1220233, at *4 (N.D.N.Y. Apr. 28, 2025). Irreparable harm must be "certain and imminent" to warrant injunctive relief. *Antonyuk,* 624 F.3d at 223. A "concrete showing" supported by "concrete data" is required for an injunction to issue. *DeVivo Assocs. v. Nationwide Mut. Ins. Co.,* No. 19-CV-2593, 2020 U.S. WL 2797244, at *5 (E.D.N.Y. May 29, 2020) (internal quotations and citations omitted). Presentation of a plaintiff's speculated "worst case scenario of the consequences" should an injunction not issue is insufficient. *Id.* Here, Plaintiffs' allegations of dire harm are speculative, conclusory and lack the certainty and concreteness required to establish irreparable injury.

---

[3] *See, e.g.*, Dkt. 70-1 at 14–18 (alleging trade association, companies, and unions predict they or their members "*will see*" markets disappear, "*will suffer*" drops in sales and revenue, "*plan to*" lay off employees, "*may have to*" make structural changes, "*anticipate*" building and selling fewer homes, may "*possibly*" have to cut staff, "*expect to*" lose sales revenue, "*will be*" forced to make layoffs and restructure businesses, "*anticipate*" business losses, and "*will have*" decreased work hours) (emphasis added).

III.    **An Injunction Will Cause Defendant Irreparable Harm and Will Not Serve the Public Interest.**

Plaintiffs are not entitled to an injunction pending appeal "even if irreparable injury might otherwise result," *New York v. U.S. Dep't of Homeland Sec.*, 974 F.3d at 214, because they must "satisf[y] the first two factors" of the test for injunctive relief, *Nken*, 556 U.S. at 435, and as explained above, they simply cannot demonstrate a "strong showing that [they are] likely to succeed on the merits." *Id.* at 434. Accordingly, the Court need not reach the third and fourth factors of the test, the harm to Defendant and the public interest. *Id.* at 435. But if the Court does choose to analyze those factors, the equities and public interest concerns here weigh strongly against an injunction and dramatically outweigh any showing of alleged economic harm by Plaintiffs.

A court's "assess[ment] [of] harm to the opposing party and weighing the public interest . . . merge when the Government is the opposing party." *Id.* Here, Plaintiffs argue that the Secretary, and by extension, the State of New York, will suffer no significant harm from delaying the Code amendments from taking effect. To the contrary, the Secretary and the State will suffer irreparable harm if the Code amendments are delayed from taking effect because it will allow for the construction of new buildings that will be dependent on fossil fuel equipment and building systems for many decades to come, thereby increasing greenhouse gas emissions for the foreseeable future and impeding the State's climate priorities. It is therefore not in the public interest to issue an injunction.

A.  **An Injunction Will Cause Irreparable Harm to Defendant and the State.**

Preventing the Code amendments from taking effect would undermine the Secretary and State's goal of reducing greenhouse gas emissions from buildings in New York. The 2019 Climate

Leadership and Community Protection Act (Climate Act) articulates targets for New York to achieve a 40% reduction in economywide greenhouse gas emissions from 1990 levels by 2030 and an 85% reduction by 2050. 2019 N.Y. Ch. 106, § 12(d); N.Y. Env't Conserv. Law (ECL) § 75-0107(1). Key to achieving these goals is reducing emissions from the building sector. In 2019, the building sector was the largest source of emissions, responsible for 32% of emissions statewide, with the combustion of fossil fuels in residential and commercial buildings accounting for 34% and 19% of that total, respectively.[4] The New York State Climate Action Council's 2022 Scoping Plan—a document that, by statute, forms a basis of state climate-related regulations (*see* ECL § 75-0109(2)(c))— found that "[s]witching from fossil fuels to heat pumps for heating and hot water will immediately and significantly reduce GHG emissions and criteria pollutants from buildings." Scoping Plan at 176. Accordingly, the purpose of Energy Law § 11-104(6) and Executive Law § 378(19) is "to support the goal of zero on-site greenhouse gas emissions and help achieve the state's clean energy and climate agenda, including but not limited to the greenhouse gas reduction requirements set forth [in the Climate Act]," by "prohibit[ing] the installation of fossil-fuel equipment and building systems" in certain new construction. Delaying the effective date of the Code amendments implementing these laws would mean that applicable newly constructed buildings may continue to be built with fossil fuel equipment and building systems for the duration of an injunction. These buildings would then continue to rely on fossil fuel for their 50-to-100-year lifespans, directly undermining the goals of the Climate Act, Energy Law § 11-104(6), and Executive Law § 378(19).

---

[4] New York State Climate Action Council, *Scoping Plan* 175 (Dec. 2022), http://climate.ny.gov/resources/scoping-plan/.

An injunction that prevents the State from carrying out even one statutory scheme is irreparable injury. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Trump v. CASA, Inc.,* 606 U.S. 830, 861 (2025) (quoting *Maryland v. King,* 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). That is true here many times over, as the provisions at issue in this case are a central part of the State's efforts to carry out climate priorities set forth in other legal regimes—priorities that are important not only for the health and safety of New Yorkers, but also the State's economy. This threat to state sovereignty is irreparable. *See id.; see also Abbott v. Perez*, 585 U.S. 579, 603 n.17 (2018) ("[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State."); *Kansas v. United States*, 249 F.3d 1213, 1227 (10th Cir. 2001) (where federal "decision places [Kansas's] sovereign interests and public policies at stake, we deem the harm the State stands to suffer as irreparable . . .").

An injunction would also cause environmental harm in the form of increased greenhouse gas emissions from newly constructed buildings with fossil fuel equipment and building systems. As New York's statutes articulate, greenhouse gas emissions cause climate change that adversely affects New York's environment, with effects including increased severity and frequency of extreme weather events, rising sea levels, declines in fish populations, increased average temperatures, and exacerbation of air pollution. 2019 N.Y. Ch. 106, §§ 1–6. Again, in 2019, buildings represented the largest source of these harmful greenhouse gas emissions in New York. Scoping Plan at 175. This harm to the environment is irreparable. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987) ("Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, *i.e.*, irreparable."); *see Sierra Club v. U.S. Dep't of Agric., Rural Utils. Serv.*, 841 F. Supp. 2d 349, 358

(D.D.C. 2012) (finding that expansion of power plant would emit substantial quantities of air pollutants that endanger human health and the environment and thereby cause irreparable harm); *California v. Bureau of Land Mgmt.*, 286 F. Supp. 3d 1054, 1074 (N.D. Cal. 2018) (finding that increased air pollution from natural gas would cause irreparable harm).

Plaintiffs assert that the Secretary would not be harmed by an injunction because Energy Law § 11-104(6)(b) and Executive Law § 378(19) built in a delayed effective date for the Code amendments, "implicitly recognizing that there is no need for immediate action." Dkt. 70-1 at 19. That turns the analysis of harms on its head: that the Legislature permitted some lead time does not mean the State experiences no irreparable sovereign injury by having prompt action taken under the Legislature's enactment thwarted. *Casa, Inc.*, 606 U.S. at 861. Moreover, here, the State's Climate Act sets targets—and the efforts provided for under the provisions at issue in this case are important components of those statutory objectives and time horizons. The State's technical analysis, which evaluated strategies to achieve the State's emission reduction goals, found it necessary to employ "rapid adoption of high-efficiency heat pumps so that one to two million energy-efficient homes use heat pumps by 2030." Scoping Plan at 176. Energy Law § 11-104(6) and Executive Law § 378(19) clearly state that their goal is to help the State meet "the greenhouse gas reduction requirements set forth [in the Climate Act]."

Plaintiffs also assert that the Secretary "has not until now been proceeding as if this deadline were of paramount importance" because the Secretary raised a ripeness defense in his opposition papers. Dkt. 70-1 at 19–20. However, the Secretary made clear in November 2024 that "[c]urrently, the Code Council is developing proposed rules for amending the Codes pursuant to SAPA." Dkt. 38-1 at 4. The Code Council's action of putting forth a Notice of Rule in Development in July 2024, approximately 18 months before December 31, 2025, shows that it was diligently

working to amend the Codes with the clear intent of having them take effect by December 31, 2025. *See* Gonzalez Decl. ¶¶ 13-26. The fact that the Secretary could not predict the exact content of the Code amendments does not mean the effective date is of no importance to the Secretary.

Next, Plaintiffs assert that "the impact of a delay of months on the State's decades-long energy and climate goals would be limited" because most of the State's electricity currently comes from fossil fuels. But as explained above, any buildings that are newly constructed during an injunction can rely on fossil fuel equipment and building systems for their decades-long lifespans, not simply for the duration of an injunction. The State's goal under the Climate Act is to transition away from fossil fuel-generated electricity to renewable and carbon-neutral electricity sources, with a target of achieving 70% renewable electricity by 2030. 2019 N.Y. Ch. 106, § 12(d). Thus, electrified buildings will over time become carbon neutral, while buildings with fossil fuel equipment and systems will not. Therefore, any fossil fuel-reliant buildings built during an injunction will harm the State's climate goals for the foreseeable future.

### B.  An Injunction Will Harm the Public Interest.

Under the last injunction factor, courts must consider "the public consequences in employing the extraordinary remedy of injunction." *Yang*, 960 F.3d at 136. Courts have "recognize[d] the well-established public interest in preserving nature and avoiding irreparable environmental injury." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011) (internal citation omitted). In addition, courts have found that it is not in the public interest to enjoin government action taken to safeguard public health and safety. *Broecker v. N.Y.C. Dep't of Educ.*, 585 F. Supp. 3d 299, 322–23 (E.D.N.Y. 2022), *aff'd*, 2023 WL 8888588 (2d Cir. Dec. 26, 2023); *City of New York v. Wolfpack Tobacco*, 2013 WL 5312542, at *6 (S.D.N.Y. Sept. 9, 2013).

Granting an injunction that prevent the Code amendments from taking full effect will harm the public interest by delaying the critical environmental and health benefits from the Code

amendments. In addition to the negative environmental effects discussed above, climate change is adversely affecting public health by leading to an increase in incidences of infectious disease, asthma attacks, heart attacks, and other negative health outcomes. 2019 N.Y. Ch. 106, § 1(f). Issuing an injunction that will allow more fossil fuel-reliant buildings to be constructed will harm public health by allowing more greenhouse gas emissions that will worsen climate change. Accordingly, an injunction is not in the public interest. *Chan v. U.S. Dep't of Transp.*, No. 23-CV-10365, 2024 WL 5199945, at *48 (S.D.N.Y. Dec. 23, 2024) ("injunction would negatively harm the public interest as it would delay the environmental and economic benefits the Tolling Program was designed to convey").

Plaintiffs argue that the public interest lies in an injunction because there is no state interest in enforcing laws that are preempted by federal law, Dkt. 70-1 at 21, but as explained above, this Court found that Energy Law § 11-104(6) and Executive Law § 378(19) are not preempted by EPCA. Therefore, Plaintiffs' further argument that these laws undermine EPCA's uniform national energy policy is also without merit. Accordingly, the public interest would not be served by an injunction in this case.[5]

_____

[5] Lastly, Plaintiffs cannot salvage their motion by citing to the All Writs Act, 28 U.S.C. § 1651(a). A party is entitled to a writ granting an injunction against a governmental actor pending appeal only when that party demonstrates that the "legal rights at issue" are "indisputably clear" in its favor, *Lux v. Rodrigues*, 561 U.S. 1306, 1307 (2010) (Roberts, C.J., in chambers), and even then, "only in the most critical and exigent circumstances." *Ohio Citizens for Responsible Energy, Inc. v. Nuclear Regulatory Comm'n*, 479 U.S. 1312, 1312 (1986) (Scalia, J., in chambers) (citation omitted). Plaintiffs are not entitled to an injunction under the All Writs Act for the same reasons they are not entitled to one under Federal Rule Civil Procedure 62(d), including that they have failed to show a strong likelihood of success on the merits.

That Plaintiffs' request to enjoin the Secretary from approving the Code amendments is now moot does not change the analysis. The All Writs Act limits a court to "issuing process 'in aid of' its existing statutory jurisdiction; the Act does not enlarge that jurisdiction." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 333 (2d Cir. 2006) (internal quotation marks omitted). The All Writs Act therefore does not authorize a court to grant injunctive relief that is moot and that the court thus lacks jurisdiction to issue.

**CONCLUSION**

For all of the reasons stated above, Plaintiffs' motion for an injunction pending appeal

should be denied.

Dated: October 1, 2025
        Buffalo, New York

LETITIA JAMES
Attorney General of the State of New York

By:  */s/ Timothy Hoffman*_____
        Timothy Hoffman (Bar Roll No. 704871)
        Laura Mirman-Heslin
        Christopher Gore
        *Assistant Attorneys General*
        Libby Dimenstein
        *Special Assistant Attorney General*
        Office of the Attorney General
        Environmental Protection Bureau
        350 Main Street, Suite 300A
        Buffalo, New York 14202
        Timothy.Hoffman@ag.ny.gov